**David B. Markowitz, OSB No. 742046**
DavidMarkowitz@MHGM.com
**Peter H. Glade, OSB No. 790480**
PeterGlade@MHGM.com
**Lisa A. Kaner, OSB No. 88137**3
LisaKaner@MHGM.com
**Dallas S. DeLuca, OSB No. 072992**
DallasDeLuca@MHGM.com
**Harry B. Wilson, OSB No. 077214**
HarryWilson@MHGM.com
MARKOWITZ, HERBOLD, GLADE
  & MEHLHAF, P.C.
Suite 3000 Pacwest Center
1211 S.W. Fifth Avenue
Portland, OR  97204-3730
Tel:  (503) 295-3085
Fax:  (503) 323-9105

On Behalf of Oregon Attorney General Ellen Rosenblum

Special Assistant Attorneys General For
Defendant Oregon Health Insurance
Exchange Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ORACLE AMERICA, INC.,** a Delaware Corporation, | CV No.: **3:14-cv-01279-BR** |
| Plaintiff, | **Defendant Cover Oregon's MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS; AND MEMORANDUM IN SUPPORT** |
| v. | |
| **OREGON HEALTH INSURANCE EXCHANGE CORPORATION,** a Public Corporation, dba **COVER OREGON**; and DOES 1-25, inclusive, | **Pursuant to Fed. R. Civ. P. 12(b)(6), 12(b)(7), and 19** |
| Defendants. | **Request for Oral Argument** |

**MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

L.R. 7-1 COMPLIANCE ............................................................................................. 1

MOTION........................................................................................................................ 1

INTRODUCTION .......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

SUMMARY OF ARGUMENT ..................................................................................... 7

I.      The Court should dismiss this action because Oracle failed to join the State of
        Oregon, a necessary and indispensable party. .................................................. 7

        A.      Rule 19 standard. ..................................................................................... 8

        B.      The State of Oregon is a required party under Rule 19(a). ..................... 9

        C.      Joinder is not feasible............................................................................ 15

        D.      Because the State is a necessary party and cannot be joined, and
                because the state court proceeding can provide complete relief, the
                Court should dismiss this action under Rule 19(b). .............................. 15

II.     The Court should stay this action under the *Colorado River* doctrine. ........... 18

III.    Oracle's claims do not meet the federal standard for pleading breach of
        contract or quantum meruit relief. .................................................................. 22

CONCLUSION............................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*
  843 F.2d 1253 (9th Cir. 1988) ...............................................................19, 20

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)...........................................................................22, 23

*Behrens v. Donnelly*
  236 F.R.D. 509 (D. Haw. 2006)....................................................................9

*Bell Atlantic v. Twombly*
  550 U.S. 544 (2007)...........................................................................22, 23

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*
  547 F.3d 962 (9th Cir. 2008) ...................................................................13

*Century Indem. Co. v. Marine Grp., LLC*
  No. 08-1375-AC, 2009 WL 3125477 (D. Or. Sept. 29, 2009) ....................................23

*Colorado River Water Conservation District v. United States*
  424 U.S. 800 (1976)..........................................................1, 7, 18, 19, 20, 22

*D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*
  705 F.3d 1223 (10th Cir. 2013)
  *cert. denied*, 133 S. Ct. 2831 (2013) ...........................................................20

*E.E.O.C. v. Peabody Western Coal Co.*
  400 F.3d 774 (9th Cir. 2005) ................................................................8, 15

*E.E.O.C.  v. Peabody W. Coal Co.*
  610 F.3d 1070 (9th Cir. 2010) ...............................................8, 9, 10, 11, 12, 15

*Eldredge v. Carpenters 46 N. Cal. Joint Apprenticeship & Training Comm.*
  662 F.2d 534 (9th Cir. 1981) ....................................................................9

*Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*
  224 F.R.D. 661 (W.D. Wash. 2004) .............................................................15

*Fierle v. Perez*
  350 F. App'x 140 (9th Cir. 2009) ...............................................................18

*Holder v. Holder*
  305 F.3d 854 (9th Cir. 2002) ..................................................................19

*Hood v. Astrazeneca Pharms., LP*
  744 F. Supp. 2d 590 (2010) ....................................................................15

*Kramer v. City of Lake Oswego*
  No. 3:12-CV-00927-HA, 2012 WL 4863214 (D. Or. Oct. 11, 2012......................17, 18

*Makah Indian Tribe v. Verity*
   910 F.2d 555 (9th Cir. 1990) ...............................................................9, 10

*Moor v. County of Alameda*
   411 U.S. 693 (1973) ................................................................................15

*Nakash v. Marciano*
   882 F.2d 1411 (9th Cir. 1989) ..........................................................18, 19

*Navigators Ins. Co. v. K & O Contracting, LLC*
   No. 3:12-CV-01324-ST, 2013 WL 1194722 (D. Or. Jan. 10, 2013)
   *report and recommendation adopted*
   No. 3:12-CV-01324-ST, 2013 WL 1194715 (D. Or. Mar. 21, 2013)..........................17

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*
   656 F.3d 966 (9th Cir. 2011) ............................................................18, 19

*Rienhardt v. Kelly*
   164 F.3d 1296 (10th Cir. 1999) .............................................................20

*Starr v. Baca*
   652 F.3d 1202 (9th Cir. 2011) ...............................................................22

*Tansy v. N. Pac. Ins. Co.*
   No. 04-6375-AA, 2005 WL 1334546 (D. Or. June 2, 2005).........................10

*Tick v. Cohen*
   787 F.2d 1490 (11th Cir. 1986) ...............................................................8

*Travelers Indem. Co. v. Madonna*
   914 F.2d 1364 (9th Cir. 1990) ...............................................................21

*United States v. Bowen*
   172 F.3d 682 (9th Cir. 1999) ..................................................................12

*Verizon Nw., Inc. v. Main St. Dev., Inc.*
   693 F. Supp. 2d 1265 (D. Or. 2010) .......................................................24

*Williams v. L.A. Job Corps*
   520 F. App'x 551 (9th Cir. 2013) ...........................................................23

*Wilson v. Hewlett-Packard Co.*
   668 F.3d 1136 (9th Cir. 2012) ..........................................................22, 23

<u>Statutes and Other Authorities</u>

Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and
Procedure: Civil 3d § 1359 (2004)...............................................................9

28 U.S. C. § 1332.........................................................................................15

42 C.F.R. Ch. IV .........................................................................................5

Fed R Civ P 12(b)(6).............................................................................1, 7, 22

Fed R Civ P 12(b)(7)..............................................................................................1, 7, 8, 11

Fed R Civ P 19........................................................1, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17

L.R. 7-1 ...................................................................................................................................1

**L.R. 7-1 COMPLIANCE**

Pursuant to L.R. 7-1, counsel for defendant Oregon Health Insurance Exchange Corporation ("Cover Oregon") certifies that the parties made a good-faith effort to resolve the dispute by conferring by telephone, but have been unable to resolve it.

**MOTION**

Pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure, defendant Cover Oregon moves this Court to dismiss plaintiff's claims for failure to join an indispensable party, the State of Oregon.

Alternatively, Cover Oregon moves the Court to stay this proceeding under the *Colorado River* doctrine pending adjudication of the state court action among these parties.

Lastly, Cover Oregon moves for an order dismissing Oracle's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

These motions are based on the memorandum of law, and the Declaration of Lisa A. Kaner in support of this motion, along with all the papers and pleadings on file in this action.

**INTRODUCTION**

In June 2014, Oregon Attorney General Ellen Rosenblum began an extensive investigation under the Oregon False Claims Act into Oregon's failed health insurance exchange website.  Plaintiff Oracle America, Inc. was at the heart of that investigation.  (Declaration of Lisa A. Kaner ("Kaner Decl.") ¶ 3.)  Over the past three years, the State of Oregon ("State") and Cover Oregon entered into multiple contracts for the purchase of hundreds of millions of dollars in Oracle products and services that ultimately failed to perform as promised.  Oracle has presented the State and Cover Oregon with over $240 million in false claims under those contracts.  Oracle's conduct constitutes not just false claims, but a pattern of racketeering activity that has cost the State and Cover Oregon hundreds of millions of dollars.

While stalling on responding to the Attorney General's Civil Investigative Demand, and knowing that the Oregon Attorney General's lawsuit was inevitable (*see* Kaner Decl. ¶ 4), Oracle filed this federal lawsuit to trumpet its feigned blamelessness, split apart the true plaintiffs

(Cover Oregon, the State, and the Attorney General) by casting Cover Oregon as a defendant, when Cover Oregon has claims that vastly exceed Oracle's, and increase the State's litigation costs by simultaneously litigating in two courts.  Because of multiple lawsuits, Cover Oregon and Oracle face a substantial risk of inconsistent results.  Further, absent the State as a party here, the Court cannot grant the injunctive relief that Oracle seeks against Cover Oregon without impairing the State's interest in the work product and impeding the State's ability to meet its federal obligations.

The Attorney General, along with the State and Cover Oregon, have filed their state court lawsuit to recover losses caused by Oracle's fraud, racketeering, false claims, and breach of contracts.  Cover Oregon respectfully requests that this Court either dismiss Oracle's claims here, for failure to join the State as an indispensable party and for failure to state a claim, or stay this case pending resolution of the state court lawsuit.

## BACKGROUND

The following background relies on the Oracle complaint in this proceeding ("Fed. Compl.") and the state court complaint filed in the Marion County Circuit Court by the Oregon Attorney General, the State of Oregon, and Cover Oregon against Oracle and others ("State Compl.").  Citations to these complaints are not offered to prove the allegations but to demonstrate that Oracle's claims are intertwined with, and a subset of, the claims filed in state court by the Attorney General, the State of Oregon, and Cover Oregon.

In 2010 when Congress enacted the Patient Protection and Affordable Care Act ("ACA"), the State was already working on a project (the "Modernization Project") to modernize its computer systems to provide easy web-access to Oregonians and State case workers for critical programs which serve Oregon's most vulnerable citizens, such as Medicaid, Temporary Assistance to Needy Families ("TANF"), Employment Related Day Care ("ERDC"), and the Supplemental Nutrition Assistance Program ("SNAP").  (Fed. Compl. ¶¶ 6-7, Dkt. #1.)  The State chose to meet the requirements of ACA by creating its own health insurance exchange ("HIX").  (State Compl. ¶ 37, attached as Ex. 1 to the Kaner Decl.).)  In 2010, the State was

**PAGE 2 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY
PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

awarded a federal "Early Innovator" grant that provided a unique opportunity to combine the State's Modernization Project with its work to create a HIX (the "HIX Project"). (*Id.* ¶¶ 44-48.) The State's goal was to have a single integrated technology platform on which to build and operate a HIX along with Oregon's Medicaid, TANF, SNAP, and ERDC social service programs. (*Id.* ¶¶ 45-46.)

Following a vendor fair and analyses of the vendor responses to an extensive questionnaire, the Oregon Department of Human Services ("DHS") and the Oregon Health Authority ("OHA") (collectively "the State") held a series of meetings with Oracle throughout 2010 and 2011. (*Id.* ¶¶ 4 & 39-42.) Oracle made presentations, provided demonstrations, and answered questions that convincingly addressed all of the State's concerns about Oracle's ability to meet the State's needs for the combined Modernization and HIX projects with the proposed "Oracle Solution." (*Id.* ¶ 4.)

Oracle made false statements to the State about the "Oracle Solution" when it said it could meet the State's needs for the combined Modernization and HIX Projects with Oracle products that worked "out-of-the-box." (*Id.* ¶¶ 12, 35, 57-60 & 164-167.) Oracle made false statements when it said its products were "flexible," "integrated," worked "easily" with other programs, and would provide "the most comprehensive and secure solution with regards to the total functionality necessary for Oregon." (*Id.* ¶¶ 3, 35 & 164.)

Oracle's fraudulent representations induced the State to sign the first contract in June 2011 for Oracle to build a single platform for both the health insurance exchange and to modernize the State's social services technology. As soon as the first contract was signed, Oracle took control of both Projects. (*Id.* ¶¶ 5 & 169.)

The State initially intended to hire an independent "Systems Integrator" to manage the Projects and implement the "Oracle Solution." Oracle, which was secretly dead set against the State hiring an independent Systems Integrator, convinced the State that a systems integrator would unnecessarily delay the Projects and instead recommended that the State hire Oracle Consulting Services to direct the Projects. (*Id.* ¶ 5.) Oracle convinced the State to spend

**PAGE 3 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY**
**PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

millions of dollars more to use Oracle Consulting Services to design, plan, and manage the Projects. (*Id.* ¶ 6.) Oracle, in essence, became the Systems Integrator, bringing on project managers and taking the lead in proposing system architecture, selecting software and hardware, and managing the Projects. (*Id.*) In 2013 alone, Oracle charged Cover Oregon millions of dollars for the work of Oracle employees that provided project management. From 2011 on, Oracle was the technical lead on both Projects and was responsible for the development of the technology. Oracle not only was responsible for all technology, it tightly controlled access to the development environments, so that the State and Cover Oregon had to rely on Oracle's stage-managed demonstrations and reports to learn about Oracle's progress on the Projects. (*Id.* ¶¶ 6, 102, 103 and 106.)

In 2013, the State transitioned the HIX Project to Cover Oregon, a newly created public corporation responsible for running Oregon's health insurance exchange. (*Id.* ¶ 7.) Cover Oregon needed to launch the exchange to the public on October 1, 2013, to ensure that Oregonians would be able to enroll in health insurance online in time to meet federal deadlines. (*Id.*) As part of the transition, in the spring of 2013 Oracle presented Cover Oregon detailed spreadsheets showing that, because of work Oracle already performed under the State contracts, the HIX Project was nearly 80% complete. (*Id.*) Further, Oracle assured Cover Oregon that the exchange would be ready to launch on October 1, 2013. (*Id.*) Relying on Oracle's statements about the work already performed under the prior State contracts and on Oracle's assurances that the exchange would be ready to launch on October 1, Cover Oregon entered its own contracts with Oracle to complete the HIX Project. (*Id.*)

Oracle failed to deliver. First, Oracle asked Cover Oregon to reduce the scope of the HIX Project, to which, in order to meet its October 1, 2013 launch date, Cover Oregon had no choice but to agree. (*Id.* ¶ 8.) Even with a reduced scope, Oracle was unable to fulfil its promises. Despite the scope reduction and the tens of millions of dollars Oracle received for additional services, the HIX remained at approximately 80% complete through early August 2013 when

Oracle stopped providing estimates of the percent complete.  On October 1, Oregon's health insurance exchange was not ready for public launch.  (*Id.*)

Despite Oracle's failure, its executives continued to demand full payment while promising the exchange would be ready to launch, first by mid-October, then by the end of October, then in December, then January 2014, then February.  Again and again, Oracle broke its promises, missing every date.  Without the website portal that the State and Cover Oregon had already paid Oracle more than $100 million to build, Cover Oregon and the State each had to hire temporary employees to manually enroll Oregonians in health insurance and other programs by processing paper applications.  (*Id.* ¶ 9.)

Though most of Oracle's work is shoddy and incomplete, Cover Oregon is currently using a limited portion of the back-end of the HIX to make Medicaid eligibility determinations based on Modified Adjusted Gross Income ("MAGI") under the ACA.  Cover Oregon and the State intend to continue to use this portion in the future (*id.* ¶ 155), and it is Cover Oregon's use of Oracle's work product for determining Medicaid eligibility, and the State's future use, that Oracle here seeks to enjoin.  (Fed. Compl. ¶ 42 & Prayer for Relief ¶ C.)  Enjoining the use of that portion of Oracle's work would prevent Cover Oregon and the State from making timely MAGI Medicaid determinations, and federal law requires them to make those timely determinations.  *See* 42 C.F.R. ch. IV, subchap. C, part 431, subpart A & part 435, subparts J & M.  Making timely Medicaid determinations is critical to the State and to the public; MAGI-eligible Oregonians are from the lowest socioeconomic population and are in the greatest need of health care benefits.  Despite the fact that Cover Oregon and the State have already paid for this work, Oracle claims here it is owed more.

Oracle wilfully refused to fix its defective work under the warranties it gave to the State and to Cover Oregon and continually demanded to be paid for that defective work.  (State Compl. ¶¶ 1 & 11.)  Realizing Oracle would never live up to its obligations, Cover Oregon began work to transition to a federally run health care exchange website.  The State and Cover Oregon

must have a system in place by November 15, 2014, when federally imposed deadlines require open enrollment for health insurance to resume for all Oregonians.

From the first misrepresentations to the State up through the fraud perpetuated on Cover Oregon, Oracle's false statements and omissions harmed both the State and Cover Oregon.  (*Id.* ¶ 14.)  Not only were Oracle's claims false, Oracle's work was abysmal and the cost was extraordinary.  The State and Cover Oregon paid Oracle approximately $240 million for a health insurance exchange that never worked and a modernization program that never got off the ground.  (*Id.* ¶¶ 12-14.)  The State and Cover Oregon have spent, and will spend, tens of millions of dollars fixing or compensating for Oracle's failures, including millions of dollars to process paper applications for Medicaid and health insurance eligibility determinations and enrollment processes for last year's open enrollment period.  Going forward, Cover Oregon and the State will need to transition to the federal health insurance exchange and independently assess and repair Oracle's failures to provide a single platform to modernize the State's social service programs and provide a health insurance exchange.  (*Id.* ¶ 14.)

Oracle has never offered to return a penny of the $240 million it fraudulently caused the State and Cover Oregon to pay.  Instead, Oracle filed this lawsuit riddled with false and irrelevant allegations against Cover Oregon claiming that Cover Oregon owes it an *additional* $23 million for a "solution" that never worked (*id.* ¶ 16), and seeking to enjoin Cover Oregon and the State (though not naming the State as a party) from using the technology for which they paid.  (Fed. Compl. ¶ 42 & Prayer for Relief ¶ C.)

Oracle's claims are a subpart of the issues pending in state court.  There, Cover Oregon and the State seek damages from Oracle based on (i) Oracle's fraud in inducing them to sign contracts with Oracle and to pay Oracle under those contracts, (ii) Oracle's racketeering activities, and (iii) Oracle's breaches of contract, implied duty of good faith and fair dealing, and warranty.  The Attorney General seeks damages, penalties, and injunctive relief based on (i) Oracle's racketeering activities and (ii) Oracle's and its employees' violations of the Oregon False Claims Act.

**PAGE 6 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

## SUMMARY OF ARGUMENT

The Court should dismiss Oracle's claims because the State of Oregon is a necessary and indispensable party to this litigation and cannot be joined without destroying subject matter jurisdiction. The relief Oracle seeks here will negatively affect the State's interests and could potentially subject Cover Oregon and the State to inconsistent results. Oracle's claims can be pleaded as counterclaims in the pending state court proceeding, where all necessary parties are already present and where all issues raised by this lawsuit, which are factually intertwined with the claims already pending in state court, can be resolved in an efficient, complete, and consistent manner.

Alternatively under the *Colorado River* abstention doctrine, the Court should stay Oracle's claims until the state court proceeding is completed. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) (announcing new doctrine of abstention to prevent duplicative litigation between state and federal courts). In addition to the benefits identified above, the Court's application of the doctrine here will prevent Oracle's forum shopping and will promote judicial efficiency by avoiding simultaneous litigation in two courts.

Finally, the Court should dismiss Oracle's claims pursuant to Rule 12(b)(6) because Oracle has failed to meet the federal pleading requirements.

## I.    The Court should dismiss this action because Oracle failed to join the State of Oregon, a necessary and indispensable party.

Oracle's claims should be dismissed pursuant to Rule 12(b)(7) because Oracle failed to join the State as a defendant under Rule 19. *See* Fed. R. Civ. P. 12(b)(7) ("failure to join a party under Rule 19" constitutes grounds for dismissal). The State, by and through OHA and DHS, is a necessary and indispensable party to this litigation, but the Court does not have subject matter jurisdiction over Oracle's claims against the State. Oracle contorts its claims in an attempt to bring an action against Cover Oregon alone for the purpose of manufacturing federal jurisdiction based on diversity. However, allowing Oracle to proceed against Cover Oregon alone will create a substantial risk of inconsistent rulings about the obligations and liabilities of Cover Oregon and Oracle, will be judicially inefficient, and will subject the State, Cover Oregon, and Oregon's

citizens to substantial prejudice.  Accordingly, the Court should dismiss this action so that Oracle's claims against Cover Oregon can proceed in the existing state court litigation involving all parties.

### A.    Rule 19 standard.

The Ninth Circuit has explained that a court must engage in "'three successive inquiries'" in determining whether a case must be dismissed under Rule 12(b)(7) for failure to join an indispensable absent party under Rule 19. *E.E.O.C.  v. Peabody W. Coal Co. ("Peabody III"),* 610 F.3d 1070, 1078 (9th Cir. 2010) (quoting *E.E.O.C. v. Peabody Western Coal Co. ("Peabody II")*, 400 F.3d 774, 779 (9th Cir. 2005)).

First, a court must determine whether an absent party is "necessary" to the proceeding under Rule 19(a)(1).  Rule 19(a)(1) provides that an absent party is necessary if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  If any one of the three prongs of Rule 19(a)(1) is satisfied, "that nonparty (or 'absentee') is now referred to as a 'person required to be joined if feasible.'" *Peabody III*, 610 F.3d at 1078 (quoting *Peabody II*, 400 F.3d at 779).

Second, the court must determine whether joinder of the absent party is feasible – and if joinder is feasible, the absent party is required to be joined.  *Peabody III*, 610 F.3d at 1078. Under Rule 19(a), "joinder is not feasible . . . when joinder would destroy subject matter jurisdiction."  *Peabody II*, 400 F.3d at 779 (citing Fed. R. Civ. P. 19(a)(1); *also Tick v. Cohen*, 787 F.2d 1490, 1493 (11th Cir. 1986) (same rule)).

**PAGE 8 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

Third, if joinder is *not* feasible, the court "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).  Four factors are relevant to this inquiry:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*

The Ninth Circuit has stressed that "'[t]here is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a)[, but rather the] determination is heavily influenced by the facts and circumstances of each case.'" *Peabody III*, 610 F.3d at 1081 (quoting *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir. 1986)); *see also Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) ("The inquiry is a practical one and fact specific . . . and is designed to avoid the harsh results of rigid application.") (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118–19 (1968); *Eldredge v. Carpenters 46 N. Cal. Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981)).[1]

**B.    The State of Oregon is a required party under Rule 19(a).**

The first of the three inquiries under *Peabody III* is to determine whether an absent party is necessary for the case to proceed.  "To determine if the absent party is necessary to the suit, the court must undertake [a further] two-part analysis" under Rule 19(a).  *Makah Indian Tribe*,

---

[1] To perform this fact-specific analysis under Rule 19, the Court may rely on evidence outside the pleadings.  *See Behrens v. Donnelly*, 236 F.R.D. 509, 512 (D. Haw. 2006) ("In order to determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside of the pleadings.") (citing *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960); Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 1359 at 68 (2004)).

910 F.2d at 558.  First, the court must determine whether "*complete relief* is possible among those already parties to the suit" – a determination that "is independent of the question whether relief is available to the absent party."  *Id.* (emphasis in original); *see also* Fed. R. Civ. P. 19(a)(1)(A) (joinder is required where, "in that person's absence, the court cannot accord complete relief among existing parties").

Second, the court must determine whether the absent party has an interest in the litigation and, if so, whether "that interest will be *impaired or impeded* by the suit" or whether the "*risk of inconsistent rulings* will affect the parties present in the suit."  *Makah Indian Tribe*, 910 F.2d at 558-59 (emphasis in original); *see also* Fed. R. Civ. P. 19(a)(1)(B) (where an absent party "claims an interest relating to the subject of the action," joinder is required if "disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest").  The "interest" requirement is not limited to a legal interest.  Rather, it is broadly construed, and must "'be determined from a practical perspective, not through the adoption of strict legal definitions and technicalities.'"  *Tansy v. N. Pac. Ins. Co.*, No. 04-6375-AA, 2005 WL 1334546, at *4 (D. Or. June 2, 2005) (Aiken, J.) (quoting *Aguilar v. L.A. Cnty.,* 751 F.2d 1089, 1093 (9th Cir. 1985)).  Also, the interest requirement may be "'broadly construed in order to require joinder of all conditionally necessary parties.'"  *Tansy*, 2005 WL 1334546, at *4 (quoting *Lopez v. Martin Luther King, Jr. Hosp.*, 97 F.R.D. 24, 29 (C.D. Cal. 1983)).

While each determination of whether an absent party is required under Rule 19(a) is unique, the Ninth Circuit's ruling in *Peabody III* is illustrative.  *Peabody III* involved claims brought by the Equal Employment Opportunity Commission (the "EEOC") against Peabody Western Coal Company ("Peabody") alleging that Peabody's policy of "maintain[ing] a preference for employing Navajo workers" at mines it leased from the Navajo Nation (the "Nation") constituted unlawful employment discrimination against non-Navajo Indians.  *Peabody III*, 610 F.3d at 1074.  Peabody's policy, set forth in a "Navajo employment preference

provision" in its leases with the Nation, was required by the Secretary of the Interior (the "Secretary") in order for the leases to be approved by the Department of the Interior. *Id.* at 1074-75, 1080. In its action against Peabody and the Nation, the EEOC sought both damages and an injunction of Peabody's preferential hiring treatment of Navajo Indians. *Id.* at 1075-76. Peabody and the Nation each filed motions to dismiss under Rule 12(b)(7), arguing that the Secretary of the Interior was a necessary and indispensable party under Rule 19. *Id.* at 1076.

The *Peabody III* court determined that the Secretary was a required party under all three prongs of Rule 19(a)(1). First, the court held that, because "the Secretary insisted that the disputed employment preference provision be included in the leases between Peabody and the Nation" and "is ultimately responsible for its continued inclusion in the leases," it could not accord "complete relief among the existing parties" under Rule 19(a)(1)(A). *Peabody III*, 610 F.3d at 1081. Looking to the practical implications of the relief sought by the EEOC, the court reasoned that if the EEOC succeeded in its claim for damages, "Peabody will be obliged to pay damages for having engaged in conduct that was mandated by the Secretary" without any opportunity to seek indemnification from the Secretary due to sovereign immunity. *Id.* The court also recognized that, because Peabody was unable to modify the leases without approval of the Secretary, if the EEOC were to succeed in its claim for injunctive relief "Peabody may be obliged by the court to disregard the preference provision, while the Secretary would remain free to insist that Peabody honor it, upon pain of losing the leases." *Id.* Put another way, in light of the relief being sought by the EEOC, the court simply could not fashion relief that the plaintiff sought without the Secretary as a party in the litigation.

Second, under Rule 19(a)(1)(B), the Ninth Circuit determined that the Secretary had an "interest in the legality of the lease provisions" and, as a result, an interest in the litigation. *Id.* at 1081-82. The court then determined that the Secretary's interest would be impaired or impeded under Rule 19(a)(1)(B)(i) if the end result of the litigation "would require him to modify the terms of leases he approves for entities conducting business on the Navajo reservation." *Id.* at 1082. The court also looked to the practical reality of both Peabody and the Nation being "put

**PAGE 11 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

. . . between the proverbial rock and a hard place" by having to "choose between complying with the injunction or risking cancellation of the leases for violating terms mandated by the Secretary" if the EEOC succeeded in its claims for injunctive relief. *Id.* As a result, a judgment in EEOC's favor would put Peabody and the Nation at risk of inconsistent obligations because of the Secretary's interest, and the Secretary qualified as a required party under Rule 19(a)(1)(B)(ii) as well. *Id.*

The State qualifies as a required party here under each of those three prongs as well, and Cover Oregon and Oracle are at substantial risk of inconsistent obligations. Oracle seeks both damages and injunctive relief. It seeks damages because it alleges that Cover Oregon did not pay for work that Oracle allegedly performed. Oracle also seeks an injunction against Cover Oregon using and transferring that work product. (Fed. Compl. ¶ 42, Prayer for Relief ¶ C.) Additionally, Oracle seeks an injunction against parties that it has not joined to the complaint: it asks this Court for "an order enjoining Cover Oregon . . . and those persons in active concert or participation with it[.]" (Fed. Compl. Prayer for Relief ¶ C.)

First, under Rule 19(a)(1)(A), without the State as a party, this Court cannot grant Oracle the injunctive relief it seeks. Cover Oregon has already transferred some of the work product to the State. Just like Peabody had no control over the Secretary in *Peabody III*, Cover Oregon has no means of controlling the State's use of Oracle's work product, such that Oracle's prayer for injunctive relief could not be enforced against the State because the State is not a party here. Thus, the Court cannot accord "complete relief among the existing parties," and the State is a required party under Rule 19(a)(1)(A).

Next, the State has an interest relating to the subject of this action that makes it a necessary party under the second and third prongs, Rule 19(a)(1)(B)(i) and (ii). The State, as demonstrated by its state court complaint, plainly has an interest in this litigation.[2] The Ninth

---

[2] As a threshold matter, the State has already claimed such an interest in its filing in state court. *See United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) ("Joinder is 'contingent . . . upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action.'") (quoting *Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1043 (9th Cir. 1983)).

Circuit has developed "general principles" as to whether an absent party possesses the required interest under Rule 19(a)(1)(B). *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 970-71 (9th Cir. 2008) ("an interest that 'arises from terms in bargained contracts' may be protected, but we have required that such an interest be 'substantial.' An interest in a fixed fund or limited resource that the court is asked to allocate may also be protected.") (internal citations omitted).

The State's interest makes it a required party under Rule 19(a)(1)(B). The State's interest fits squarely among the substantial interests the Ninth Circuit has acknowledged. It has a strong – and, for Oregon's citizens, critical – interest in continuing to use that piece of the Oracle work product that functions to make Medicaid determinations. Indeed, the State must continue to meet the requirements of ACA and, beginning in November 2014, will take over from Cover Oregon the responsibility to make Medicaid determinations. Further implicating the State's substantial interest in this proceeding is that the injunctive relief that Oracle seeks will require the Court to separate the work that the State and Cover Oregon paid for (and for which Oracle does not seek an injunction) and the work that Oracle alleges it performed for Cover Oregon but was not paid. Even if the State somehow were not permitted to use work product that Cover Oregon has already shared with the State, the State itself has paid Oracle over $130 million for the integrated platform developed under the State contracts which included Medicaid eligibility functions. The State has a strong interest in preserving its ability to use that work product. Sorting out what portion of the work product the State paid for and what portion Cover Oregon paid for, and for what portion, if any, Oracle is entitled to additional payment, must be determined in a single proceeding because both the State and Cover Oregon have substantial interests at risk and should not be subjected to inconsistent results.

The State's interest in the litigation satisfies both prongs of Rule 19(a)(1)(B). Under Rule 19(a)(1)(B)(i), the injunction Oracle seeks against use and transfer of the work product will impede the State's interest in using the work product that it has already paid for to determine Medicaid eligibility and to modernize its services to the public. The services Oracle rendered

were supposed to be for the benefit of Cover Oregon *and* the State.  It was Oracle's original fraudulent representations to the State that resulted in the first contract in June 2011 for Oracle to build a *single* platform for both the health insurance exchange and the modernization of the State's social services technology.  The State's interest will be impaired or impeded if it is somehow restricted from making use of Oracle work product, whether transferred from Cover Oregon or obtained directly from Oracle by the State.

Under Rule 19(a)(1)(B)(ii), an injunction of the nature sought by Oracle would put Cover Oregon at risk of inconsistent obligations by forcing Cover Oregon to choose between complying with the injunction sought by Oracle, on one hand, and assisting the State in meeting federal ACA and Medicaid requirements – and, in the process, helping Oregon's citizens – by making use of the limited piece of Oracle's "work product" that works.

Further, the damages sought by Oracle in this action risk creating inconsistent obligations for Oracle and Cover Oregon because of the Attorney General's interest in Oracle's claims for payment for its work.  In the state court action, the Attorney General, in the name of the State and Cover Oregon, seeks damages from Oracle under the Oregon False Claims Act and ORICO. The State's claims under the False Claims Act and ORICO address the same issues that Oracle alleges in this action: whether Cover Oregon owes Oracle money for Oracle's work (as Oracle alleges) under the contracts between them, or, as the Attorney General alleges, Cover Oregon owes Oracle nothing and instead Oracle is liable because of its false claims and racketeering activities concerning those same contracts.  (State Compl. ¶¶ 1, 206-277, 364-383.)  Both Cover Oregon and Oracle would be subject to inconsistent obligations if Oracle prevails in this proceeding and the State prevails in the state court action; alternatively, Oracle could be subject to double obligations if Cover Oregon prevails in its mandatory federal court counterclaims and the State prevails on its claims in state court.  Because of those possible outcomes, the State's interests in the contracts and payments at issue in this proceeding leave Oracle and Cover Oregon subject to a substantial risk of inconsistent or multiple obligations and, hence, the State is a necessary party under Rule 19(a)(1)(B)(ii).

**C.      Joinder is not feasible.**

In the second inquiry under *Peabody III*'s interpretation of Rule 19, the court must determine whether joinder of the absent party is feasible.  Where joinder of a party would destroy subject matter jurisdiction, it is not feasible under Rule 19.  *See Peabody II,* 400 F.3d at 779.

Here, joinder of the State in this litigation is not feasible.  Oracle brings its claims based on diversity jurisdiction.  Because the State is not a citizen of any state for purposes of the diversity statute, and 28 U.S.C. § 1332 by its express terms does not extend to the State, the State cannot be joined without destroying diversity jurisdiction.  *E.g. Moor v. County of Alameda,* 411 U.S. 693, 717 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction.");  *Hood v. Astrazeneca Pharms., LP*, 744 F. Supp. 2d 590, 597 (2010) (remanding Mississippi Attorney General's claim on behalf of the State for violation of the state's consumer protection act, because the State's lack of citizenship destroys diversity jurisdiction); s*ee also Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*, 224 F.R.D. 661, 668 (W.D. Wash. 2004) ("The law is settled that indispensable parties cannot be nominal parties and their citizenship cannot be disregarded for the purpose of determining whether diversity jurisdiction exists.").

**D.      Because the State is a necessary party and cannot be joined, and because the state court proceeding can provide complete relief, the Court should dismiss this action under Rule 19(b).**

In the third inquiry under *Peabody III*'s interpretation of Rule 19, if joinder is *not* feasible, the court "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).

Here, the State is an indispensable party to this litigation and, as a result, the Court should dismiss Oracle's complaint.  As set forth above, Rule 19(b) provides that, where joinder is not feasible, the court will look to four factors to determine whether an action should nevertheless proceed without a required absent party, or should be dismissed:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* Each of these four factors militates in favor of dismissal.

Under Rule 19(b)(1), the Court should consider whether, in the absence of the State, the State or Cover Oregon or Oracle may be prejudiced by proceeding here. As explained above, the State and Cover Oregon have an interest in ensuring the continued use of those portions of Oracle's defective work that have been salvaged in order to fulfill the State's and Cover Oregon's continuing federal obligations to process Medicaid applications, make eligibility determinations, and be ready in November for open enrollment for health care for all Oregonians.

Without the State as a party in this action, there is the potential for prejudice to the State and to the existing parties on the questions of who paid for what work, whether anything is owed to Oracle at all, and whether Oracle has an obligation to return the millions of dollars paid to it by both the State and Cover Oregon.[3] Under Rule 19(b)(2), a court should consider whether any prejudice to the absent party could be lessened or avoided in crafting relief. Under Rule 19(b)(3), a court should consider whether it can provide adequate relief to the plaintiff without the absent party. Here, it would be difficult for the Court to structure relief that meets those two criteria in this lawsuit between Oracle and only Cover Oregon. Because Oracle seeks to enjoin use of work product that was paid for by both Cover Oregon and by the State, the Court cannot craft relief that is both adequate to Oracle (i.e., grants Oracle's request for an injunction) and does not prejudice the State; alternatively, an injunction may be inadequate for Oracle because it

---

[3] Oracle has an obligation to return monies paid by both Cover Oregon and by the State based on the pending state court claims for fraud, false claims, ORICO, and breach of contract, already filed by the Attorney General, the State, and Cover Oregon.

**PAGE 16 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

likely is not enforceable against the State, an absent party.  Similarly, it is not possible for the

Court to craft relief on Oracle's damages claims that avoid or lessen the possible prejudice to

Cover Oregon and the State that will arise from the substantial risk for inconsistent results

between this action and the State court action.  Oracle's breach of contract claims here and the

State's ORICO and OFCA claims in state court are intertwined and create the substantial risk of

inconsistent results.

Further, the overlap in issues between the two actions also militates in favor of dismissal.

In considering Rule 19(b)(2) and (3), the Court should consider the interests of the Court and the

public to create an efficient, consistent and effective system for complete resolution of all inter-

related disputes.  *See Navigators Ins. Co. v. K & O Contracting, LLC*, No. 3:12-CV-01324-ST,

2013 WL 1194722, at *4 (D. Or. Jan. 10, 2013), *report and recommendation adopted,* No. 3:12-

CV-01324-ST, 2013 WL 1194715 (D. Or. Mar. 21, 2013) ("Maintaining this action without [the

absent party] disserves not only the parties, but also the interests of the courts and the public in

'complete, consistent, and efficient settlement of controversies.'") (quoting *Provident*

*Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111 (1968)); *Kramer v. City of Lake*

*Oswego*, No. 3:12-CV-00927-HA, 2012 WL 4863214, at *4 (D. Or. Oct. 11, 2012) (dismissing

plaintiff's claim where state court could resolve "issues raised by this lawsuit in an efficient,

complete, and consistent matter"); Fed. R. Civ. P. 19, Advisory Committee Notes (1966) ("The

interests that are being furthered here are not only those of the parties, but also that of the public

in avoiding repeated lawsuits on the same essential subject matter.").

Lastly, under Rule 19(b)(4), the state court provides an adequate forum for complete

relief.  This Court, under similar circumstances, has dismissed cases where an absent party

would destroy diversity and the Rule 19(b) factors militate in favor of dismissal.  *See, e.g.*

*Navigators Ins. Co,* 2013 WL 1194722, at *4; *Kramer v. City of Lake Oswego*, 2012 WL

4863214 at *4 (dismissing plaintiff's claim for failure to join the State of Oregon as a necessary

party, holding: "Most important among the factors this court has considered is that in state court,

**PAGE 17 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY
PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

there exists a perfectly capable forum, where all necessary parties may be joined, that can resolve the issues raised by this lawsuit in an efficient, complete and consistent matter.").

Because the State is a necessary and indispensable party that cannot be joined to this federal court proceeding, and because the state court proceeding provides an adequate forum for delivering complete, consistent, and efficient resolution of all inter-related claims, Cover Oregon seeks dismissal of Oracle's claims.

## II.    The Court should stay this action under the *Colorado River* doctrine.

In *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800 (1976), the Supreme Court established an abstention rule applicable to situations when parallel state and federal litigation are pending.  Because the claims in this proceeding are parallel to, and a subset of, the state court lawsuit and because all parties cannot be joined here in federal court, Cover Oregon requests that this action be stayed to allow the state court action to proceed first under the doctrine from *Colorado River* and subsequent Ninth Circuit case law interpreting it.  Though federal courts generally possess an "unflagging obligation[4] . . . to exercise the jurisdiction given them [,] . . . in rare cases . . . the presence of a concurrent state proceeding [will] permit the district court to dismiss a concurrent federal suit for reasons of wise judicial administration." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 977-78 (9th Cir. 2011) (citing *Colorado River*, 424 U.S. at 818) (internal quotation marks omitted)).  The instant matter presents such circumstances.

To apply the *Colorado River* abstention doctrine, "[a]s a threshold requirement, the federal and state court actions must be substantially similar."  *Fierle v. Perez*, 350 F. App'x 140, 141 (9th Cir. 2009) (internal quotations omitted).  Here, this lawsuit is a subpart of the state lawsuit.  Oracle's claims are essentially mirror images of a portion of Cover Oregon's claims, although the state court case is more extensive.  Both lawsuits involve the same parties, Cover Oregon and Oracle (though the state court case also involves the State and the Oregon Attorney

---

    4  The concept of an "unflagging obligation" "somewhat overstates the law because in certain circumstances, a federal court may stay its proceedings in deference to pending state proceedings."  *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989).

**PAGE 18 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY
PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

General), and are about the same disputed contracts and services (though the state court case also involves the prior related contracts between Oracle and the State), and both cover the same series of events.  (*Compare* Fed. Compl. ¶¶ 6-37 (Oracle alleges history of Oracle's relationship with the State and Cover Oregon from 2009 through 2014) *with* State Compl. ¶¶ 31-155 (same).) Oracle's claims against Cover Oregon can be presented as counterclaims in the state court case. The fact that this federal court action is a subset of the more comprehensive state court action demonstrates that the two actions are substantially similar.  *See Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989) ("We should be particularly reluctant to find that the actions are not parallel when the federal action is but a 'spin-off' of more comprehensive state litigation.").

To decide whether a particular case warrants a *Colorado River* stay or dismissal, the Ninth Circuit has recognized eight relevant factors:

> (1) which court first assumed jurisdiction over any property at stake;

> (2) the inconvenience of the federal forum;

> (3) the desire to avoid piecemeal litigation;

> (4) the order in which the forums obtained jurisdiction;

> (5) whether federal law or state law provides the rule of decision on the merits;

> (6) whether the state court proceedings can adequately protect the rights of the federal litigants;

> (7) the desire to avoid forum shopping; and

> (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St.*, 656 F.3d at 978-79 (line breaks added).  These factors "are subjected to a flexible balancing test . . . ."  *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002).

The first factor, jurisdiction over property, does not apply here as no property is at stake. Oracle claims money damages, and "money . . . is not the sort of tangible physical property referred to in *Colorado River*."  *Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988).

**PAGE 19 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY
PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

The second factor, the inconvenience of the federal forum, also does not apply, as federal or state court are equally convenient, though as discussed herein, the federal court cannot provide complete relief for all disputes arising from this complicated set of facts.

The third factor is the avoidance of piecemeal litigation and here it militates towards dismissal to avoid duplicative efforts and possibly different end results. *See Am. Int'l Underwriters*, 843 F.2d at 1258. Crucially, "the 'paramount' consideration in *Colorado River* was . . . 'the danger of piecemeal litigation.'" *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1234 (10th Cir. 2013), *cert. denied*, 133 S. Ct. 2831 (2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983)). In addition to avoiding piecemeal litigation, "the *Colorado River* Doctrine was adopted to avoid duplicative litigation." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999) (citing *Colorado River* and *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717 (1996)).

This "paramount" consideration applies here: this federal proceeding is a piece of the total case, which includes both common law and statutory claims by the State of Oregon and the Oregon Attorney General (in addition to claims by Cover Oregon) against Oracle, several of its employees, and its partner Mythics, Inc. The breach of contract claims between Oracle and Cover Oregon are just a piece of the more extensive set of claims in the state court action, and many of the fact issues in this federal proceeding will be (re)litigated in the state court action. There will be overlapping issues between the two actions, namely whether Oracle has a valid basis to demand payment from Cover Oregon or whether, as the plaintiffs in the state court action allege, Oracle has no basis for further payment and instead owes money to Cover Oregon and the State for fraudulent inducement, racketeering, breach of contract, and false claims. (State Compl. ¶¶ 184-234 & 278-383.) Under the *Colorado River* doctrine, piecemeal and duplicate litigation should be avoided, and, here, piecemeal and duplicate litigation are precisely what will occur if this Court does not stay this lawsuit. Since the state and federal lawsuits cover the same factual issues, simultaneous adjudication will result in the duplication of efforts, increased litigation costs, judicial inefficiency, and the possibility of conflicting results.

**PAGE 20 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

The order in which the forums obtained jurisdiction is the fourth factor, but it should not tip the scales against abstention. Though Oracle filed its lawsuit in federal court first, it did so only after the Governor asked the Attorney General to hold Oracle responsible, after the Attorney General launched a False Claims Act investigation, and after Oracle knew that the Attorney General intended to pursue the State's claims.[5]  (*See* Kaner Decl. ¶ 4.)

The fifth factor is whether federal law or state law provides the rule of decision on the merits. Here, state law will apply to all claims. Further, Oracle's claims will overlap with the Attorney General's claims under the Oregon False Claims Act, which may present new and unique issues, since that Act is a relatively new statute in Oregon. Where the case "involves routine issues of state law—misrepresentation, breach of fiduciary duty, and breach of contract— which the district court is fully capable of deciding," this factor is neutral. *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990). Here, the overlap with the Attorney General's claims under the Oregon False Claims Act weighs in favor of the state court proceeding first.

The sixth and eighth factors – whether the state court proceedings can adequately protect the rights of the federal litigants and whether the state court proceedings will resolve all issues before the federal court – unequivocally weigh in favor of a stay of this action. Oracle's claims will be decided as part of Cover Oregon's and the State's claims for breach of contract, breach of warranty, fraud, and ORICO violations, as well as the Attorney General's claims under the False Claims Act and ORICO against Oracle in state court, where Oracle can bring its federal claims as counterclaims. The Oregon state court lawsuit will resolve all issues before this Court while protecting the rights of the federal litigants.

Finally, the seventh factor is the avoidance of forum shopping. Here, Oracle knew the State, the Attorney General, and Cover Oregon intended to pursue their claims in state court, where jurisdiction resides over all the claims. Rather than wait to be sued after the Attorney

---

[5] Over the past several weeks, Oracle has paid for its counsel Orrick, Herrington & Sutcliffe LLP to represent its former employees when the Attorney General sought to obtain their sworn statement as part of her false claims investigation. (Kaner Decl. ¶ 4.)

**PAGE 21 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

General completed her false claims investigation,[6] Oracle filed this federal lawsuit to split the plaintiffs apart by casting Cover Oregon as a defendant, when Cover Oregon has claims that vastly exceed Oracle's, and to increase the State's litigation costs by requiring Cover Oregon, the State and the Attorney General to simultaneously litigate the same set of facts in two courts. Oracle's forum shopping should be stopped, and the claims dismissed.

In sum, although courts apply the *Colorado River* abstention doctrine cautiously, it is an important rule that prevents the waste of judicial resources, and it should be applied in this case. The Court should stay this proceeding pending the outcome of the state court case, where all claims arising from the facts alleged here can be resolved.

## III. Oracle's claims do not meet the federal standard for pleading breach of contract or quantum meruit relief.

The Court should also dismiss Oracle's claims pursuant to Rule 12(b)(6), because Oracle has failed to meet the standards for pleading a claim set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).[7] Following the sea change in federal pleading with *Iqbal* and *Twombly*, a plaintiff cannot plead generally and expect its complaint to survive a motion to dismiss. *Iqbal*, 556 U.S. at 687; *Twombly*, 550 U.S. at 561-62. Rather, to survive dismissal, the factual allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," "[n]or does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 5565 U.S. at 678. Simply put, a plaintiff's claims "must be supported by factual allegations." *Id.* at 679; *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140

---

[6] While preparing Oracle's complaint to file here, Oracle's counsel sought to delay the Attorney General's investigation both by delaying Oracle's production in response to the Attorney General's Civil Investigative Demand to Oracle and by seeking to delay the Attorney General's Civil Investigative Demand to obtain the sworn testimony from two former Oracle employees. (Kaner Decl. ¶ 4.)

[7] This Rule 12(b)(6) motion does not rely on the Kaner Declaration.

**PAGE 22 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

(9th Cir. 2012) ("A complaint need not state 'detailed factual allegations,' but must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 555, 570).

Oracle has not met this standard.  In its claim for breach of contract, Oracle has failed to identify any of the alleged "work product that Oracle's personnel produced and for which Cover Oregon has not paid" (Fed. Compl. ¶ 37) with any specificity whatsoever.  It has not identified a single Purchase Order or invoice provided to Cover Oregon that Cover Oregon has failed to pay. To the contrary, despite having attached to the complaint reams of exhibits, none of them set forth the services Oracle alleges were rendered for which it has not been paid.  Oracle's complaint contains merely "the broadest of generalities" – which is not enough under *Iqbal* and *Twombly*.  *Century Indem. Co. v. Marine Grp., LLC*, No. 08-1375-AC, 2009 WL 3125477, at *4 (D. Or. Sept. 29, 2009) (dismissing claim for breach of contract "contain[ing] only the broadest of generalities," on the basis that such claims as pleaded were "insufficient to meet the standard articulated in *Twombly* and [*Iqbal*]"); *see also, e.g., Williams v. L.A. Job Corps*, 520 F. App'x 551, 551 (9th Cir. 2013) (unpublished) (holding that district court "properly dismissed [plaintiff's] action alleging breach of contract, harassment, discrimination, defamation, and wrongful termination because [plaintiff] alleged so few facts that the court could infer only the possibility of misconduct" (citing *Iqbal*, 556 U.S. at 678 *and Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.1998)).

Oracle's quantum meruit claim is similarly flawed.  Again, Oracle fails to describe adequately which alleged "services" are the subject of its quantum meruit claim.  Oracle's complaint does not identify which specific services were provided, who provided them, when they were provided, or any other factual allegations that might elevate this claim beyond the level of mere "naked assertions devoid of [facts]."  *Iqbal*, 556 U.S. at 678.

Moreover, while "[t]hreadbare recitals of the elements of a cause of action" are not enough under *Iqbal* and *Twombly*, Oracle has not even managed to do *that* for its quantum meruit claim.  "The elements of [quantum meruit under Oregon law] are a benefit conferred,

**PAGE 23 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS; AND MEMORANDUM IN SUPPORT**

awareness by the recipient that a benefit has been received, and judicial recognition that, under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *Verizon Nw., Inc. v. Main St. Dev.*, Inc., 693 F. Supp. 2d 1265, 1275 (D. Or. 2010) (internal quotation marks and citations omitted).  In its quantum meruit claim, Oracle alleges only that it provided services to Cover Oregon that Oracle values at $23 million, and that it was not paid for those services.  Oracle has not pleaded that Cover Oregon is aware that it received any such "benefit."  Oracle also has failed to allege any facts that, under the circumstances, it would be unjust to allow Cover Oregon to retain the "benefit" without making further payment.  Therefore, the Court should dismiss Oracle's claims.

## CONCLUSION

Cover Oregon respectfully requests that Oracle's claims be dismissed for failure to join the State, which is a necessary and indispensable, or alternatively, stay this lawsuit until the state court proceeding is completed, in which all parties are present and where all claims can be efficiently, consistently and completely adjudicated.

Additionally, Cover Oregon respectfully requests that the Court dismiss Oracle's complaint for failure to state a claim.

DATED this 22nd day of August, 2014.

By:    */s/ Lisa A. Kaner*
        David B. Markowitz, OSB No. 742046
        DavidMarkowitz@MHGM.com
        Peter H. Glade, OSB No. 790480
        PeterGlade@MHGM.com
        Lisa A. Kaner, OSB No. 881373
        LisaKaner@MHGM.com
        Dallas S. DeLuca, OSB No. 072992
        DallasDeLuca@MHGM.com
        Harry B. Wilson, OSB No. 077214
        HarryWilson@MHGM.com
        Tel:  (503) 295-3085
        Fax:  (503) 323-9105
            On Behalf of Oregon Attorney General
            Ellen Rosenblum
        Special Assistant Attorneys General For
        Defendant Oregon Health Insurance Exchange
        Corporation

399567_2

**PAGE 24 - MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY
PROCEEDINGS; AND MEMORANDUM IN SUPPORT**