IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ORACLE AMERICA, INC., a                    3:14-CV-01279-BR
Delaware Corporation,

                               OPINION AND ORDER

        Plaintiff,

v.

THE OREGON HEALTH INSURANCE
EXCHANGE CORPORATION, dba
COVER OREGON, an Oregon
Limited Liability
Corporation; THE STATE OF
OREGON, BY AND THROUGH THE
OREGON HEALTH AUTHORITY AND
THE OREGON DEPARTMENT OF
HEALTH SERVICES; and DOES
1-25, INCLUSIVE,

        Defendants.


BRENNA K. LEGAARD
JEFFERY S. EDEN
Schwabe, Williamson & Wyatt, P.C.
1211 S.W. Fifth Avenue, Suite 1900
Portland, OR 97204
(503) 222-9981

KAREN JOHNSON-MCKEWAN

1 - OPINION AND ORDER

**ROBERT S. SHWARTS**
**ERIN M. CONNELL**
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

**DORIAN E. DALEY**
**DEBORAH K. MILLER**
**PEGGY E. BRUGGMAN**
Oracle Corporation
Legal Department
500 Redwood Shores, CA 94065
(650) 506-9534

       Attorneys for Plaintiff

**DAVID B. MARKOWITZ**
**PETER H. GLADE**
**LISA A. KANER**
**DALLAS S. DELUCA**
**HARRY B. WILSON**
Markowitz Herbold PC
Suite 3000 Pacwest Center
1211 S.W. Fifth Avenue
Portland, OR 97204-3730
(503) 295-3085

       Attorneys for Defendants

**BROWN, Judge.**

    This matter comes before the Court on the State of Oregon's Motion (#39) to Dismiss; the Joint Motion (#41) to Dismiss or, in the Alternative, to Stay of the State and Cover Oregon; and Cover Oregon's Motion (#44) to Dismiss. For the reasons that follow, the Court **GRANTS** the State's Motion to Dismiss; **DENIES** Cover Oregon's Motion to Dismiss; and **GRANTS in part** and **DENIES in part** the Joint Motion to Dismiss or, in the Alternative, to Stay of

2 - OPINION AND ORDER

the State and Cover Oregon.  The Court also **GRANTS** Oracle
America, Inc., leave to file a Second Amended Complaint no later
than January 27, 2015.


## BACKGROUND

The following facts are taken from the Amended Corrected
Complaint and the materials filed in connection with the Motions
to Dismiss.

In 2007-2008 the Oregon Department of Human Services (DHS)
began a project to modernize its technology systems (the
Modernization Project).  To identify potential technology vendors
to implement the Modernization Project, DHS issued a Request for
Identification (RFI) in January 2009.

In February 2009 Oracle submitted a response to the RFI.

At some point in 2009 the Oregon Legislature created the
Oregon Health Authority (OHA) as a division of DHS.

On March 23, 2010, Congress enacted the Patient Protection
and Affordable Care Act (ACA), Public Law No. 111-148, 124 Stat.
119 (2010), and thereby established legal foundations for states
either to create health-insurance exchanges (HIX) or to use an
HIX developed by the federal government.

In October 2010 the United States Department of Health and
Human Services (HHS) announced it would offer Early Innovator
grants to states to design and to implement the information

3 - OPINION AND ORDER

technology infrastructure needed to operate the HIX required by
the ACA.  The State of Oregon determined an Early Innovator Grant
would provide it with the opportunity to combine the
Modernization Project with a project to create an HIX for the
State.

In February 2011 HHS awarded the State an Early Innovator
Grant to implement an HIX.  The State then began seeking a
company to provide both the Modernization Project and an HIX.

Throughout 2010 and 2011 OHA employees attended numerous
presentations and demonstrations by Oracle related to its ability
to provide the Modernization Project and the HIX.  The State,
through DHS/OHA, subsequently decided to use Oracle to complete
the Modernization Project and the HIX (the Oracle Solution).

Although the State did not contract with Oracle directly, it
contracted with Mythics, Inc., a corporation that works with
Oracle to distribute and to sell Oracle products and to provide
consulting on the implementation and integration of Oracle's
products.

On June 30, 2011, the State entered into an agreement with
Mythics and executed the Mythics License and Services Agreement
(MLSA).  Although Oracle did not sign the MLSA, Oracle was named
as a third-party beneficiary of the MLSA.

The MLSA did not provide for the actual purchase of Oracle
products and services, but instead provided a contractual

4 - OPINION AND ORDER

framework to govern the purchase of Oracle products and services. Actual purchases were made through a series of purchase orders submitted pursuant to the MLSA.

In June 2011 the Oregon Legislature passed legislation creating the Oregon Health Insurance Exchange Corporation (Cover Oregon)[1] as a public corporation and an independent unit of the State.  Oregon Revised Statute § 741.002(1)(a) provides Cover Oregon shall "[a]dminister a health insurance exchange in accordance with federal law to make qualified health plans available to individuals and groups throughout this state."

Also on June 30, 2011, DHS/OHA executed a Statement of Work that provided Mythics and Oracle would "assist" DHS and OHA with the "installation, implementation, configuration, and customization of the Oracle Policy Automation 10.2 components to support benefit eligibility processing and full determination for various state programs" and the HIX.

In August 2011 DHS and OHA executed a purchase order with Oracle for the purchase of licenses for the Oracle Solution, the hardware on which to run the software, and consulting services to begin planning and implementing the Oracle Solution.

Between June 30, 2011, and July 11, 2013, the State and Mythics executed 20 purchase orders under the MLSA for the

----

[1] On October 1, 2012, the Oregon Health Insurance Exchange Corporation adopted the name Cover Oregon.

5 - OPINION AND ORDER

purchase of Oracle hardware, software, and services.

In November 2011 DHS and OHA entered into the Oracle License Service Agreement (OHA OLSA) with Oracle.  Like the MLSA, the OHA OLSA did not provide for the actual purchase of Oracle products and services but instead provided a contractual framework governing the purchase of Oracle products and services.  Actual purchases were made through a series of purchase orders submitted pursuant to the OHA OLSA.

Between November 30, 2011, and May 29, 2014, DHS and OHA executed 23 purchase orders under the OHA OLSA.

In December 2012 OHA began to transition the HIX-IT Project to Cover Oregon.

As noted, Cover Oregon was not a party to the MLSA or the Oracle-OHA Agreements.  On March 14, 2013, therefore, Cover Oregon executed an Oracle License and Services Agreement (Cover Oregon OLSA) with Oracle.  Like the MLSA and the OHA OLSA, the Cover Oregon OLSA did not provide for the purchase of Oracle products and services but instead provided a contractual framework governing the purchase of Oracle products and services. Specifically, purchases were made through a series of Oracle ordering documents and Cover Oregon purchase orders submitted pursuant to the Cover Oregon OLSA.

In order for Oregonians to obtain insurance for 2014 as required by the ACA, Cover Oregon established the goal of

6 - OPINION AND ORDER

launching the HIX by October 1, 2013.  The HIX, however, was not
ready to launch at that time.  Throughout 2013 and into 2014
Oracle and Cover Oregon worked to make the Oregon HIX useable and
effective.

On August 8, 2014, Oracle filed a Complaint in this Court
against Cover Oregon, 3:14-CV-1279-BR (the Federal Action),
asserting claims for breach of contract and *quantum meruit* in
which Oracle alleged Cover Oregon has not paid for all of the
services that Oracle rendered, "continue[s] to use Oracle's work
product[,] and . . . has transferred some or all of that work
product to others in violation of the parties' written
agreements."  In the Federal Action Oracle based the Court's
jurisdiction on diversity.

On August 22, 2014, Oregon Attorney General Ellen Rosenblum,
the State of Oregon, and Cover Oregon filed an action in Marion
County Circuit Court (the State Action) against Oracle, Mythics,
and six Oracle employees[2] alleging claims for fraud; breach of
contract; breach of the Oregon False Claims Act (OFCA), Oregon
Revised Statute § 180.750, *et seq.*; and violations of Oregon
Racketeer Influenced and Corrupt Organizations Act (ORICO),
Oregon Revised Statute § 166.715, *et seq.*

Also on August 22, 2014, Cover Oregon filed in the Federal

---

[2] The Oracle employees are Stephen Bartolo, Thomas Budnar,
Kevin Curry, Safra Catz, Brian Kim, and Ravi Puri.

Action a Motion to Dismiss for Failure to State a Claim and
Failure to Join Necessary and Indispensable Party.  Specifically,
Cover Oregon asserted this Court must dismiss the Federal Action
because Oracle failed to sue the State of Oregon, a necessary and
indispensable party.

On September 8, 2014, Oracle filed an Amended Complaint[3] in
the Federal Action against Cover Oregon and the State in which
Oracle asserted claims for copyright infringement (against Cover
Oregon and the State), breach of contract (against Cover Oregon),
breach of the implied covenant of good faith and fair dealing
(against Cover Oregon), and *quantum meruit* (against Cover Oregon
and the State).

On September 18, 2014, this Court denied Cover Oregon's
Motion to Dismiss (#15) in the Federal Action as moot and
directed Cover Oregon and/or the State to file any motions
against the Amended Corrected Complaint no later than October 2,
2014.

On September 25, 2014, Oracle and Safra Catz removed the
State Action to this Court (3:14-CV-1532-BR).

In the Federal Action on October 2, 2014, the State filed a
Motion to Dismiss; Cover Oregon filed a Motion to Dismiss; and
the State and Cover Oregon filed a Joint Motion to Dismiss or, in

---

[3] On September 17, 2014, Oracle filed an Amended Corrected
First Amended Complaint (#33) to correct the parties' names.

8 - OPINION AND ORDER

the Alternative, to Stay.

On October 16, 2014, Plaintiffs filed a Motion to Remand the State Action.

On November 21, 2014, the Court, among other things, heard oral argument on the Motion to Remand.  At oral argument the Court granted the Motion to Remand.  On November 25, 2014, the Court issued an Opinion and Order formally granting the Motion to Remand and remanding the State Action to Marion County Circuit Court.

On December 2, 2014, Oracle once again removed the State Action to federal court (6:14-CV-1926-BR), and on December 8, 2014, Oracle filed Motions to Consolidate in the State and Federal Actions.

On December 10, 2014, the Court entered Orders in the State and Federal Actions in which it concluded it was premature for the Court to decide the Motions to Consolidate due to the various outstanding Motions to Dismiss pending in the Federal Action.

On December 19, 2014, the Court heard oral argument in the Federal Action on the State's Motion to Dismiss; the Joint Motion to Dismiss or, in the Alternative, to Stay of the State and Cover Oregon; and Cover Oregon's Motion to Dismiss.  At oral argument the Court granted the State's Motion to Dismiss, denied Cover Oregon's Motion to Dismiss, and took the Joint Motion to Dismiss under advisement.

9 - OPINION AND ORDER

**STATE OF OREGON'S MOTION (#39) TO DISMISS**

As the Court noted at oral argument, the Court concludes at the time that Congress enacted the Copyright Remedy Clarification Act (CRCA), Pub.L. 101-553, 104 Stat. 2749 (1990), Congress did not have authority under Article I of the United States Constitution to abrogate the states' sovereign immunity to copyright claims. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72 (1996)("The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction. Petitioner's suit against the State of Florida must be dismissed for a lack of jurisdiction.").

In addition, as the Court also concluded at oral argument, when Congress enacted the CRCA, it did not validly abrogate the states' sovereign immunity to copyright actions pursuant to Section 5 of the Fourteenth Amendment to the United States Constitution. *See Chavez v. Arte Publico Press*, 204 F.3d 601, 604 (5th Cir. 2000). *See also Issaenko v. Univ. of Minn.*, No. 13-3605 (JRT/SER), 2014 WL 4954646, at *11 (D. Minn. Sept. 30, 2014), and the cases cited in *Issaenko*.

Finally, as the Court concluded at oral argument, the State did not waive its sovereign immunity in the Federal Action when it brought the State Action in state court alleging state-law claims. The Court notes Oracle relies on *Competitive*

10 - OPINION AND ORDER

*Technologies v. Fujitsu Limited*, 286 F. Supp. 2d 1118, 1129 (N.D. Cal. 2003), for the proposition that when "a state invokes the jurisdiction of the federal courts, it waives sovereign immunity not only as to the state's claims, but also as to counterclaims that arise out of the same transaction or occurrence, that is, compulsory counterclaims." Here, however, it was Oracle that filed this Federal Action, and the State did not invoke the jurisdiction of this Court in the Federal Action.

Accordingly, the only other basis on which Oracle relies to urge the Court to find the State waived its sovereign immunity in this Federal Action is the venue provision found in the OHA OLSA. As the Court noted at oral argument, however, Oracle has not established on this record that its claim against the State for copyright infringement as alleged falls within the scope of the OHA OLSA contractual provision. In particular, the Court notes the sole reference to the OHA OLSA in Oracle's Amended Corrected Complaint is a parenthetical in ¶ 31 regarding claims arising from the Cover Oregon OLSA, which states: "The same language appears in a November 30, 2011 OLSA that Oracle entered into with DHS and OHA before Cover Oregon took over responsibility for the HIX project, a contract that Oregon's Department of Justice also reviewed and approved." Moreover, all of the allegations in the copyright claim (¶¶ 44-49 of the Amended Corrected Complaint) refer to violations of the Cover Oregon OLSA and do not reference

the OHA OLSA.

The Court, therefore, concludes Oracle has not established the State waived sovereign immunity from the copyright claims in this action via the venue provision in the OHA OLSA. Accordingly, as stated on the record at the December 19, 2014, hearing, the Court grants the State's Motion to Dismiss.  The Court concludes, however, that the record does not necessarily establish Oracle would be unable to cure any such defect upon amendment.  In the exercise of its discretion pursuant to Federal Rule of Civil Procedure 15, the Court grants Oracle leave to file a Second Amended Complaint to the extent that it can allege facts to establish that the State waived sovereign immunity for the copyright claim in this Federal Action pursuant to the venue clause in the OHA OLSA.

## COVER OREGON'S MOTION (#44) TO DISMISS

Cover Oregon asserts in its Motion to Dismiss that if the Court dismisses the State from the Federal Action, the Court should also dismiss the Federal Action against Cover Oregon pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19 because the State is an indispensable party.

As the Court noted at oral argument, however, the Court concludes it is premature at this early stage to find conclusively that there is not any way Cover Oregon could fairly

12 - OPINION AND ORDER

litigate the issues in this matter in the event the Court ultimately dismisses the State from this litigation. Accordingly, the Court denies Cover Oregon's Motion to Dismiss as premature with leave to renew at a later time on a fully-developed record that makes clear Cover Oregon cannot adequately litigate its own interests or represent the State's interests or that the State will be prejudiced by the Court's rulings in this matter.


### THE JOINT MOTION (#41) TO DISMISS OR, IN THE ALTERNATIVE, TO STAY OF THE STATE OF OREGON AND COVER OREGON

The State and Cover Oregon assert in their Joint Motion that the Court should dismiss Oracle's copyright claim because (1) Cover Oregon paid for the services it ordered, and, therefore, it has a license to use and to distribute the Cover Oregon OLSA copyright assets and/or (2) the copyright-infringement claim actually lies in contract rather than in copyright. The State and Cover Oregon also assert the Court should dismiss Oracle's claims for *quantum meruit* because (1) a quasi-contract cannot be implied against Cover Oregon and/or (2) Oracle has not satisfied the federal pleading standards.


### I.    Standards

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

13 - OPINION AND ORDER

> true, to "state a claim to relief that is
> plausible on its face." [*Bell Atlantic v.
> Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955.  A
> claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to
> draw the reasonable inference that the defendant
> is liable for the misconduct alleged.  *Id.* at 556.
> . . .  The plausibility standard is not akin to a
> "probability requirement," but it asks for more
> than a sheer possibility that a defendant has
> acted unlawfully.  *Ibid.*  Where a complaint pleads
> facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line
> between possibility and plausibility of
> 'entitlement to relief.'"  *Id.* at 557, 127 S. Ct.
> 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  *See also Bell Atlantic*, 550 U.S. at 555-56.  The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff.  *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)(citation omitted).  A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).

## II.  Copyright Claim

As noted, the State and Cover Oregon assert the Court should dismiss Oracle's copyright claim because (1) Cover Oregon paid

14 - OPINION AND ORDER

for the services it ordered, and, therefore, it has a license to
use and to distribute the Cover Oregon OLSA copyright assets
and/or (2) the copyright-infringement claim actually lies in
contract rather than in copyright.

**A.   Payment for Services**

In its claim for copyright infringement Oracle alleges
in pertinent part:

> 44. Oracle owns all right title and interest in
> the copyrights to the Cover Oregon OLSA Copyright
> Assets software code, as well as all claims for
> infringement thereof.
>
> 45. An express condition precedent to any license
> to Cover Oregon was that it was required to pay
> for all services rendered under the OLSA.  That
> express condition precedent has not been satisfied
> because Cover Oregon has not paid for all of the
> services rendered under the OLSA.  Accordingly,
> Cover Oregon has no license at all for the Cover
> Oregon OLSA Copyright Assets code and is not
> authorized to reproduce, prepare derivative works
> of, distribute, or publicly display those works,
> or to authorize others to do so.
>
> 46. By continuing to operate the Cover Oregon
> website, Cover Oregon is violating Oracle's
> exclusive rights to reproduce and publicly display
> the work.
>
> 47. By transferring source code to the control of
> OHA and DHS for further development, Cover Oregon
> has unlawfully distributed the Cover Oregon OLSA
> Copyright Assets work, and has unlawfully
> authorized others to prepare derivative works
> based on the Cover Oregon OLSA Copyright Assets
> work.
>
> 48. By accepting the transfer of source code from
> Cover Oregon and exercising dominion and control
> over a project to augment that code, OHA and DHS
> have violated Oracle's exclusive rights to

> reproduce and to prepare derivative works of Cover
> Oregon OLSA Copyright Assets.
>
> 49. Oracle has been actually and irreparably
> harmed by the actions of Cover Oregon in using,
> reproducing, distributing and preparing derivative
> works of the code without authorization.
> Defendants have benefitted [*sic*] from code for
> which they have not paid.

Am. Corrected Compl. at ¶¶ 44-49.

Cover Oregon asserts Oracle's claim for copyright infringement fails "because Cover Oregon has a license for the Cover Oregon OLSA Copyright Assets." Specifically, Cover Oregon asserts courts have held "[generally, a 'copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement' and can sue only for breach of contract." *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999)(quoting *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998)). *See also John G. Dandelion, Inc. v. Winchester-Conant Prop., Inc.*, 322 F.3d 26, 40 (1st Cir. 2003)("Uses of the copyrighted work that stay within the scope of a nonexclusive license are immunized from infringement suits."). Cover Oregon notes Oracle alleges in its Amended Corrected Complaint that an "express condition precedent to any license to Cover Oregon was that it was required to pay for all services rendered under the OLSA." Am. Corrected Compl. ¶ 45. The condition precedent that Oracle relies on appears in the Cover Oregon OLSA and provides:

16 - OPINION AND ORDER

> Upon payment for services, you have the
> non-exclusive, nonassignable, royalty free,
> perpetual, limited right to use for your internal
> business operations anything developed by Oracle
> and delivered to you under this agreement;
> however, certain deliverables may be subject to
> additional license terms provided in the ordering
> document.

Am. Corrected Compl., Ex. A § C.  Oracle also alleges in its

Amended Corrected Complaint that Cover Oregon did not meet the

alleged condition precedent because Cover Oregon has not paid for

all of the services rendered under the OLSA.  Cover Oregon, in

turn, asserts Oracle's claim for copyright infringement fails

because Cover Oregon paid for the services it ordered, and,

therefore, it had a license to use and to distribute the Cover

Oregon OLSA copyrighted assets.

Although both Cover Oregon and Oracle go to

considerable lengths to argue and then to rebut the assertion of

payment for services and an existing license, that is not a

proper analysis on a motion to dismiss.  As noted, the Supreme

Court and the Ninth Circuit have made clear that to survive a

motion to dismiss, a complaint need only contain "factual content

that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v.*

*Iqbal*, 556 U.S. at 679.  For purposes of this Motion, the Court

must accept as true the allegations in the Amended Corrected

Complaint and construe them in favor of Oracle.  *See Din*, 718

F.3d at 859.  The Supreme Court and Ninth Circuit have held

17 – OPINION AND ORDER

"[c]opyright infringement claims have two basic elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013)(quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  Oracle alleges in its Amended Corrected Complaint that it owns the copyrights at issue; that Cover Oregon has unlawfully used Oracle's copyrighted materials; and that "Cover Oregon has not paid for all of the services rendered under the OLSA[, and, therefore], Cover Oregon has no license . . . for the Cover Oregon OLSA Copyright Assets code."

On this record, therefore, the Court concludes Oracle has sufficiently alleged a claim for copyright infringement. Accordingly, the Court declines to dismiss Oracle's copyright claims on the basis of failure to state a claim.

## B.  Nature of the Copyright Claims

The State and Cover Oregon also assert the Court should dismiss Oracle's copyright-infringement claim because that claim lies in contract rather than in copyright.  Specifically, the State and Cover Oregon note a copyright owner generally waives its right to sue the licensee for copyright infringement when the copyright owner has granted the licensee a nonexclusive license to use copyrighted work.  The State and Cover Oregon concede

"[i]f . . . a license is limited in scope and the licensee acts
outside the scope, the licensor can bring an action for copyright
infringement." *Sun Microsystems*, 188 F.3d at 1121.
Nevertheless, the State and Cover Oregon assert they did not act
outside of the nonexclusive license granted to them by Oracle,
and, therefore, Oracle may not bring a claim for copyright
infringement.  The State and Cover Oregon rely on *MDY Industries,
LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928 (9th Cir.
2010), to support their assertion.

In *MDY Industries* the Ninth Circuit held the "potential
for [copyright] infringement exists only [when] the licensee's
action (1) exceeds the license's scope (2) in a manner that
implicates one of the licensor's exclusive statutory rights."
*Id*. at 940.  In *MDY Industries* the Ninth Circuit reviewed the
district court's decision at summary judgment, including an
analysis of the scope of the license at issue and the licensor's
statutory rights as developed by evidence in the record.  Here,
however, a motion to dismiss is before the Court.  As noted,
therefore, Oracle must only plead factual content that allows the
Court to draw a reasonable inference that the State and Cover
Oregon are liable for the misconduct alleged, and the Court must
take the allegations of the Amended Corrected Complaint as true.
Oracle has alleged Cover Oregon and the State exceeded the scope
of the license.  Specifically, Oracle points out that the terms

19 - OPINION AND ORDER

of the license limited Cover Oregon to "using" the copyright
assets.  Oracle also alleges Cover Oregon distributed, copied,
and authorized preparation of derivative works.  The Court,
therefore, concludes Oracle has stated a claim for copyright
infringement that does not, as alleged, lie solely in contract.

Accordingly, on this record the Court denies the Joint
Motion of the State and Cover Oregon to dismiss Oracle's
copyright-infringement claim on the ground of failure to state a
claim.

## III. *Quantum Meruit*

The State and Cover Oregon assert the Court should dismiss
Oracle's claim for *quantum meruit* because (1) a quasi-contract
cannot be implied against the State or Cover Oregon and/or
(2) Oracle's *quantum meruit* claim does not satisfy federal
pleading standards.  Because the Court agrees a quasi-contract
cannot be implied against the State or Cover Oregon in this
matter, the Court declines to address the second basis on which
the State and Cover Oregon seek dismissal of the *quantum meruit*
claim.

> A claim for *quantum meruit* is a quasi-contractual
> claim. *Robinowitz v. Pozzi*, 127 Or. App. 464, 467
> (1994).  The elements of the claim are a benefit
> conferred, awareness by the recipient that a
> benefit has been received, and judicial
> recognition that, under the circumstances, it
> would be unjust to allow retention of the benefit
> without requiring the recipient to pay for it.

*Verizon Nw., Inc. v. Main St. Dev., Inc.*, 693 F. Supp. 2d 1265,

1275 (D. Or. 2010)(quotations and citations omitted).

The State and Cover Oregon point out that DHS/OHS as state agencies and Cover Oregon as a public corporation can only act pursuant to statutory authority. *See Ochoco Constr., Inc. v. Dep't of Land Conservation & Dev.*, 295 Or. 422, 426 (1983). *See also Davis v. Nye Ditch Users Imp. Dist.*, 247 Or. App. 266, 272 (2011)(Improvement districts organized as public corporations are creatures of statute and have "only the powers conferred by the legislature."). The statute creating and authorizing Cover Oregon, however, only permits Cover Oregon to form or to enter into contracts in a particular manner. Specifically, Oregon Revised Statute § 741.250(2) provides Cover Oregon's "board of directors or the executive director of the corporation may contract with any state agency or other qualified person or entity for the performance of such duties, functions and powers as the board or executive director considers appropriate." Oregon statutes do not give Cover Oregon the authority to enter into contracts in an manner other than that noted in § 741.250(2). Similarly, DHS and OHA are subject to statutes and rules governing their contracting authority. Neither agency is permitted to "approve a contract before the contract has been reviewed for legal sufficiency and approved by the Attorney General." Or. Rev. Stat. § 279A.140(2)(b). Section 291.047(1) provides information technology contracts are not binding on DHS

21 - OPINION AND ORDER

and OHA until the Attorney General has approved the contracts for legal sufficiency.  To obtain Attorney General approval, the contract must be "reduced to written form" and contain on its face "all the essential elements of a legally binding contract." Or. Admin. R. § 137-045-0015(4)(a), (c).

Cover Oregon also notes because it received a "substantial federal grant" and was using funds "supplied entirely from the federal government" to develop the HIX, Cover Oregon was subject to federal rules governing its ability to contract with vendors, including the requirement "that every purchase order or other contract includes any clauses required by Federal statutes and executive orders and their implementing regulations."  45 C.F.R. § 92.36(a).

Thus, according to the State and Cover Oregon, because DHS/OHS and Cover Oregon lacked the statutory authority to enter into contracts in any manner other than those specified under Oregon statute and in various federal regulations, they cannot be held liable in quasi-contract for agreements that allegedly arose without complying with the procedures required in DHS/OHS and Cover Oregon's authorizing statutes and the federal regulations governing federal grantees.  The State and Cover Oregon rely on *Wegroup PC /Architects & Planners v. State*, 131 Or. App. 346 (1994), to support their assertion that they may not be bound by such quasi-contracts.  In *Wegroup* the plaintiff alleged

22 - OPINION AND ORDER

> the State frustrated the negotiation term of the
> contract, which required the State to bargain and
> formalize its request for added work.  Because
> [plaintiff] had contracted to do all the design
> from the beginning to the end, the architects
> could not blithely refuse the State's directions.
> Therefore, an implied-in-fact promise arose in the
> existing contract to pay the reasonable value of
> the services requested and rendered.

*Id*. at 354.  The Oregon Court of Appeals rejected the plaintiff's

argument as follows:

> The general doctrine unquestionably is that when
> one receives the benefit of another's work or
> property, he is bound to pay for the same, and
> this doctrine applies as well to [public]
> corporations as to individuals in cases where
> there is no restriction imposed by law upon the
> [public] corporation against making in direct
> terms a contract like the one sought to be
> implied; but where there exist legal restrictions
> which disable a [public] corporation to agree in
> express terms to pay money, the law will not imply
> any such agreement against the corporation."
> *Twohy Bros. Co. v. Ochoco Irr. Dist. et al.*, 108
> Or. 1, 33, 210 P. 873 (1923).

*Id*.  The court noted

> [t]hat rule places rigorous burdens of compliance
> on persons and entities in plaintiff's position
> and may, on occasion, compel seemingly — or
> actually — draconian consequences.  But that is
> the statutorily imposed price of doing business
> with a public body.  Persons who enter into public
> contracts are deemed to know the laws governing
> such contracts, and they assume the risk of
> nonpayment if they perform without insisting on
> strict compliance with those laws.

*Id*. at 354-55 (citation omitted).

*Wegroup* makes clear that when legal restrictions exist that

prohibit a public corporation or state agency from agreeing "in

express terms to pay money, the law will not imply any such agreement" against the corporation or the state agency.  The authorizing statutes for DHS/OHS and Cover Oregon establish Cover Oregon did not have authority to enter into a contract (quasi or actual) with Oracle absent approval of its board or executive director and OHA and DHS could not enter into a contract without a legal sufficiency review by the Attorney General.  The Court notes, however, that Oracle does not allege in its Amended Corrected Complaint that Cover Oregon's board of directors or executive director approved the agreement that Oracle describes in ¶ 66.  In fact, Oracle alleges Cover Oregon refused to execute Ordering Documents.  Am. Corrected Compl. ¶ 54.  In addition, Oracle does not allege it provided the services described in ¶¶ 66 and 67 of the Amended Corrected Complaint accompanied by the notices required under 45 C.F.R. § 92.36(a).  Oracle also does not allege in its Amended Corrected Complaint that the Oregon Attorney General provided a legal sufficiency review for the services that Oracle alleges it provided in ¶ 68.

Oracle, nevertheless, notes Cover Oregon is empowered by statute to enter into contracts generally.  Oracle points out that Oregon Revised Statute § 741.250(2) provides the "board of directors or the executive director of the corporation *may* contract with any state agency or other qualified person or entity for the performance of such duties."  Emphasis added.

24 – OPINION AND ORDER

According to Oracle, therefore, the statute does not require the
board to approve every contract entered into by Cover Oregon.
Oracle notes Oregon Revised Statute § 741.002(3)© provides Cover
Oregon may purchase all services necessary to carry out the
corporation's duties, and § 741.002(6) permits Cover Oregon to
"adopt rules necessary to carry out its mission, duties and
functions."  According to Oracle, therefore, "nothing in the
statute places limits on how Cover Oregon may carry out its
duties."

As noted, however, Oregon courts have made clear that public
corporations and state agencies are creatures of statute and may
only act as authorized by the Oregon Legislature.  *Davis*, 247 Or.
App. at 272.  Thus, the absence of express limits on the
authority of OHS/DHS and Cover Oregon does not mean those
entities may perform any actions that they please.  In fact, the
result is the opposite:  Absent express authorization, DHS/OHS
and Cover Oregon may not act.  Moreover, as noted, § 741.250(2)
only permits Cover Oregon's board of directors and executive
director to enter into contracts.  Because the authorizing
statute does not identify any other employees or agents who may
enter into contracts for Cover Oregon, no other employees or
agents may do so.  Even though the provision in § 741.250(2) uses
the permissive term "may," it does not expressly confer power to
enter into contracts in some manner other than that set out by

25 - OPINION AND ORDER

statute.  Thus, the Court concludes the Oregon Legislature has circumscribed the manner in which DHS/OHS and Cover Oregon may enter into contracts whether quasi or actual.

In addition, the authorities that Oracle relies on to support its assertion that Cover Oregon and DHS/OSH may be held liable in *quantum meruit* are distinguishable.  In *Washer v. Clatsop Care & Rehabilitation District*, 304 Or. 3 (1987), a statute expressly authorized the defendant health district to take the action that the plaintiff alleged the defendant failed to perform.  *Id*. at 6, 8.  In *Andal v. City of Salem*, 53 Or. App. 159 (1981), the defendant was a city rather than a public corporation.  The authority of cities is derived from their charters unlike public corporations whose authority is dependent upon express statutory authorization.  Thus, a city may have more latitude to act absent express authorization.  *See DeFazio v. Wash. Pub. Power Supply Sys*., 296 Or. 550, 581 (1984)("A charter also may specify whether it means to authorize only acts expressly mentioned, or others implied in order to achieve wider objectives[.]").  *See also Sizemore v. City of Madras*, 02-74-KI, 2005 WL 273006 (D. Or. Feb. 2, 2005)(City of Madras charter "is a general powers charter, not an enumerated powers charter, meaning that the city need not identify specific authorization in the charter for every action it takes.").  In *Andal* the Oregon Court of Appeals concluded it could apply "general contract law"

26 - OPINION AND ORDER

because the City of Salem lacked a "charter-imposed limitation" on contract formation.  53 Or. App. at 163.

Here the Court concludes Cover Oregon and DHS/OHS are not authorized to enter into contracts in any manner other than those allowed by statute.  Oracle has not alleged Cover Oregon and/or DHS/OHS were conferred the benefits alleged by Oracle in its Amended Corrected Complaint pursuant to a contract (quasi or actual) entered into in a manner permitted by the authorizing statutes for Cover Oregon and DHS/OHS.  The Court, therefore, concludes pursuant to *Wegroup* that DHS/OHS and Cover Oregon may not be held liable in *quantum meruit* for the quasi-contractual benefits that Oracle alleges they received.

Accordingly, the Court grants the Joint Motion of the State and Cover Oregon to dismiss Oracle's alternative Fourth claim for *quantum meruit*.  To the extent Oracle contends it has a basis to replead this Claim consistent with the Court's analysis herein, the Court grants Oracle leave to do so with its next form of Complaint.

## VI.  Doe Defendants

The State and Cover Oregon move to dismiss the Doe Defendants from the Federal Action, and Oracle concedes the Court should dismiss the Doe Defendants.

Accordingly, the Court grants the Joint Motion of the State and Cover Oregon to dismiss the Doe Defendants.

## V.  Alternative Motion to Stay Pursuant to the *Colorado River* Doctrine

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the Supreme Court established an abstention rule applicable to situations when parallel state and federal litigation are pending.

The State and Cover Oregon assert in the alternative to their Motion to Dismiss that if the Court (1) dismisses Oracle's copyright-infringement claim, (2) declines to dismiss one or more of Oracle's other claims in this action, and (3) remands at least some of the claims in the State Action to state court, the Court should stay any claims remaining in federal court during the pendency of the state-court action pursuant to *Colorado River*.

The Court has not yet decided whether to remand any of the claims in the State Action, and, as noted, it has granted Oracle leave to amend its Amended Corrected Complaint.  Accordingly, the Court denies the Joint Motion to Stay pursuant to the *Colorado River* Doctrine as premature at this time.


## CONCLUSION

For these reasons, the Court **GRANTS** the State of Oregon's Motion (#39) to Dismiss; **DENIES** Cover Oregon's Motion (#44) to Dismiss; and **GRANTS in part** and **DENIES in part** the Joint Motion (#41) to Dismiss or, in the Alternative, to Stay of the State of

Oregon and Cover Oregon.  The Court also **GRANTS** Oracle leave to file a Second Amended Complaint **no later than January 27, 2015**.

IT IS SO ORDERED.

DATED this 13th day of January, 2015.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

29 - OPINION AND ORDER