**Brenna K. Legaard**, OSB #001658
Email: blegaard@schwabe.com
**Jeffrey S. Eden, OSB #851903**
Email: jeden@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Avenue, Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Facsimile: 503-796-2900

**Karen G. Johnson-McKewan**, *admitted pro hac vice*
Email: kjohnson-mckewan@orrick.com
**Robert S. Shwarts**, *admitted pro hac vice*
Email:  rshwarts@orrick.com
**Erin M. Connell**, *admitted pro hac vice*
Email: econnell@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2625
Telephone: 415-773-5700
Facsimile: 415-773-5759

**Dorian E. Daley**, *admitted pro hac vice*
Email: dorian.daley@oracle.com
**Deborah K. Miller**, *admitted pro hac vice*
Email: deborah.miller@oracle.com
**Peggy E. Bruggman**, *admitted pro hac vice*
Email: Peggy.bruggman@oracle.com
ORACLE CORPORATION
LEGAL DEPARTMENT
500 Redwood Shores, CA 94065
Telephone:     650-506-9534
Facsimile:      650-506-7114

Attorneys for Oracle America, Inc.

PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO COVER
OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ORACLE AMERICA, INC.,** a Delaware Corporation,<br><br>                Plaintiff,<br><br>   v.<br><br>**THE OREGON HEALTH INSURANCE EXCHANGE CORPORATION, dba COVER OREGON**, an Oregon public corporation; **THE STATE OF OREGON, BY AND THROUGH THE OREGON HEALTH AUTHORITY AND THE OREGON DEPARTMENT OF HUMAN SERVICES,** AND DOES 1-25, INCLUSIVE<br><br>                Defendants. | Case No. 3:14-cv-01279-BR<br><br>**PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**FED. R. CIV. P. 12(c)** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  RELEVANT FACTUAL BACKGROUND................................................................3

     A.   Oracle's Contracts With The State And Cover Oregon................................3

     B.   Oracle And Cover Oregon's Relationship Turns Litigious .......................4

     C.   Senate Bill 1, Whose Primary Object Was To Frustrate Oracle's Lawsuit, Passes With Extreme Speed..............................................................5

III. LEGAL STANDARD.............................................................................................6

IV.  ARGUMENT .......................................................................................................7

     A.   In Light Of Senate Bill 1, Substitution, Not Dismissal, Is Appropriate. .................7

     B.   Cover Oregon Does Not Have Standing To Invoke Eleventh Amendment Immunity On Behalf Of The State.............................................................8

     C.   The State Has Waived Its Eleventh Amendment Immunity With Respect To Oracle's Copyright Claim Against Cover Oregon..................................12

          1.   The State Contractually Waived Its Eleventh Amendment Immunity With Respect To Oracle's Copyright Claim Against Cover Oregon..........12

          2.   The State Has Waived Any Eleventh Amendment Immunity By Its Conduct Related To This Case. ...............................................................17

          3.   If And When The State Assumes The Cover Oregon OLSA, The State Will Contractually Waive Its Eleventh Amendment Immunity With Respect To Oracle's Copyright Claim Against Cover Oregon..........20

     D.   To The Extent Senate Bill 1 Purports To Transfer Cover Oregon's Liabilities In This Litigation To DCBS While Also Asserting Eleventh Amendment Immunity With Respect To Those Liabilities, Senate Bill 1 Is Unconstitutional.............................................................................................22

          1.   Senate Bill 1 Is Unconstitutional Under The Impairment of Contracts Clauses Of The United States And Oregon Constitutions..........22

          2.   Senate Bill 1 Is Unconstitutional Under The Due Process Clause. ............29

          3.   Senate Bill 1 Is Unconstitutional Under The Takings Clause. ...................31

V.   CONCLUSION....................................................................................................33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance of Descendants of Texas Land Grants v. United States*,
    37 F.3d 1478 (Fed. Cir. 1994) ........................................................................ 30, 32

*Allied Structural Steel Co. v. Spannaus*,
    438 U.S. 234 (1978) ............................................................................. 23, 24, 27

*Amerind Risk Mgmt. Corp. v. Malaterre*,
    633 F.3d 680 (8th Cir. 2011) ................................................................................ 29

*Angle v. Chicago, St. P., M. & O. Ry. Co.*,
    151 U.S. 1 (1894) .................................................................................................. 30

*Ashker v. California Dep't of Corrections*
    112 F.3d 392 (9th Cir. 1997) ...................................................................... 9, 10, 11

*Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal
    Comm'n*,
    453 F.3d 1309 (11th Cir. 2006) ............................................................................. 29

*AT&T Communications-East, Inc. v. BNSF Ry. Co.*,
    Civil No.: 06-866-HA, 2006 U.S. Dist. LEXIS 85781 (D. Or. Nov. 27, 2006)
    (Haggerty, J.) ......................................................................................................... 15

*Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corporation*,
    Case No.: 2:10-cv-02991-JHN-JCHx, 2010 U.S. Dist. LEXIS 135857 (C.D.
    Cal. 2010) ....................................................................................................... 13, 14

*Bank of Hemet v. United States*,
    643 F.2d 661 (9th Cir. 1981) ................................................................................ 20

*Bd. of Trs. Sabis Int'l Sch. v. Montgomery*,
    205 F.Supp.2d 835 (S.D. Ohio 2002) ................................................................... 19

*Beers v. State*,
    61 U.S. 527 (1858) .......................................................................................... 27, 28

*Board of Regents v. Roth*,
    408 U.S. 564 (1972) ........................................................................................ 29, 30

*Brewster v. Board of Educ. of Lynwood Unified School Dist.*,
    149 F.3d 971 (9th Cir. 1998) ................................................................................ 30

*Buffalo Teachers Fed'n v. Tobe*,
    464 F.3d 364 (2nd Cir. 2006)................................................................24

*Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999)................................................................28

*Colony Cove Props., LLC v. City of Carson*,
    640 F.3d 948 (9th Cir. 2011) ................................................................31

*Demery v. Kupperman*,
    735 F.2d 1139 (9th Cir. 1984) ................................................................10, 11

*Duckworth v. Mull*,
    55 S.E. 850 (N.C. 1906)................................................................30

*Durning v. Citibank, N.A.*
    950 F.2d 1419 (9th Cir. 1991) ................................................................16

*Eckles v. State*,
    306 Or. 380 (1988)................................................................22

*Ellen Rosenblum, the Attorney General for the State of Oregon, et al. v. Oracle America, Inc., et al.*,
    Case No. 14-C-20043 (Aug. 22, 2014) ................................................................4, 15

*Ellen Rosenblum, et al. v. Oracle America, Inc., et al.*,
    Marion County Circuit Court Case No. 14C20043 ................................................................*passim*

*Embury v. King*,
    361 F.3d 562 (9th Cir. 2004) ................................................................18

*Energy Reserves Group, Inc. v. Kan. Power & Light Co.*,
    459 U.S. 400 (1983)................................................................22, 24

*Fleet Tire Service of North Little Rock v. Oliver Rubber Co.*,
    118 F.3d 619 (8th Cir. 1997) ................................................................13

*Ford Motor Co. v. Dep't of Treasury*,
    323 U.S. 459 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. of Ga.*, 535 U.S. 613 (2002)................................................................10, 11

*Foss v. National Marine Fisheries Serv.*,
    161 F.3d 584 (9th Cir. 1998) ................................................................29

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000)................................................................12

    PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
    COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

*General Motors Corp. v. Romein*,
    503 U.S. 181 (1992)......................................................................................23

*Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*,
    949 F. Supp. 1427 (N.D. Cal 1997) ...........................................................13

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1989) .......................................................................7

*Harris v. County of Orange*,
    682 F.3d 1126 (9th Cir. 2012) .......................................................................7

*Johnson v. Rancho Santiago Cmty. College Dist.*,
    623 F.3d 1011 (9th Cir. 2010) .....................................................................18

*Kelo v. New London*,
    545 U.S. 469 (2005)....................................................................................31

*Kroll v. Bd. of Trustees of Univ. of Ill.*,
    934 F.2d 904 (7th Cir. 1991) .................................................................12, 29

*Ku v. Tennessee*,
    322 F.3d 431 (6th Cir. 2003) .......................................................................18

*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*,
    440 U.S. 391 (1978)....................................................................................16

*Lane v. First National Bank of Boston*,
    871 F.2d 166 (1st Cir. 1989) ......................................................................32

*Lapides v. Bd. of Regents*,
    535 U.S. 613 (2002).............................................................................passim

*In re Lazar*,
    237 F.3d 967 (9th Cir. 2001) .......................................................................16

*Leer v. Murphy*,
    844 F.2d 628 (9th Cir. 1988) .......................................................................10

*Lingle v. Chevron U.S.A., Inc.*,
    544 U.S. 528 (2005)....................................................................................31

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982)....................................................................................32

*Maysonet-Robles v. Cabrero*,
    323 F.3d 43 (1st Cir. 2003) ...........................................................12, 28, 29

      PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
               COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Maysonet-Robles v. Cabrero*,
    Case No. 97-1036 (D. Puerto Rico), Dkt. No. 69 at 4 ............................................. 12

*Meyers v. Texas*,
    410 F.3d 236 (5th Cir. 2005) ................................................................................. 18

*Mills v. United States*,
    742 F.3d 400 (9th Cir. 2014) .................................................................................. 9

*Moro v. State of Oregon*,
    357 Ore. 167, 2015 Ore. LEXIS 277, *40 (2015) ....................................... 22, 24, 26

*New Hampshire v. Ramsey*,
    366 F.3d 1 (1st Cir. 2004) ...................................................................................... 18

*Ossen v. Dep't of Soc. Servs. (In re Charter Oak Assocs.)*,
    361 F.3d 760 (2d Cir. 2004) ................................................................................... 18

*Owens v. Kaiser Found. Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001) ................................................................................... 7

*Penn Central Transp. Co. v. New York City*,
    438 U.S. 104 (1978) .............................................................................................. 32

*Pennhurst State Sch. & Hop. v. Halderman*,
    465 U.S. 89 (1984) ............................................................................................. 9, 10

*Practice Mgmt. Info. v. Am. Medical Ass'n*,
    121 F.3d 516 (9th Cir. 1997) ................................................................................. 32

*Rhyne v. K-Mart Corp.*,
    594 S.E.2d 1 (N.C. 2004) ....................................................................................... 30

*Roth v. Pritikin*,
    710 F.2d 934 (2d Cir. 1983) ............................................................................. 30, 32

*Ruckelshaus v. Monsanto*,
    467 U.S. 986 (1984) ..................................................................................... 31, 32, 33

*RUI One Corp. v. City of Berkeley*,
    371 F.3d 1137 (9th Cir. 2004) ............................................................................... 23

*Sanitation & Recycling Indus., Inc. v. City of New York*,
    107 F.3d 985 (2nd Cir. 1997) ........................................................................ 23, 24, 26

*Seagal v. Vorderwuhlbecke*,
    162 Fed. App'x 746 (9th Cir. 2006) ....................................................................... 13

*Singleton v. Wulff*,
428 U.S. 106 (1976)................................................................9

*Skelton v. Henry*,
390 F.3d 614 (8th Cir. 2004) ..............................................18

*Surprenant v. Mass. Turnpike Auth.*,
768 F.Supp.2d 312 (D. Mass. 2011) ..............................12, 29

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002)..............................................................7

*Thompson v. Univ. of S.C.*,
Civil Action No.: 3:04-219-CMC-BM, 2006 U.S. Dist. LEXIS 67652 (D.S.C.
Sept. 5, 2006) ......................................................................19

*Tutor-Saliba Corp. v. City of Hailey*,
452 F.3d 1055 (9th Cir. 2006) ............................................29

*Union Elec. Co. v. Missouri Dep't. of Conservation*,
366 F.3d 655 (8th Cir. 2004) ..............................................18

*United States Trust Co. v. New Jersey*,
431 U.S. 1 (1977)............................................................24, 26

*United States v. Stonehill*,
83 F.3d 1156 (9th Cir. 1996) ..............................................30

*United States v. Windsor*,
133 S. Ct. 2675 (2013)..........................................................9

*Univ. of Haw. Prof'l Assembly v. Cayetano*,
183 F.3d 1096 ......................................................................23

*Warth v. Seldin*,
422 U.S. 490 (1975)..............................................................9

**Statutes**

17 U.S.C. § 101, *et seq.*........................................................30

28 U.S.C. § 1338(a) ............................................................3, 4

**Other Authorities**

*Cover Oregon*, ASSOCIATED PRESS (Sept. 5, 2014),
http://www.washingtontimes.com/news/2014/sep/5/oregon-governor-
recommends-dissolving-cover-oregon/?page=all ..................25

PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

Rule 201 of the Federal Rules of Evidence ........................................................................7

Rule 12(c) of the Federal Rules of Civil Procedure..................................................... 6, 7

Rule 12(d) of the Federal Rules of Civil Procedure .........................................................7

Rule 25(c) of the Federal Rules of Civil Procedure..................................................... 2, 8

Rule 56 of the Federal Rules of Civil Procedure ...............................................................7

Oregon Senate Bill 99 (2011) ...........................................................................................3

Oregon Senate Bill 1 (2015) ....................................................................................*passim*

OREGON LEGISLATIVE ASSEMBLY, FISCAL IMPACT REPORT OF SENATE BILL 1, 78th ...................25

Article 1, Section 21 of the Oregon Constitution ...........................................................22

Fifth Amendment to the United States Constitution.....................................2, 30, 31, 32

Eleventh Amendment to the United States Constitution ........................................*passim*

Fourteenth Amendment to the United States Constitution ..................................2, 29, 31

Article 1, Section 10 of the United States Constitution ..................................................22

PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Oracle America, Inc. ("Oracle") hereby submits its corrected opposition to Cover Oregon's Motion for Judgment on the Pleadings. This corrected opposition replaces and supersedes ECF No. 125 filed in this matter.

## I.    INTRODUCTION

The State's plan to deprive Oracle of its intellectual property has now come to a head. Last fall, Oracle sued the State of Oregon and Cover Oregon, an Oregon public corporation, for copyright infringement, among other claims. The State immediately responded that it is immune under the Eleventh Amendment from suit in federal court and, because federal court is the exclusive forum for copyright claims, the State cannot be held to account for its infringement of Oracle's copyrights. The State currently has a motion for summary judgment to that effect pending.

If the State's argument succeeds, that means only Cover Oregon—a public corporation and not an arm of the state for immunity purposes—would be exposed to Oracle's copyright claims. But the State, acting through its Legislature, has also attempted to eliminate Cover Oregon's liability. On March 6, 2015, the State passed Senate Bill 1, which purports to: (1) dissolve Cover Oregon; (2) transfer Cover Oregon's rights, obligations, and liabilities to a state agency, the Department of Consumer and Business Services ("DCBS"); and (3) substitute DCBS in for Cover Oregon in pending litigation. For good measure, Senate Bill 1 explicitly purports to preserve DCBS's immunity from suit in federal court, despite clear language in the contract between Cover Oregon and Oracle providing for jurisdiction in federal courts for any disputes arising from or relating to that contract. By passing Senate Bill 1, the Legislature sought to nullify Cover Oregon's agreement to federal court jurisdiction in order to insulate Cover Oregon and DCBS from Oracle's copyright claim.

Now that the Legislature has passed Senate Bill 1, Cover Oregon brings its motion for judgment on the pleadings. In it, Cover Oregon argues that DCBS, not Cover Oregon, is now the real party in interest with respect to Oracle's claims against Cover Oregon. And, because DCBS is entitled to Eleventh Amendment immunity, Cover Oregon asks this Court to dismiss all claims

PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
            COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

pending against Cover Oregon.  If both the State's and Cover Oregon's arguments about Eleventh Amendment immunity succeed, Oracle will have no forum in which to pursue its copyright claim.

Cover Oregon's (and the State's) litigation position is indefensible.  First, it is procedurally improper.  To the extent Senate Bill 1 operates to transfer Cover Oregon's liabilities to DCBS, the proper procedure would be to substitute DCBS into this case, not to dismiss Oracle's claims outright.[1]  Indeed that is precisely the procedure the State is attempting to follow in the *Ellen Rosenblum, et al. v. Oracle America, Inc., et al.,*  Marion County Circuit Court Case No. 14C20043 ("State Action").  As it stands now, however, Cover Oregon is raising an Eleventh Amendment immunity defense for an entity that is not a party to this lawsuit, an argument Cover Oregon has no standing to make.  Should the Court wish to consider arguments about DCBS's Eleventh Amendment immunity, the Court should grant a motion to substitute DCBS on or after June 30, 2015, and allow DCBS to raise those arguments itself.

Second, even assuming that Cover Oregon has standing to bring this motion for the State, the State has *already* waived its Eleventh Amendment immunity for this litigation, both by signing contracts consenting to federal jurisdiction, and by its conduct during its relationship with Oracle and this litigation.  Third, the portion of Senate Bill 1 that purports to reclaim Eleventh Amendment immunity while unilaterally transferring contracts that contain express waivers of that immunity is unconstitutional under at least the Impairment of Contracts Clauses of the United States and Oregon Constitutions, the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and the Takings Clause of the Fifth Amendment of the United States Constitution.

For each of these reasons, the Court should deny Cover Oregon's motion in its entirety.

---

[1] Concurrent with this motion, Oracle has filed a Motion to Substitute the State of Oregon, by and through the Department of Consumer and Business Services for Cover Oregon, pursuant to Rule 25(c) of the Federal Rules of Civil Procedure.

PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
        COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

## II.    RELEVANT FACTUAL BACKGROUND

### A.    ORACLE'S CONTRACTS WITH THE STATE AND COVER OREGON

Beginning in 2011, the State of Oregon contracted with Oracle and several others to build and develop the technology infrastructure for two projects: (1) modernization of Oregon's delivery of health and human services to low-income Oregonians (the "Modernization" project); and (2) creation of an online health insurance exchange ("HIX") for Oregon.  Dkt. No. 77 (2nd Am. Complt.) ¶¶ 14-18, 36-55.  As this Court is aware, the State signed two primary contracts related to Oracle's provision of services to the State—a License and Services Agreement with Oracle reseller Mythics, Inc. (the "Mythics Agreement") and a License and Services Agreement with Oracle (the "State OLSA").  *Id.* ¶¶ 36-45.  In both the Mythics Agreement and the State OLSA, the State contractually agreed to "submit to the . . . jurisdiction" of the United States District Court for the District of Oregon "in any dispute arising out of or relating to [the] agreement."  *Id.* ¶¶ 10-13.

In June 2011, Oregon Senate Bill 99 created a separate entity—the Oregon Health Insurance Exchange Corporation ("Cover Oregon")—which eventually assumed full ownership of the HIX project.  *Id.* ¶ 18.  Cover Oregon and Oracle entered into a separate Oracle License and Services Agreement governing their relationship (the "Cover Oregon OLSA").  *Id.* ¶¶ 46-55.  Like the Mythics Agreement and the State OLSA, the Cover Oregon OLSA provides that the parties will submit to the jurisdiction of federal courts for disputes arising out of or relating to the Cover Oregon OLSA:

> This agreement is governed by the substantive and procedural laws of Oregon and you and Oracle agree to submit to the exclusive jurisdiction of, and venue in, if in state Courts, in the Circuit Court of the State of Oregon for Marion County or, if in federal courts, the United States District Court for the District of Oregon, in any dispute arising out of or relating to this agreement.

Dkt. No. 77, Ex. B at § O.1.  Even though Cover Oregon is not entitled to Eleventh Amendment immunity, out of an abundance of caution, Oracle specifically included this provision in the Cover Oregon OLSA to ensure that Oracle could protect its intellectual property rights in the federal courts.  Under 28 U.S.C. § 1338(a), the United States District Courts have exclusive jurisdiction

Page 3    PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

over all claims for patent and copyright infringement.  Because Oracle can only assert these intellectual property claims in the federal courts, Oracle ensured that its contractual relationship with Cover Oregon allowed Oracle access to those courts, regardless of any arguments Cover Oregon may have raised later about sovereign immunity.  Dkt. No. 77 ¶ 12-13.  Oracle would not have entered into its agreements with Cover Oregon without the express understanding that it could pursue any claims arising from or relating to the Cover Oregon OLSA in federal court.  *Id.*

### B.    ORACLE AND COVER OREGON'S RELATIONSHIP TURNS LITIGIOUS

According to the Patient Protection and Affordable Care Act ("ACA"), Oregon's HIX was supposed to launch by October 1, 2013.  Dkt. No. 77 ¶¶ 27-31.  Under Cover Oregon's supervision, it did not.  *Id.*  However, with substantial support from Oracle, Cover Oregon was able to launch critical parts of the technology supporting the HIX in late 2013.  *Id.*  In the first year of enrollment, Cover Oregon enrolled more than 430,000 Oregonians in health insurance or Medicaid thanks to Oracle's work.  *Id.* ¶ 28.  By late February 2014, Oracle had created a functional health insurance exchange web portal which would permit consumers to shop for and purchase insurance online.  *Id.* ¶ 29.  The State and Cover Oregon, however, refused to launch that web portal.  *Id.*

Cover Oregon also refused to pay for services Oracle had provided, thus failing to satisfy a condition precedent to receiving a license to Oracle's copyrighted software code.  *Id.* ¶¶ 77-98.  It infringed Oracle's copyrights by using Oracle's software without a license, transferring Oracle's source code to others, and authorizing others to prepare derivative works based on Oracle's software.  *Id.* ¶¶ 69-76.  Accordingly, on August 8, 2014, Oracle filed this lawsuit, and amended its Complaint in September and January.  *See* Dkt. Nos. 1, 18, 33, 77.  Oracle's Complaint now asserts, among other claims, claims for breach of contract and copyright infringement against Cover Oregon, as well as a claim for copyright infringement against the State.  *See* Dkt. No. 77.  Shortly after Oracle brought its suit, the State and Cover Oregon filed a related lawsuit in state court against Oracle and several of its executives.  Request for Judicial Notice, Ex A, *Ellen Rosenblum, the Attorney General for the State of Oregon, et al. v. Oracle America, Inc., et al.*,

Page 4        PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
               COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

Case No. 14-C-20043 (Aug. 22, 2014).  In that lawsuit, the State and Cover Oregon allege, among other things, breach of the Mythics Agreement, the State OLSA, and the Cover Oregon OLSA.  *Id.* ¶¶ 293-339.

C.   **SENATE BILL 1, WHOSE PRIMARY OBJECT WAS TO FRUSTRATE ORACLE'S LAWSUIT, PASSES WITH EXTREME SPEED**

On March 6, 2015, the State passed Senate Bill 1, which—among other things—dissolves Cover Oregon.  Request for Judicial Notice, Ex. F, Abolishment of Oregon Health Insurance Exchange Corporation, S. BILL 1, ch. 003, 78th Sess. (2015) ("Senate Bill 1").  According to that legislation, the "rights, obligations and liabilities" of Cover Oregon are transferred to the Department of Consumer and Business Services ("DCBS").  *Id.* § 6(2).  Also according to that legislation, "the State of Oregon, by and through [DCBS], is substituted for [Cover Oregon]" in "any action, proceeding or prosecution involving or with respect to" certain transferred powers, rights, obligations, and liabilities.  *Id.* § 5.

Senate Bill 1 also includes provisions aimed at destroying Oracle's right to protect its intellectual property rights against Cover Oregon's infringement.  Indeed, on January 9, 2015, Patrick Allen, the Director of DCBS, testified before the Joint Committee that he and Oregon's Office of Legislative Counsel were receiving advice from the Oregon Department of Justice about how to implement the proposed Legislation to make it more advantageous for ongoing litigation.  Request for Judicial Notice, Ex. G, [Timestamp: 1:18:54; pg. 65; transcript of Joint Committee Meeting on Jan. 9, 2015].   This admission is particularly telling because on January 2, 2015 (shortly after a hearing in this case at which Oracle and the State presented oral argument on the issue of whether the State could assert Eleventh Amendment immunity as a defense to Oracle's copyright infringement claim), a new draft of Senate Bill 1 emerged.  This draft includes a provision that purports to allow for the transfer of rights, obligations, and liabilities to DCBS "subject to the limitations, defenses and immunities of the department that arise under ORS 30.260 to 30.300, the Eleventh Amendment to the United States Constitution and other state and federal laws."  Request for Judicial Notice, Ex. F, Senate Bill 1 § 6(3).  Accordingly, the State

now argues that while Cover Oregon and Oracle contractually agreed in the Cover Oregon OLSA to submit to the jurisdiction of federal courts, Senate Bill 1 eliminates that provision of the agreement.  The effect of this argument, if successful, would be that Oracle will be stripped of any means of protecting its copyrights from infringement, even though it expressly bargained for a federal forum with both the State and Cover Oregon.

Confirming that the goal of Senate Bill 1 was to quickly gain an unfair litigation advantage, the Oregon legislature processed and passed Senate Bill 1 with unprecedented speed. As drafted, the Bill declares an "emergency" and states that it "takes effect on its passage." Request for Judicial Notice, Ex. F, Senate Bill 1, § 61.  As Senator Brian Boquist (Co-Vice Chairman of the Joint Committee) stated at a January 9, 2015, public hearing, "I think we've all seen that this is frankly a revolutionary process in the legislature.  We're moving faster than I've ever seen this happen before."  Request for Judicial Notice, Ex. G, [Timestamp: 1:18:54; pg. 65; transcript of Joint Committee Meeting on Jan. 9, 2015].  Senator Boquist further remarked that it was unconventional that the Legislature had not asked anyone from Oracle to testify regarding Senate Bill 1: "If I had my druthers, someone from Oracle would be here testifying under oath." *Id.* [Timestamp: 15:20].  Allen confirmed in his testimony that the litigation impacted the timing of the Bill, stating that "*an early implementation date is more advantageous from a litigation stand point*." *Id.* [Timestamp: 24:55-25:36] (emphasis added).  Indeed, once Senate Bill 1 passed, the State acted quickly in both the state and federal litigations to take advantage of its terms by filing the present motion on April 14, 2015, and in the State Action, a Motion to Substitute DCBS for Cover Oregon on April 1, 2015.  Request for Judicial Notice, Ex. B.  The timing of these events, the speed at which Senate Bill 1 passed, and the admissions by Allen and the members of the Oregon legislature quoted above confirm that the driving force of Senate Bill 1 was not to serve a public purpose, but instead to gain an unfair litigation advantage against Oracle.

## III.    LEGAL STANDARD

According to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are

closed—but early enough not to delay trial—a party may move for judgment on the pleadings."
"A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings
as true, the moving party is entitled to judgment as a matter of law."  *Owens v. Kaiser Found.
Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (internal quotation marks and citation
omitted).  A court should grant a motion for judgment on the pleadings "only if it is clear that no
relief could be granted under any set of facts that could be proved consistent with the allegations."
*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  A motion for judgment on the pleadings
may not be based on evidence or allegations outside of the pleadings, *Hal Roach Studios, Inc. v.
Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989), unless that evidence is susceptible to
judicial notice under Federal Rule of Evidence 201.  *See Harris v. County of Orange*, 682 F.3d
1126, 1131-32 (9th Cir. 2012).  If, on a motion under 12(c), "matters outside the pleadings [and
not judicially noticeable] are presented to and not excluded by the court, the motion must be
treated as one for summary judgment under Rule 56," not Rule 12(c).  Fed. R. Civ. P. 12(d).[2]

## IV.    ARGUMENT

### A.    IN LIGHT OF SENATE BILL 1, SUBSTITUTION, NOT DISMISSAL, IS APPROPRIATE.

Cover Oregon's Motion for Judgment on the Pleadings requests that the Court dismiss
Oracle's claims against Cover Oregon because "Senate Bill 1 transferred all of Cover Oregon's
liabilities" to DCBS.  Mot. at 1.  According to Cover Oregon:

> [T]he transfer on March 6 of Cover Oregon's liabilities to DCBS
> means the State of Oregon, and not Cover Oregon, is responsible
> for any judgment entered in this case on the claims currently
> asserted against Cover Oregon.  This transfer of liability makes the
> State the real, substantial party in interest to Oracle's claims against
> Cover Oregon.

Mot. at 1.  In light of this argument, Cover Oregon's request for judgment on the pleadings is
improper.  If Cover Oregon is correct that Senate Bill 1 transferred Cover Oregon's liabilities to

---

[2] Cover Oregon specifically observes in its moving papers that it "does not intend to convert this
Rule 12(c) motion into a Rule 56 Motion." Mot. at n.1.  For this reason, Oracle's argument relies
on the facts alleged in the pleadings in this matter and on judicially noticeable facts.  However,
even should this Court convert Cover Oregon's motion to a Rule 56 Motion, that motion should be
denied for the reasons set forth herein.

DCBS, then the proper procedure at this time would be a motion for substitution under Rule 25(c) of the Federal Rules of Civil Procedure, which provides:

> If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

Fed. R. Civ. P. 25(c).

Indeed, substitution is the procedure that the State is attempting to follow in the State Action, where Cover Oregon has filed claims against Oracle arising out of or relating to the Cover Oregon OLSA. Request for Judicial Notice, Ex. B. On April 1, 2015, the State filed a motion in the State Action to substitute DCBS for Cover Oregon. *Id.* In that motion, the State argued that "Senate Bill 1 substituted DCBS for Cover Oregon in all pending litigation, effective March 6," and that "[b]y operation of this law, DCBS is substituted in place of Cover Oregon in this action." *Id.* at 2. The State emphasized that "[t]his provision was effective immediately on passage." *Id.* at 6 (referring to Senate Bill 1, § 5).

Cover Oregon takes an inconsistent position in its Motion for Judgment on the Pleadings in this Court. Here, Cover Oregon argues only that Senate Bill 1 "*allows* . . . for the substitution of DCBS for Cover Oregon in all pending litigation." Mot. at 3 (citing Senate Bill 1, § 5). Cover Oregon then seeks to avoid such a substitution by asking this Court simply to *dismiss* all claims pending against it. The State and Cover Oregon should not be permitted to take these inconsistent positions; if Cover Oregon's liabilities have been transferred to DCBS, then this Court should substitute DCBS into this case, and then let DCBS pursue its interests as it chooses.

### B.   COVER OREGON DOES NOT HAVE STANDING TO INVOKE ELEVENTH AMENDMENT IMMUNITY ON BEHALF OF THE STATE.

Cover Oregon has attempted to skip the step of substituting DCBS into this case, and instead argues that, because *DCBS* is entitled to invoke sovereign immunity, the claims against *Cover Oregon* should be dismissed. Mot. at 1, 10-11. Cover Oregon does not have standing to raise this argument. There is no dispute that Cover Oregon is not entitled to invoke Eleventh

Amendment immunity on its own behalf.  *See* Request for Judicial Notice, Ex. B.  State's Mot. for Substitution at 11 (admitting that Cover Oregon "is not entitled to Eleventh Amendment immunity.").  And there is no legal support for Cover Oregon's argument that it may do so on behalf of the State.

The fundamental prerequisite for standing is that the claimant must have "a personal stake in the outcome of the controversy . . . ."  *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975).  A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Id.* at 499.  There are at least two reasons for the principle that federal courts "must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation."  *Singleton v. Wulff*, 428 U.S. 106, 113 (1976) (plurality).  "First… it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not.  Second, third parties themselves usually will be the best proponents of their own rights."  *Id.* at 113-114 (citation omitted).  Standing rules ensure the "concrete adverseness which sharpens the presentation of issues upon which . . . court[s] so largely depend[] for illumination of difficult constitutional questions."  *United States v. Windsor*, 133 S. Ct. 2675, 2686-87 (2013) (internal quotation marks and citations omitted); *see also Mills v. United States*, 742 F.3d 400, 406-407 (9th Cir. 2014).

Based on these principles, a defendant asserting Eleventh Amendment immunity must have standing to do so.  *See Ashker v. California Dep't of Corrections* 112 F.3d 392, 394 (9th Cir. 1997) (addressing whether defendants had standing to raise Eleventh Amendment immunity).  According to the case law, there are two general situations in which a defendant has standing to assert Eleventh Amendment immunity.  First, of course, a State or one of its agencies or departments may raise the State's Eleventh Amendment immunity when "the State or one of its agencies or departments is named as the defendant."  *Pennhurst State Sch. & Hop. v. Halderman*, 465 U.S. 89, 100 (1984).  Second, when state officials are the named defendants in a lawsuit, a state "is entitled to invoke its sovereign immunity from suit even though individual officials are

PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
                    COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

nominal defendants" if "the action is in essence one for the recovery from the state, [and] the state is the real, substantial party in interest." *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. of Ga.*, 535 U.S. 613, 623 (2002). Cover Oregon is neither an agency of the state nor a state official. These cases, therefore, do not stand for the principle that Cover Oregon may assert the State's Eleventh Amendment immunity.

Cover Oregon argues that it may raise the State's Eleventh Amendment immunity at this time because the State has become the "real, substantial party in interest" by operation of Senate Bill 1. Mot. at 4. This argument would expand the language in *Ford Motor Co.* far beyond any fair reading of that case. As *Ford Motor Co.* holds, and as several subsequent cases have confirmed, a state may invoke its sovereign immunity when *state officials* are nominal defendants, if the "action is in essence one for the recovery of money from the state," and the state is thus the "real, substantial party in interest." *Ford Motor Co.*, 323 U.S. at 464; *see also Pennhurst State School & Hosp*, 465 U.S. at 101; *Ashker*, 112 F.3d at 394; *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988); *Demery v. Kupperman*, 735 F.2d 1139, 1145-46 (9th Cir. 1984). The current case is distinguishable from the reasoning in *Ford Motor Co.* for two reasons. First, though the State is a defendant in its own right in this case, it has not (and does not now) purport to appear for Cover Oregon to invoke its sovereign immunity. Second, Oracle has not asserted any claims against Cover Oregon that treat Cover Oregon as a proxy for the State.

With respect to the second distinction, the "real, substantial party in interest" test attempts to evaluate the true nature of the relief the plaintiff seeks. *See Demery,* 735 F.2d at 1148 ("[T]he eleventh amendment bars suits that seek to impose a liability that, *because of the nature of the claim asserted*, 'must be paid from public funds in the state treasury.'") (emphasis in original, internal citations omitted). For example, where a plaintiff sues a state official as a nominal defendant, while truly seeking payment from a state treasury, the plaintiff's claim is "in essence one for recovery from the state." *See Ford Motor Co.*, 323 U.S. at 464. Put another way, the state is the "real, substantial party in interest" in a suit against a state official because the suit *is, for all*

PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
                 COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

*intents and purposes*, a suit against the state. When a plaintiff sues a nominal state official, in fact seeking money from a state, it is both fair and expected that a state can then appear to assert its Eleventh Amendment immunity. That is not the case here. Oracle did not sue a "nominal" defendant in order to seek money from the State coffers. To the contrary, Oracle sued Cover Oregon, an independent public corporation with its own funds. And Cover Oregon remains the defendant in this case. While the State has attempted, by legislation, to change the nature of Oracle's claims,[3] the State has not appeared in this litigation to defend against Oracle's claims against Cover Oregon, and none of the State's officials have been named as nominal defendants to those claims. Thus, the State's argument is, at best, that *if substitution were to occur* per Senate Bill 1, the case *would become* one against the State. This is not the analysis described in *Ford Motor Co.*, and it is not the analysis required by general standing principles. For these reasons, Cover Oregon does not have standing to raise the State's Eleventh Amendment immunity.

Notably, courts regularly reject other attempts to expand the "real, substantial party in interest" test beyond its ordinary limits. For example, in *Asker*, 112 F.3d at 395, a plaintiff sued two state officials in their personal capacities. The state officials argued that, even though they had been sued in their personal capacities, California was the "real party in interest" because California had passed a statute requiring it to indemnify state officials sued in their personal capacities. *Id.* The Ninth Circuit rejected this argument, reasoning that "a state should not be able to extend 'sovereign immunity to state officials merely by enacting a law assuming those officials' debts.'" *Id.* (quoting *Demery v. Kupperman*, 735 F.2d 1139 (9th Cir. 1984)). Similar reasoning applies here. The State cannot legislatively expand who has standing to raise an Eleventh Amendment immunity defense. If the State seeks to raise that defense, the State must do so itself.

---

[3] Senate Bill 1 purports to appropriate the money in Cover Oregon's accounts and "the unexpended balances of amounts authorized to be expended by" Cover Oregon. Request for Judicial Notice, Ex. F, Senate Bill 1 § 4. Senate Bill 1 also purports to transfer to DCBS Cover Oregon's liabilities. *Id.* § 6. This is, of course, a circumstance of the State's own making. The State's attempt to shift non-sovereign funds into its own coffers for the purpose of insulating that money from existing claims should not impact whether the non-sovereign entity can raise a defense of Eleventh Amendment immunity on the State's behalf.

Page 11        PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
                COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

Until DCBS substitutes into this litigation in Cover Oregon's place, no party has standing to raise an Eleventh Amendment defense to Oracle's claims against Cover Oregon.

Cover Oregon cites three cases in which courts have validated an Eleventh Amendment immunity defense where a state entity succeeded to litigation initially filed against a non-state entity.  *See* Mot. at 6-10 (citing *Maysonet-Robles v. Cabrero*, 323 F.3d 43 (1st Cir. 2003); *Surprenant v. Mass. Turnpike Auth.*, 768 F.Supp.2d 312 (D. Mass. 2011); *Kroll v. Bd. of Trustees of Univ. of Ill.*, 934 F.2d 904 (7th Cir. 1991).  Not one of those cases followed the procedure Cover Oregon requests here.  To the contrary, in each of those cases, the state entity appeared in the case to assert Eleventh Amendment immunity on its own behalf.  *See Surprenant*, 768 F.Supp.2d at 314; *Kroll*, 934 F.2d at 906; Request for Judicial Notice, Ex. E (*Maysonet-Robles v. Cabrero*, Case No. 97-1036 (D. Puerto Rico), Dkt. No. 69 at 4).  As in those cases, if the State wants to assert its Eleventh Amendment immunity with respect to Oracle's claims against Cover Oregon, it should do so for itself.

The Court's analysis should end here.  Because Cover Oregon lacks standing to raise DCBS's claimed Eleventh Amendment immunity, this Court lacks jurisdiction to consider that argument, and thus cannot grant Cover Oregon's motion for judgment on the pleadings based thereon.  *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000) (treating the Constitution's Article III standing requirements as mandatory jurisdictional hurdles).  However, should the Court decide to address Cover Oregon's arguments regarding DCBS's Eleventh Amendment immunity, those arguments also fail.

C.    THE STATE HAS WAIVED ITS ELEVENTH AMENDMENT IMMUNITY WITH RESPECT TO ORACLE'S COPYRIGHT CLAIM AGAINST COVER OREGON.

1.    The State Contractually Waived Its Eleventh Amendment Immunity With Respect To Oracle's Copyright Claim Against Cover Oregon.

Even were it appropriate for the Court to consider the merits of Cover Oregon's arguments about the State's Eleventh Amendment immunity, they lack merit.  First, even if Senate Bill 1 *did* validly transfer Cover Oregon's liabilities to DCBS without waiving the State's Eleventh

Amendment immunity (which Oracle disputes), the State *already* waived its Eleventh Amendment immunity with respect to Oracle's copyright claim against Cover Oregon *when it entered into the Mythics Agreement and the State OLSA*.  As explained in Oracle's Second Amended Complaint (as well as in Oracle's Opposition to the State's Motion for Summary Judgment re Sovereign Immunity, Dkt. No. 101, and Oracle's Cross-Motion for Summary Judgment re Sovereign Immunity, Dkt. No. 104), the State contractually agreed to waive its Eleventh Amendment immunity "in any dispute arising out of or relating to" either the Mythics Agreement or the State OLSA.  Dkt. No. 77 ¶¶ 10-13.  Because Oracle's copyright claim against Cover Oregon "relates to" both the Mythics Agreement and the State OLSA, the State has waived its Eleventh Amendment immunity as to that claim.  For this reason, Oracle's copyright claim against Cover Oregon (or DCBS) should not be dismissed.

> a.    Oracle's Copyright Claim Against Cover Oregon "Relate[s] To" The Mythics Agreement And The OHA OLSA.

There can be no question, for the purposes of this motion for judgment on the pleadings, that Oracle's copyright claim against Cover Oregon "relates to" the Mythics Agreement and the State OLSA.  Courts give broad scope to contractual language regarding disputes that "relate to" a contract.  *See, e.g.*, *Seagal v. Vorderwuhlbecke,* 162 Fed. App'x 746, 748 (9th Cir. 2006) (forum selection clause applicable to disputes "arising out of or in connection with" contract embraces disputes that "directly depend on adjudication of the underlying contract claims" or "bear a significant relationship to the contractual dispute"); *Fleet Tire Service of North Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 620-21 (8th Cir. 1997) (the language "arising out of or relating to" "constitutes the broadest language the parties could reasonably use").  Moreover, courts in the Ninth Circuit have found copyright claims to be within the scope of contractual forum selection clauses that were narrower than the one at issue here.  *See, e.g.*, *Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1433-34 (N.D. Cal 1997); *Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corporation*, Case No.: 2:10-cv-02991-JHN-JCHx, 2010 U.S. Dist. LEXIS 135857 (C.D. Cal. 2010).

Oracle's Second Amended Complaint makes clear that its copyright claim against Cover Oregon relates to the Mythics Agreement and the State OLSA.  The Second Amended Complaint plainly alleges that Cover Oregon has infringed Oracle's rights in the "Copyright Assets," which, by definition, include software code that Oracle developed under the Mythics Agreement, the State OLSA, and the Cover Oregon OLSA.  Dkt. No. 77 ¶¶ 56, 69-76.  Oracle alleges that Cover Oregon has done so by: (1) "infringing Oracle's exclusive rights to reproduce and publicly display the work," Dkt. No. 77 ¶ 72; (2) "transferring Oracle's Copyright Assets to the control of the State of Oregon for further development," *id.* ¶ 73; and (3) "unlawfully authoriz[ing] others to prepare derivative works based on the Copyright Assets."

Oracle's Second Amended Complaint further explains that, under the Mythics Agreement, Oracle did "initial work developing software code to support Medicaid benefit eligibility determinations."  *Id.* ¶ 39.  Then, "during Oracle's work for Cover Oregon, it continued to write code that included functionality supporting Medicaid benefit eligibility determinations."  *Id.* ¶ 54.  "Oracle's work on Medicaid benefit eligibility determinations (among other things) built upon work that Oracle began under the Mythics Agreement, and continued under the [State] OLSA."  *Id.*  Indeed, the Second Amended Complaint alleges that "[t]he Copyright Assets, including code supporting Medicaid eligibility determinations, were developed as a result of services rendered under each of the Mythics Agreement, the [State] OLSA, and the Cover Oregon OLSA, and all claims asserted herein arise out of or relate to these agreements."  *Id.* ¶ 58.  At the very least, analysis of the scope of the Mythics Agreement and the State OLSA and the software code that Oracle delivered under those agreements will be important to evaluate the scope of Oracle's copyright claim here, which alleges that Cover Oregon is using copyrighted code for which neither Cover Oregon nor the State has paid.  *See Id.* ¶¶ 71, 74.  Thus, Oracle's copyright claim against Cover Oregon (or DCBS) "relates to" the Mythics Agreement and the State OLSA, by which the State explicitly agreed to submit to federal court jurisdiction for related disputes.

Page 14      PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

b.    **The State's Waiver Applies To DCBS.**

The State's waiver "by and through" OHA and DHS is sufficient to bind the State
generally to the consent to federal jurisdiction, even if a different state agency (DCBS) is now
involved.  Indeed, Cover Oregon repeatedly admits that in light of Senate Bill 1, "*the State*, by and
through DCBS, is the real, substantial party in interest" with respect to Oracle's claims against
Cover Oregon.  Mot. at 4, 10 (emphasis added).  Accordingly, if DCBS were to assume Cover
Oregon's liabilities pursuant to Senate Bill 1, the State's waiver would apply to Oracle's claims
against DCBS.

As pled in the Second Amended Complaint, it was the *State*, not merely the State's
agencies, that waived Eleventh Amendment immunity with respect to disputes arising out of or
relating to the Mythics Agreement and the State OLSA.  Dkt. No. 77 ¶¶ 10-13.  Indeed, the State
OLSA, attached as Exhibit A to the Second Amended Complaint, confirms that "*the State of
Oregon* acting by and through [DHS] on behalf of itself and [OHA]" is the contracting party—*not*
merely the state agencies.  Dkt. No. 77-1 at 1 (emphasis added).  There is no question that when a
state acts "by and through" a state agency, it is the *state* that acts, not merely the state agency.
*See, e.g.*, *AT&T Communications-East, Inc. v. BNSF Ry. Co.*, Civil No.: 06-866-HA, 2006 U.S.
Dist. LEXIS 85781 at *11 (D. Or. Nov. 27, 2006) (Haggerty, J.) (holding that a suit against the
"State of Oregon, by and through the Oregon Department of Transportation" was a suit against the
State itself); *see generally* Dkt. No. 92 (State's Motion for Summary Judgment) at 15 (conceding
that the State was a party to the State OLSA).  Thus, the State has waived its Eleventh
Amendment immunity for disputes related to the Mythics Agreement and the State OLSA.

Even if the Court concludes that the parties to the Mythics Agreement and the State OLSA
are OHA and DHS (as opposed to the State itself), both Supreme Court and Ninth Circuit case law
confirm that a waiver of an agency's Eleventh Amendment immunity is only effective if the
agency itself is an "arm of the State," and therefore the waiver applies to the state itself, and not
simply to the agency.  Eleventh Amendment immunity belongs to the states, not to their agencies,
and only extends to agencies if the agency is deemed to be an "arm of the state."  *See, e.g.*,

Page 15    PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
            COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Durning v. Citibank, N.A.* 950 F.2d 1419, 1427 (9th Cir. 1991).  As explained in *Lake Country*

*Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 400-401 (1978):

> By its terms, the protection afforded by [the Eleventh] Amendment is only available to 'one of the United States.'  It is true, of course, that some agencies exercising state power have been permitted to invoke the Amendment in order to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.  But the Court has consistently refused to construe the Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'

Furthermore, a waiver of a state's sovereign immunity with regard to one state agency acts

as a waiver for all state agencies, within the scope of the waiver.  For example, in *In re Lazar*, 237

F.3d 967, 976-79 (9th Cir. 2001), the Ninth Circuit found that the California State Water

Resources Control Board, an agency of the State of California, had waived sovereign immunity

because of the actions of the California State Board of Equalization, another California State

agency.  The Court reasoned simply that "when a state or an 'arm of the state' files a proof of

claim in a bankruptcy proceeding, the state waives its Eleventh Amendment immunity with regard

to the bankruptcy estate's claims that arise from the same transaction or occurrence as the state's

claim."  *Id.* at 978.  Thus, an "arm of the state" may waive Eleventh Amendment immunity on

behalf of the state, and that waiver may be applied to another "arm of the state."

Here, because the State itself waived its Eleventh Amendment immunity in the Mythics

Agreement and the State OLSA, that waiver extends to DCBS as an "arm of the State" for

purposes of defending against Oracle's claims.  But even if the waiver contained in the Mythics

Agreement and the State OLSA was on behalf of OHA and DHS only, it nevertheless extends to

DCBS because in order for these agencies to be entitled to Eleventh Amendment immunity in the

first place, they must be "arms of the state," and therefore act on behalf of the State itself.  The

Court should therefore deny Cover Oregon's motion for judgment on the pleadings.

2.      **The State Has Waived Any Eleventh Amendment Immunity By Its Conduct Related To This Case.**

The State has also waived its Eleventh Amendment immunity with respect to Oracle's copyright claim against Cover Oregon (or DCBS) by virtue of its conduct related to this litigation. Related to this case, the State has: (1) signed two contracts related to Oracle's provision of services to the State agreeing to federal court jurisdiction for disputes relating to those contracts; (2) created a public corporation, Cover Oregon, that *also* contractually agreed to federal court jurisdiction for disputes relating to that contract; (3) sued, along with Cover Oregon, for breach of all three of those contracts; (4) passed legislation purporting to dissolve Cover Oregon and assume its contracts; and (5) acted with the express purpose of influencing this litigation. Given these facts, principles of fairness and consistency mandate a finding of waiver.

In *Lapides v. Bd. of Regents*, 535 U.S. 613, 620 (2002), the Supreme Court held that a state waived its Eleventh Amendment immunity when, as a defendant in state-court proceedings, it voluntarily agreed to remove the case to federal court. In so holding, the Supreme Court emphasized the importance of fairness and consistency to its evaluation of whether a state has waived Eleventh Amendment immunity by its conduct. The Supreme Court explained:

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand. *And a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results.*

*Lapides*, 535 U.S. at 619 (emphasis added). The Supreme Court explained further that the doctrine of waiver by conduct depends more on fairness than on a state's actual intention:

> [A]n interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages.

*Id.* at 620 (internal citations omitted); *see also id.* at 623 ("In large part the rule governing

voluntary invocations of federal jurisdiction has rested upon the problems of inconsistency and unfairness that a contrary rule of law would create.  And that determination reflects a belief that neither those who wrote the Eleventh Amendment nor the States themselves . . . would intend to create that unfairness.") (internal citations omitted).  The Supreme Court emphasized that a state may not selectively apply its Eleventh Amendment immunity "to achieve litigation advantages." *Id.* at 620.

Since the Supreme Court decided *Lapides*, other courts have extended its principles of fairness and consistency beyond the removal context.  *See Johnson v. Rancho Santiago Cmty. College Dist.*, 623 F.3d 1011, 1022 (9th Cir. 2010) (finding that state waived immunity defense where it "engaged in extensive proceedings in the district court without seeking dismissal on sovereign immunity grounds" and appeared to have "made a tactical decision to delay asserting the sovereign immunity defense"); *Embury v. King*, 361 F.3d 562, 563 (9th Cir. 2004) (applying the *Lapides* reasoning beyond the facts of *Lapides*); *Meyers v. Texas*, 410 F.3d 236, 248 (5th Cir. 2005) (same); *Skelton v. Henry*, 390 F.3d 614, 618 (8th Cir. 2004) (explaining that "[w]aiver in litigation prevents states from selectively invoking immunity to achieve litigation advantages" and the court therefore should focus on the state's "action in litigation … [rather than] on the intention of the state to waive immunity"); *Union Elec. Co. v. Missouri Dep't. of Conservation*, 366 F.3d 655, 659 (8th Cir. 2004) (explaining that the "general rule regarding waiver" is that "when a State voluntarily invokes federal jurisdiction…[it] cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment"); *New Hampshire v. Ramsey*, 366 F.3d 1, 16-17 (1st Cir. 2004) (describing the Supreme Court's "core concern" in *Lapides* as being that "a state cannot selectively invoke its Eleventh Amendment immunity to gain litigation advantage"); *Ossen v. Dep't of Soc. Servs. (In re Charter Oak Assocs.)*, 361 F.3d 760, 769 (2d Cir. 2004) (explaining, in a bankruptcy case, that the "waiver-by-litigation doctrine" is driven by "fairness and consistency concerns" that override a "State's actual preference or desire"); *Ku v. Tennessee*, 322 F.3d 431, 435 (6th Cir. 2003) (applying "inconsistency and unfairness" rationale to find that "appearing without objection and defending on the merits in a case over which the district court

PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
            COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

otherwise has original jurisdiction is a form of voluntary invocation of the federal court's jurisdiction that is sufficient to waive a State's defense of Eleventh Amendment immunity"); *Thompson v. Univ. of S.C.*, Civil Action No.: 3:04-219-CMC-BM, 2006 U.S. Dist. LEXIS 67652, *8-9 (D.S.C. Sept. 5, 2006) ("[I]t appears that *Lapides* might be extended to other circumstances involving strategic invocation of Eleventh Amendment immunity. . . .").

For example, in *Bd. of Trs. Sabis Int'l Sch. v. Montgomery*, 205 F.Supp.2d 835, 846 (S.D. Ohio 2002), the court found that a state waived its Eleventh Amendment immunity by conduct when it inserted a binding arbitration clause into a contract. The Court reasoned:

> Similar to the act of removal, which is litigation conduct, the insertion of the binding arbitration clause into the contract constitutes *pre*-litigation conduct, or action undertaken in anticipation of future disputes that might result in litigation. As the Supreme Court stated with respect to certain litigation conduct, an interpretation of the Eleventh Amendment that would allow the State to engage in the *pre*-litigation act of drafting a binding arbitration clause into a contract without waiving sovereign immunity would rest upon the State's mere 'preference or desire.' Such an interpretation of the Eleventh Amendment would allow the State selectively to hide behind the cloak of sovereign immunity when doing so would serve its litigation objectives. In other words, an interpretation of the Eleventh Amendment that allows the State selectively to waive sovereign immunity encourages forum shopping by the State, and fails to produce consistent and fair results, which is precisely the opposite of what the Supreme Court mandated in *Lapides*.

*Id.* at 846.

These principles drive a similar conclusion here. In this case, the State entered into two contracts consenting to federal court jurisdiction, and enacted legislation purporting to assume a third such contract. In so doing, the State voluntarily invoked federal jurisdiction with respect to this case. *Lapides*, 535 U.S. at 623. That the legislation by which the State will assume the Cover Oregon OLSA also purports to reassert Eleventh Amendment immunity is irrelevant; that language is a strategic invocation of Eleventh Amendment immunity, made purely for litigation purposes, and, as such, should be ignored. *Id.* at 620. In a case such as this, the State's "actual preference or desire" is unimportant, because, as a result of the State's actions, application of Eleventh Amendment immunity in this case would create an unfair result. *Id* at 623.; *see also*

*Bank of Hemet v. United States*, 643 F.2d 661, 665 (9th Cir. 1981) (finding waiver of sovereign immunity to "permit the [plaintiff] to have its day in court" and to "restrain[] any tendency on the part of the government to manipulate its position subsequent to the filing of the complaint so as to present a situation that falls between the cracks of applicable waiver statutes").

Here, as explained above, the State did not need to dissolve Cover Oregon and abandon its functioning online health insurance exchange. Once the State had made the decision to abandon Cover Oregon and the technology Oracle developed, the State did not need to dissolve Cover Oregon at a time when the State was still relying heavily on Oracle's technology. The State did not need to assume Cover Oregon's contracts with Oracle at all. The State *chose* to assume those contracts at this time in consultation with its attorneys and as a pure litigation tactic—it wanted to deprive Oracle of its claims against Cover Oregon while securing for itself the ability to press Cover Oregon's case against Oracle. In the interest of fairness, and according to *Lapides*, the Court should not permit the State to take for itself the benefits of the Cover Oregon OLSA (as well as all of the money in Cover Oregon's accounts, *see* Senate Bill 1, § 4), while at the same time rejecting responsibility for Cover Oregon's liability under Oracle's copyright claim.

3.    **If And When The State Assumes The Cover Oregon OLSA, The State Will Contractually Waive Its Eleventh Amendment Immunity With Respect To Oracle's Copyright Claim Against Cover Oregon.**

The State and Cover Oregon, on the one hand, and Oracle, on the other, disagree as to if and when the State will assume Cover Oregon's contracts. According to the State and Cover Oregon, those contracts have already transferred to the State by operation of Senate Bill 1. *See, e.g.*, Request for Judicial Notice, Ex. D, State Reply Mot. for Substitution at 7-9. According to Oracle, those contracts will not transfer until June 30, 2015, the second effective date set forth in Senate Bill 1, and they will only transfer if the State and Cover Oregon comply with the conditions for assignment set forth in those contracts. *See* Request for Judicial Notice, Ex. C, State Conditional Opp. to Mot. for Substitution at 11-17. *Notwithstanding* the parties' disagreement as to the timing and conditions of any transfer, if and when the State does assume

Page 20    PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

the Cover Oregon OLSA, it will have contractually waived its Eleventh Amendment immunity with respect to Oracle's copyright claim against Cover Oregon by assuming the provision of that contract that explicitly agrees to submit to federal jurisdiction (Section O.1). *See* Dkt. No. 77, Ex. B at § O.1.

The State has argued that the State's assumption of Section O.1 does not constitute a waiver of Eleventh Amendment immunity with respect to the State, because it did not constitute a waiver of Eleventh Amendment immunity with respect to Cover Oregon, which has no Eleventh Amendment immunity to waive. *See* Request for Judicial Notice, Ex. B, State Mot. for Substitution at 11. This argument fails. In Section O.1, the parties agree to "submit to the exclusive jurisdiction of, and venue in . . . the United States District Court for the District of Oregon, in any dispute arising out of or relating to this agreement." Dkt. No. 77, Ex. B. Whether or not this language constituted a waiver of Eleventh Amendment immunity with respect to Cover Oregon, it surely constitutes a waiver of Eleventh Amendment immunity once the State becomes a party to the contract. *See generally* Dkt. No. 101 (Oracle's Opp. to the State's MSJ).

Cover Oregon and the State will also likely argue that the State can assume the Cover Oregon OLSA without regard for Section O.1, because Section 6(3) of Senate Bill 1 purports to subject the rights, obligations, and liabilities transferred to DCBS "to the limitations, defenses and immunities of the department that arise under . . . the Eleventh Amendment to the United States Constitution . . . ." Request for Judicial Notice, Ex. F, Senate Bill 1. Cover Oregon cites to no authority supporting the notion that the Oregon Legislature has authority to materially re-write the parties' contract in this manner. Cover Oregon also cites no authority for the proposition that DCBS may assume the benefits of the contract, but otherwise selectively choose which provisions are binding upon it. Moreover, as explained in detail in the next section, Cover Oregon's interpretation of Senate Bill 1 must be rejected because to the extent Senate Bill 1 operates to transfer Cover Oregon's contracts with Oracle to DCBS, while at the same time purporting to nullify a material term of those contracts, Senate Bill 1 violates Oracle's constitutionally protected rights.

Page 21        PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
               COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

**D.      TO THE EXTENT SENATE BILL 1 PURPORTS TO TRANSFER COVER OREGON'S LIABILITIES IN THIS LITIGATION TO DCBS WHILE ALSO ASSERTING ELEVENTH AMENDMENT IMMUNITY WITH RESPECT TO THOSE LIABILITIES, SENATE BILL 1 IS UNCONSTITUTIONAL.**

Senate Bill 1, as Cover Oregon seeks to apply it here, is unconstitutional.  According to Cover Oregon, Senate Bill 1 transferred all of Cover Oregon's liabilities to DCBS, but also provides that those liabilities, unlike before, must now be subject to the Eleventh Amendment. Mot. at 3-4.  In essence, Cover Oregon is arguing that Senate Bill 1 operates to deprive Oracle of its copyright claim against Cover Oregon.  If Cover Oregon's reading of Senate Bill 1 is correct, that legislation, as applied to Oracle, is unconstitutional under: (1) the Impairment of Contracts Clause of Article 1, Section 10 of the United States Constitution and Article 1, Section 21 of the Oregon Constitution; (2) the Fourteenth Amendment's Due Process Clause; and (3) the Fifth Amendment's Takings Clause.

**1.      Senate Bill 1 Is Unconstitutional Under The Impairment of Contracts Clauses Of The United States And Oregon Constitutions.**

Article 1, Section 10 of the United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligations of Contracts . . . ."  Similarly, Article 1, Section 21 of the Oregon Constitution provides that "[n]o . . . law impairing the obligation of contracts shall ever be passed."  Article I, Section 21 of the Oregon Constitution is based on Article I, Section 10 of the United States Constitution.  *Eckles v. State*, 306 Or. 380, 389 (1988).  To determine whether a law impairs a party's contractual rights under the federal Contract Clause, courts analyze: (1) whether the contractual impairment is substantial and, if so, (2) whether the law serves a legitimate public purpose and, if such purpose is demonstrated, (3) whether the means chosen to accomplish this purpose are reasonable and necessary.  *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411–13 (1983).  Oregon courts interpret "the state Contract Clause as being consistent with the Unites States Supreme Court's interpretation of the federal Contract Clause in 1857."  *Moro v. State of Oregon*, 357 Ore. 167, 2015 Ore. LEXIS 277, *40 (2015).  Whether the state Contract Clause protects parties from only "substantial" impairments, as opposed to protecting parties from all impairments, remains an open question.  *Id.* at *105.  It also remains an

Page 22      PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
             COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

open question whether Oregon courts recognize a "public purpose defense" to an impairment of a contract under whether the state Contract Clause.  *Id.* at 110.

      **a.**       **Senate Bill 1 Substantially Impairs Oracle's Contract Rights.**

In determining whether a contractual impairment is substantial under the federal Contract Clause, courts examine "the extent to which reasonable expectations under the contract have been disrupted."  *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 993 (2nd Cir. 1997); *see also Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 245 (1978) ("Contracts enable individuals to order their personal and business affairs according to their particular needs. . . . Once arranged, those rights and obligations are *binding under the law*, and the parties are entitled to rely on them.") (emphasis added).  The "substantial impairment" inquiry under the federal Contract Clause "itself has three components: 'whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial.'"  *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004) (emphasis added) (quoting *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992)).  All three factors are present here.

First, the State has conceded that Cover Oregon and Oracle had a contractual relationship in the Cover Oregon OLSA.  Request for Judicial Notice, Ex. B, State Motion for Substitution at 8.  As part of that contractual relationship, Cover Oregon and Oracle consented to suit in federal court for claims related to the Cover Oregon OLSA.  That agreement was exceedingly important to Oracle, which can only protect its intellectual property rights in federal court.  *See supra* at Section II.A.

Second and third, Senate Bill 1 substantially impairs the contractual relationship between Oracle and Cover Oregon by purporting to assert Eleventh Amendment immunity with regard to the Cover Oregon OLSA, thus eliminating Oracle's ability to enforce its intellectual property rights under that contract.  The government impairs a contractual obligation when it attempts "to use the law, federal or state, to repudiate a contractual obligation."  *Univ. of Haw. Prof'l Assembly*

*v. Cayetano*, 183 F.3d 1096, 1104; *see also Moro*, 2015 Ore. LEXIS 277, *102-110.  That is what happened here.  Despite Oracle's and Cover Oregon's contract to resolve disputes related to that contract in federal court, the State, by legislation, is attempting to eliminate that contract provision, and thus to defeat Oracle's copyright claim against Cover Oregon altogether.  That claim, according to Oracle's Second Amended Complaint, is worth at least $23 million dollars. *See* Dkt. No. 77 ¶ 98.  By depriving Oracle of its ability to pursue its copyright claim in any court, the State has substantially impaired Oracle's contractual rights.

> **b.    The Legislature Cannot Show A Legitimate Public Purpose Behind Senate Bill 1, And Senate Bill 1 Is Not A Reasonable or Necessary Way To Accomplish The State's Claimed Objectives.**

When a state law constitutes a substantial impairment of a contract, the federal Contract Clause allows the state to defend the impairment by showing a significant and *legitimate* public purpose behind the law.  *Energy Reserves Group*, 459 U.S. at 411–12.  A legitimate public purpose is one "aimed at remedying an important 'general social or economic problem' rather than 'providing a benefit to special interests.'"  *Sanitation & Recycling Indus.*, 107 F.3d at 993 (internal citations omitted); *see also Spannaus*, 438 U.S. at 247-49 (finding a statute unconstitutional because it was not "necessary to meet an important general social problem" and because it impacted the contracts of "an extremely narrow" group of entities).  The purpose may not be simply the financial benefit of the sovereign.  *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 364, 368 (2nd Cir. 2006).  Additionally,

> [C]omplete deference to a legislative assessment of reasonableness and necessity is not appropriate [where] the State's self-interest is at stake.  A governmental entity can always find a use for extra money, especially when taxes do not have to be raised.  If a State could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all.

*United States Trust Co. v. New Jersey*, 431 U.S. 1, 26 (1977).

Here, the State cannot show a legitimate public purpose behind Senate Bill 1 because the dissolution of Cover Oregon is completely unnecessary.  The Oregon HIX system works, and the

State has used and can continue to use it to enroll Oregonians in health insurance.  Dkt. No. 77 ¶ 2. Indeed, fiscal impact statements demonstrate that the transfer of Cover Oregon's functions to DCBS will not result in financial savings to Oregonians:

> The operation of the exchange will result in a fiscal impact to the Department of Consumer and Business Services; however the revenues and expenditures included in the fiscal impact substantively mirror the revenues and expenditures of Cover Oregon.

Request for Judicial Notice, Ex. I (OREGON LEGISLATIVE ASSEMBLY, FISCAL IMPACT REPORT OF SENATE BILL 1, 78th Sess., at 1 (Feb. 12, 2015)).

Senate Bill 1 passed, not to improve the Oregon HIX, but to: (1) eliminate Oracle's copyright claim against Cover Oregon; (2) save Governor Kitzhaber's (pre-resignation) political reputation; and (3) minimize further public discussion about Cover Oregon, which had become a political embarrassment to State officials.  As described above, the legislators drafting Senate Bill 1 were in contact with, and taking advice from, the State's litigation team.  Likely because of advice from that team, those legislators specifically included provisions: (1) assigning Cover Oregon's contracts despite non-assignment provisions; and (2) expressly re-asserting the State's sovereign immunity.

In addition, as more and more news reports have shed light on former Governor Kitzhaber's strategy regarding Cover Oregon, it has become increasingly clear that Cover Oregon was abolished, not to improve Oregon's HIX in any way, but instead to preserve Kitzhaber's political reputation.  Dkt. No. 77 ¶¶ 31-33.  The initial "failure" of the Oregon HIX was a major embarrassment for Kitzhaber and his campaign advisers, who were in the middle of a reelection campaign.  *See id.*  Faced with the prospect of losing an election over the Cover Oregon debacle, Kitzhaber and his campaign advisers decided on a political strategy of: (1) blaming Oracle for Cover Oregon's failures; and (2) eliminating Cover Oregon to end public discussion regarding Cover Oregon's failures.  Indeed, it was Kitzhaber who initially called for the dissolution of Cover Oregon.  Request for Judicial Notice, Ex. J, (Gosia Wozniacka, *Governor, senator want to dissolve Cover Oregon*, ASSOCIATED PRESS (Sept. 5, 2014),

PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

http://www.washingtontimes.com/news/2014/sep/5/oregon-governor-recommends-dissolving-cover-oregon/?page=all).

Cover Oregon claims that the legitimate purpose behind Senate Bill 1 was to "allow the state to maintain and guarantee the continuation of Cover Oregon's core functions by bringing these functions into DCBS and OHA."  Mot. at 2 (citing a statement from the floor debate regarding Senate Bill 1).  This argument is baseless.  First, the State's claims about the legitimate purpose behind Senate Bill 1 are subject to scrutiny because of the State's direct involvement in the Cover Oregon Agreements, both before and after the transfer purportedly effected by Senate Bill 1, and because the State is apparently paying for Cover Oregon's legal defense.  *See United States Trust Co.*, 431 U.S. at 26.  Second, Cover Oregon does not explain why the public purpose enumerated above could not be accomplished without dissolving Cover Oregon and destroying Oracle's ability to defend its intellectual property rights.  *See U.S. Trust Co.*, 431 U.S. at 22–23 (A law that impairs contracts may only do so by means that are reasonable and necessary to meet the stated legitimate public purpose.); *Sanitation & Recycling Indus.*, 107 F.3d at 993 ("A law that works substantial impairment of contractual relations must be specifically tailored to meet the societal ill it is supposedly designed to ameliorate."); *see also Moro*, 2015 Ore. LEXIS 277, *109-110 ("[E]ven if respondents had identified specific public service deficiencies resulting from the current level of funding, they have not demonstrated that those deficiencies could not be remedied through funding from other sources.").

To the contrary, even Oregon Senators questioned the means by which Senate Bill 1 purported to carry out the State's stated goals.  *See* Request for Judicial Notice, Ex. G [Timestamp: 38:35; pg. 33; transcript of Joint Committee Meeting on Jan. 9, 2015]  ("DCBS would probably be the next to last place I'd put [Cover Oregon]."); Request for Judicial Notice, Ex. H [Timestamp: 29:07-29:36; transcript of Oregon House Hearing on Senate Bill 1 on Feb. 27, 2015]  (urging members of the House of Representatives to "vote no until DCBS tells us exactly how they plan on executing this transfer");  *Id.* [Timestamp: 25:13-27:07] (". . . I know there is a desire to put Cover Oregon behind us, especially in wake of everything that has . . . come out in

PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
          COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

the media about Cover Oregon and the emails and etc.  But I am still not convinced the state has the capability to manage this project.  I am not convinced that DCBS has the capability to manage this project. . . . does the state have the capacity and ability to maintain and work through large scale, particularly tech projects, of this scale and nature.  I do not think we do. . . . I do not think this bill solves it, I do not think we spent enough time with it.").

Finally, even if the Court finds that some portions of Senate Bill 1 had a legitimate public purpose, there is simply no legitimate public purpose behind Senate Bill 1, Section 6(3), which purports to assert Eleventh Amendment immunity over contracts that DCBS assumes from Cover Oregon, whether or not those contracts include agreements to suit in federal court.  This portion of Senate Bill 1 does not accomplish any legitimate public purpose in a reasonable or necessary manner.  Section 6(3) does not address "an important general social problem."  *See Spannaus*, 438 U.S. at 247.  To the contrary, it impacts only a very narrow scope of entities—businesses who entered into contracts with Cover Oregon.  *Id.*  Finally, the State could easily, and reasonably, have assumed the benefits of Cover Oregon's contracts without also seeking to avoid the liabilities by asserting Eleventh Amendment immunity.  Senate Bill 1, as the State seeks to apply it here, is not constitutional.

### c.    *Beers* And Its Progeny Do Not Render Senate Bill 1 Constitutional.

Cover Oregon cites several cases for the proposition that the State, as Cover Oregon's successor in this lawsuit, can invoke an Eleventh Amendment immunity defense that was not available to Cover Oregon.  Mot. at 6-10.  Cover Oregon is wrong in this case.  None of the cases that Cover Oregon cites involved a state assuming (and purporting to negate) a *contractual commitment* to submit to federal jurisdiction.  *Beers v. State*, 61 U.S. 527 (1858), is the case upon which all of the State's other cases depend.  In that case, the Supreme Court found that a state was entitled to enact a statute limiting the scope of a waiver of sovereign immunity contained in a prior statute, even while a claim against the state was pending.  *Id.*  It was important to the Supreme Court's holding, however, that the second statute "violated no contract with the parties," *id.* at

Page 27      PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
             COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

530, and that "the prior law was not a contract." *Id.* at 529.  Here, there obviously *was* a contract.

Moreover, that contract: (1) contains a clear and unambiguous consent to federal court

jurisdiction; (2) states it can only be modified in writing by both parties; and (3) involves two

private parties (Oracle and Cover Oregon), not the State.  Dkt. No. 77, Ex. B at § L .  These

distinctions are important because the reasoning in *Beers* is based on the idea that a state can

decide how and when it can be sued, but only *absent an express agreement to the contrary*.  *Beers*,

61 U.S. at 529; *see Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527

U.S. 666, 676 (1999) ("We have even held that a State may, *absent any contractual commitment

to the contrary*, alter the conditions of its waiver and apply those changes to a pending suit.").

Accordingly, *Beers* does not support the State's position in this case.

      Similarly, *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 50 (1st Cir. 2003), which relied on

*Beers*, did not involve: (1) a contractual consent to federal jurisdiction; or (2) the state's

assumption of a private contract and purported legislative negation of elements of that contract.

Furthermore, *Maysonet-Robles* itself recognized that its holding conflicts with the *Lapides* line of

cases: "It is surely troubling that Puerto Rico's actions here implicate the concerns of

inconsistency and unfairness that are at the heart of the waiver-by-litigation-conduct doctrine."  *Id.*

at 53.  The *Maysonet-Robles* court further bemoaned the result:

> In reviewing what has occurred in this case and the conclusion we
> have perforce reached, we are constrained to say that the actions of
> the Puerto Rico executive agencies and legislature here have
> continued a distressing pattern of activity in seeking to avoid
> millions of dollars of established or potential liability—a pattern
> that this Court has twice labeled as 'despicable' in earlier cases.

*Id.* at 54 (internal citations omitted).  The court concluded, however, that it would "leave it to the

courts of the Commonwealth to correct any injustice."  *Id.* at 55.  Here, of course, the state courts

cannot correct the injustice, because the claimed effect of Senate Bill 1 is to eliminate Oracle's

claim for copyright infringement, which cannot be litigated in the state courts.  Thus, this case is

more similar to *Lapides* than to *Maysonet-Robles*, and warrants a similar outcome.

      The other cases Cover Oregon relies upon for its argument are similarly distinguishable.

     PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Surprenant v. Mass Tpk. Auth.*, 768 F.Supp.2d 312 (D. Mass. 2011), a district court case in the First Circuit with facts "for all practical purposes identical" to those in *Maysonet-Robles*, *id.* at n.9, is non-binding and distinguishable for the same reasons that *Maysonet-Robles* is distinguishable. *Kroll v. Board of Trustees of University of Illinois*, 934 F.2d 904 (7th Cir. 1991), which briefly addresses this topic, also did not involve a prior contractual commitment to submit to federal court jurisdiction. Nor did *Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Comm'n*, 453 F.3d 1309, 1313 (11th Cir. 2006), or *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 686-87 (8th Cir. 2011), which are further distinguishable because they address federal governmental immunity and tribal immunity, not Eleventh Amendment immunity. Thus, the cases upon which Cover Oregon relies do not weigh against a finding that Senate Bill 1, as applied to Oracle in this case, violates the Impairment of Contracts Clauses of the United States and Oregon Constitutions.

## 2.    Senate Bill 1 Is Unconstitutional Under The Due Process Clause.

Senate Bill 1, as applied to Oracle in this case, also violates the Due Process Clause of the Fourteenth Amendment. That clause provides that no State shall "deprive any person of . . . property, without due process of law." To establish a violation of substantive due process, a plaintiff must show only: (1) a constitutionally protectable property interest, and (2) the deprivation of that interest without due process of law. *Board of Regents v. Roth*, 408 U.S. 564 (1972); *see also Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006) (internal citations omitted). The facts of this case meet these requirements. Oracle's pending claim for copyright infringement against Cover Oregon constitutes a constitutionally protectable property interest. And Senate Bill 1, as interpreted by Cover Oregon, retroactively, arbitrarily, and capriciously deprives Oracle of that property interest without due process of law.

### a.    Oracle's Copyright Claim Against Cover Oregon Is A Constitutionally Protectable Property Interest.

"The threshold question is whether [Oracle has] a constitutionally protectable property interest[.]" *Foss v. National Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998). "In order

to possess a property interest in a benefit, an individual must have more than an abstract need or desire for it or a unilateral expectation of it.  Rather, he must possess a legitimate claim of entitlement to it." *Brewster v. Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 982 (9th Cir. 1998) (internal quotations omitted).  "Property interests . . . are not created by the Constitution. . . . [T]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Oracle's pending claim for copyright infringement is one such property interest, created by federal law.  *See* 17 U.S.C. § 101, *et seq.*; *see also Roth v. Pritikin*, 710 F.2d 934, 939 (2d Cir. 1983) ("[A]n interest in a copyright is a property right protected by the due process and just compensation clauses of the Constitution).  Oracle has the exclusive right to reproduce, distribute, and prepare derivative works of its copyrighted software, and Cover Oregon has infringed upon that right.  *See* 17 U.S.C. § 106.  Further, "lawsuits, as choses in action, are personal property . . . ."  *United States v. Stonehill*, 83 F.3d 1156, 1159–60 (9th Cir. 1996); *see also Rhyne v. K-Mart Corp.*, 594 S.E.2d 1, 12 (N.C. 2004) ("Without question, vested rights of action are property, just as tangible things are property."); *Duckworth v. Mull*, 55 S.E. 850, 852 (N.C. 1906) ("A right to sue for an injury is a right of action; it is a thing in action, and is property."); *Angle v. Chicago, St. P., M. & O. Ry. Co.*, 151 U.S. 1, 19 (1894) (stating that a right of action to recover damages for an injury is property); *Alliance of Descendants of Texas Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1994) (finding that "a legal cause of action is property within the meaning of the Fifth Amendment") (internal citations omitted).  Because Senate Bill 1 deprives Oracle of its right to sue Cover Oregon or a successor for Cover Oregon's copyright infringement, Senate Bill 1 has deprived Oracle of a constitutionally protectable property interest.

       **b.**      **The Passage of Senate Bill 1 Was Arbitrary And Unreasonable And Served No Substantial Public Purpose.**

"[T]o establish a substantive due process violation," a party must show that the challenged

action was "clearly arbitrary and unreasonable." *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005); *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 960 (9th Cir. 2011). Oracle has shown that here. *See supra* at Section IV.D.1.b. Oracle has shown that the Oregon Legislature passed Senate Bill 1 (and, in particular, the portion of that bill that purports to insert Eleventh Amendment immunity into the Cover Oregon OLSA,) not to benefit the public, but to deprive Oracle of its rights and to gain a litigation advantage. Oracle has shown that the transfer of Cover Oregon's rights and liabilities will confer no benefit to the public in the form of improved financial conditions or functionality of the HIX. And Oracle has shown that even some Oregon legislators questioned the speed with which the Legislature passed Senate Bill 1, as well as whether the transfer of Cover Oregon's rights and liabilities to DCBS was a good idea. Oracle has shown that at least one legislator thought that the Legislature should have asked an Oracle representative to testify about the impact of Senate Bill 1—the Legislature did not. Thus, the Passage of Senate Bill 1 was arbitrary, unreasonable, and unconstitutional as applied to Oracle in this case.

### 3.    Senate Bill 1 Is Unconstitutional Under The Takings Clause.

Finally, Senate Bill 1, as applied here, is unconstitutional under the Takings Clause of the Fifth Amendment to the United States Constitution. That clause provides that no "private property shall be taken for public use, without just compensation." The Fourteenth Amendment incorporates the Takings Clause and applies it to the States. *Kelo v. New London*, 545 U.S. 469 (2005). To state a claim for a taking of property by the state, a party must show: (1) a government taking, (2) of an interest that qualifies as property under the Fifth Amendment, (3) for a public purpose or use, and (4) without adequate compensation. *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1000-01 (1984). The State's actions in this case satisfy all four elements.

### a.    Senate Bill 1, As Applied By Cover Oregon, Affected A Government Taking.

To the extent Senate Bill 1 acts to deprive Oracle of its copyright claim against Cover Oregon, it constitutes a government taking. Takings claims are divided into two classes: physical

occupation and regulatory takings.  *Compare, e.g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982) (physical occupation) *with Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 123-25 (1978) (regulatory taking).  A physical occupation occurs when the government physically intrudes upon private property.  *Loretto*, 458 U.S. at 426.  A regulatory taking, on the other hand, occurs when the value or usefulness of private property is diminished by regulatory action.  *See generally Penn Central Transp. Co.*, 438 U.S. 104.  Senate Bill 1, as applied to Oracle in this case, constitutes a regulatory taking because it diminishes the value of Oracle's copyrights, as well as its pending copyright claim against Cover Oregon, by making it impossible for Oracle to enforce its copyrights against a known infringer.

> **b.    Oracle's Interest In Its Copyrights And Its Pending Copyright Claim Against Cover Oregon Is An Interest That Qualifies As Property Under The Fifth Amendment.**

Oracle's interests in its copyrights and its copyright claim against Cover Oregon are interests that qualify as property under the Fifth Amendment.  "[A] legal cause of action is property within the meaning of the Fifth Amendment."  *Alliance of Descendants of Texas Land Grants v. United States*, 37 F.3d at 1481 (Fed. Cir. 1994) (internal citations omitted).  So is a more generalized interest in copyright.  *See Ruckelshaus v. Monsanto*, 467 U.S. 986, 1002-03 (1984) (intangible interests like trade secrets can constitute private property protected by the takings clause); *Practice Mgmt. Info. v. Am. Medical Ass'n*, 121 F.3d 516, 520 (9th Cir. 1997) (recognizing that certain action by a "state legislature or administrative body [that would deprive a] copyright owner of its property would raise very substantial problems under the Takings Clause of the Constitution"); *Roth v. Pritikin*, 710 F.2d 934, 939 (2d Cir. 1983) ("[A]n interest in a copyright is a property right protected by the due process and just compensation clauses of the Constitution); *Lane v. First National Bank of Boston*, 871 F.2d 166, 174 (1st Cir. 1989) (copyright "taken for public use" may give rise to "a constitutional right to just compensation").  Therefore, Oracle's interests in its copyrights and its pending copyright claim against Cover Oregon are protectable property interests under the Fifth Amendment.

PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS

  **c.**  **Senate Bill 1, As Cover Oregon Interprets It, Takes Oracle's Property Interest In Its Copyrights For A Public Purpose Or Use.**

The portion of Senate Bill 1 that purports to insert an Eleventh Amendment immunity defense into the Cover Oregon OLSA has a public purpose: to allow the State to make use of the benefits of the Cover Oregon OLSA in the form of copyrighted software code without burdening it with the obligation to respect Oracle's copyrights. Senate Bill 1 accomplishes this by legislatively re-writing Oracle's contract with Cover Oregon in order to provide the State's Attorney General with a previously-unavailable legal argument aimed at destroying Oracle's ability to enforce its copyrights. Among the benefits the State would enjoy is a financial windfall from being relieved of the obligation to defend against Oracle's copyright claims, or pay damages for infringing those copyrights. These are not *legitimate* public purposes, *see* Section IV.D.1.b., *supra*, but they are enough to satisfy this prong. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1014-15 (1984) (the challenged state action must simply have a "conceivable public character").

  **d.**  **Senate Bill 1 Does Not Provide For Compensation To Oracle.**

Finally, the taking effected by Senate Bill 1, as interpreted by Cover Oregon, does not provide for adequate compensation to Oracle—Senate Bill 1 does not provide for any compensation to Oracle at all for the diminution of the value of its copyrights or the loss of its right to enforce its copyright claim against Cover Oregon. For these reasons, Senate Bill 1, as interpreted by Cover Oregon, is unconstitutional under the Takings Clause as well.

**V.**  **CONCLUSION**

For these reasons, Oracle respectfully asks the Court to deny Cover Oregon's Motion for Judgment on the Pleadings.

Respectfully submitted,


Dated: May 6, 2015                    By: /s/ Brenna K. Legaard
                                      **Brenna K. Legaard, OSB #001658**
                                      Email: blegaard@schwabe.com
                                      **Jeffrey S. Eden, OSB #851903**
                                      Email: jeden@schwabe.com
                                      SCHWABE, WILLIAMSON & WYATT, P.C.
                                      1211 SW 5th Avenue, Suite 1900
                                      Portland, OR  97204
                                      Telephone: 503-222-9981
                                      Facsimile: 503-796-2900

                                      *Attorneys for Plaintiff*
                                      Oracle America, Inc.


PLAINTIFF ORACLE AMERICA, INC.'S CORRECTED OPPOSITION TO
          COVER OREGON'S MOTION FOR JUDGMENT ON THE PLEADINGS