IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ORACLE AMERICA, INC.,
a Delaware Corporation,

       Plaintiff,

v.

THE OREGON HEALTH INSURANCE
EXCHANGE CORPORATION, dba
COVER OREGON, an Oregon
Limited Liability
Corporation; THE STATE OF
OREGON, BY AND THROUGH THE
OREGON HEALTH AUTHORITY AND
THE OREGON DEPARTMENT OF
HEALTH SERVICES; and DOES
1-25, INCLUSIVE,

       Defendants.

3:14-CV-01279-BR

OPINION AND ORDER

BRENNA K. LEGAARD
JEFFERY S. EDEN
Schwabe, Williamson & Wyatt, P.C.
1211 S.W. Fifth Avenue, Suite 1900
Portland, OR 97204
(503) 222-9981

1 - OPINION AND ORDER

**KAREN JOHNSON-MCKEWAN**
**ROBERT S. SHWARTS**
**ERIN M. CONNELL**
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

**DORIAN E. DALEY**
**DEBORAH K. MILLER**
**PEGGY E. BRUGGMAN**
Oracle Corporation
Legal Department
500 Redwood Shores, CA 94065
(650) 506-9534

> Attorneys for Plaintiff

**DAVID B. MARKOWITZ**
**PETER H. GLADE**
**LISA A. KANER**
**DALLAS S. DELUCA**
**HARRY B. WILSON**
Markowitz Herbold PC
Suite 3000, Pacwest Center
1211 S.W. Fifth Avenue
Portland, OR 97204-3730
(503) 295-3085

> Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on Defendant Cover Oregon's Motion (#115) for Judgment on the Pleadings and Plaintiff Oracle America, Inc.'s Corrected Unopposed Motion (#128) to Substitute the State of Oregon, by and through the Department of Consumer and Business Services, for Cover Oregon. For the reasons that follow, the Court **GRANTS** Oracle's Motion to

2 - OPINION AND ORDER

Substitute the State of Oregon, by and through the Department of Consumer and Business Services, for Cover Oregon and **DENIES** Cover Oregon's Motion for Judgment on the Pleadings.

## BACKGROUND

The parties are familiar with the facts underlying this action. The Court, therefore, sets forth only the procedural history relevant to the pending Motions:

On August 8, 2014, Oracle America, Inc., filed a Complaint in this Court against the Oregon Health Insurance Exchange Corporation (Cover Oregon) asserting claims for breach of contract and *quantum meruit* and basing federal jurisdiction on the parties' diversity of citizenship. Oracle alleged Cover Oregon has not paid for all of the services that Oracle rendered, "continue[s] to use Oracle's work product[,] and . . . has transferred some or all of that work product to others in violation of the parties' written agreements."

On August 22, 2014, Cover Oregon filed a Motion to Dismiss for Failure to State a Claim and Failure to Join Necessary and Indispensable Party. Specifically, Cover Oregon sought dismissal of the Federal Action because Oracle failed to sue the State of Oregon, who Cover Oregon contended was a necessary and indispensable party to the action.

On September 8, 2014, Oracle filed an Amended Complaint[1] in
which Oracle added Oregon as a defendant and asserted claims for
copyright infringement against Cover Oregon and Oregon, breach of
contract against Cover Oregon, breach of the implied covenant of
good faith and fair dealing against Cover Oregon, and *quantum
meruit* against Cover Oregon and Oregon.

On September 18, 2014, in light of Oracle's allegations in
its Corrected First Amended Complaint, the Court denied as moot
Cover Oregon's Motion to Dismiss and directed Cover Oregon and/or
Oregon to file any motions against the Corrected First Amended
Complaint no later than October 2, 2014.

On October 2, 2014, Oregon and Cover Oregon each filed
separate Motions to Dismiss Oracle's Corrected First Amended
Complaint as well as a Joint Motion to Dismiss or, in the
Alternative, to Stay.

On December 19, 2014, the Court heard oral argument on
Oregon's Motion to Dismiss; the Joint Motion to Dismiss or, in
the Alternative, to Stay filed by Oregon and Cover Oregon; and
Cover Oregon's Motion to Dismiss.  At oral argument the Court
granted Oregon's Motion to Dismiss, denied Cover Oregon's Motion
to Dismiss, and took the Joint Motion to Dismiss under
advisement.

---

[1] On September 17, 2014, Oracle filed a Corrected First
Amended Complaint (#33) to correct the parties' names.

4 - OPINION AND ORDER

On January 13, 2015, the Court issued an Opinion and Order in which it formally granted Oregon's Motion to Dismiss and denied Cover Oregon's Motion to Dismiss with leave for Oracle to file another amended Complaint consistent with the Court's rulings.  The Court also granted in part and denied in part the Joint Motion to Dismiss as follows:  (1) denied the Joint Motion to Dismiss Oracle's copyright-infringement claim on the ground that Oracle failed to state a claim, (2) granted the Joint Motion to Dismiss Oracle's alternative Fourth Claim for *quantum meruit*, and (3) granted the Joint Motion to Dismiss the Doe Defendants.

On January 27, 2015, Oracle filed a Second Amended Complaint.

On March 3, 2015, Oregon filed a Motion for Summary Judgment on the issue of Eleventh Amendment immunity.  On March 20, 2015, Oracle filed a Cross-Motion for Summary Judgment on the issue of Eleventh Amendment immunity.  The Court heard oral argument on the parties' Cross-Motions on April 10, 2015, and took the Motions under advisement.[2]

On April 14, 2015, Oregon filed a Motion for Judgment on the Pleadings.

On May 5, 2015, Oracle filed an Unopposed Motion to

----

[2] The Court has withheld ruling on these Motions at the parties' request.  The Court will issue its ruling on the Cross-motions for Summary Judgment in conjunction with its ruling on the anticipated Motion for Judgment on the Pleadings as to the Department of Consumer and Business Services (DCBS).

Substitute the State of Oregon, by and through the Department of Consumer and Business Services, for Cover Oregon.  On May 5, 2015, Oracle also filed an Amended Unopposed Motion to Substitute the State of Oregon, by and through the Department of Consumer and Business Services, for Cover Oregon.  On May 6, 2015, Oracle filed a Corrected Unopposed Motion to Substitute the State of Oregon, by and through the Department of Consumer and Business Services, for Cover Oregon.  The Court took the parties' Motions under advisement on May 19, 2015.

## STANDARDS

Federal Rule of Civil Procedure 12(c) provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

For purposes of a motion pursuant to Rule 12(c), the court must accept the nonmoving party's allegations as true and view all inferences in a light most favorable to the nonmoving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  A judgment on the pleadings is properly granted when, taking all allegations in the nonmoving party's pleadings as true, the moving party is entitled to judgment as a matter of law.  *Compton*

6 – OPINION AND ORDER

*Unified Sch. Dist. v. Addison*, 598 F.3d 1181, 1185 (9th Cir.

2010). "To survive a Rule 12(c) motion, the complaint must

contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Davis v. Astrue*,

Nos. C-06-6108 EMC, C-09-0980 EMC, 2011 WL 3651064, at *1 (N.D.

Cal. Aug. 18, 2011)(citation omitted). *See also Cafasso v. Gen.*

*Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011)(A

Rule 12(c) motion is "functionally identical to a Rule 12(b)(6)

motion to dismiss for failure to state a claim, and therefore the

same legal standard applies.").


## DISCUSSION

### I.    Senate Bill 1

On March 6, 2015, the Oregon State Legislature passed Senate

Bill 1, which dissolved Cover Oregon and moved its functions and

duties to the Department of Consumer and Business Services

(DCBS), which is an agency of the State of Oregon.

In particular, the legislation provides:

> The rights, obligations and liabilities of [Cover
> Oregon] legally incurred before [March 6, 2015]
> are transferred to [DCBS].  [DCBS] is the
> successor to those rights, obligations and
> liabilities, notwithstanding any prohibition on
> assignment contained in contracts assumed by
> [DCBS] under sections 1 and 2 of this 2015 Act.

Senate Bill 1, § 6(3).  The legislation further provides "the

"moneys in the accounts" and the "unexpended balances of amounts

7 - OPINION AND ORDER

authorized to be expended" by Cover Oregon are transferred to
DCBS as of June 30, 2015. *Id.* § 4. Finally, according to Senate
Bill 1, "the State of Oregon, by and through the [DCBS], is
substituted for [Cover Oregon]" in any pending litigation
"involving or with respect to" the "powers, rights, obligations
and liabilities" of Cover Oregon's Board and Executive Director.
*Id.* § 5.

## II.   The Parties' Motions

The parties agree under Senate Bill 1 Cover Oregon ceases to
exist; its "rights, obligations and liabilities" belong solely to
DCBS; and the legislation will transfer Cover Oregon's
liabilities to DCBS as early as March 6, 2015, and not later than
June 30, 2015.  It is the transfer of Cover Oregon's rights,
obligations, and liabilities that form the basis for Oregon's
Motion for Judgment on the Pleadings and Oracle's Motion to
Substitute.  Specifically, Cover Oregon moves the Court in its
Motion for Judgment on the Pleadings to dismiss Oracle's claims
against Cover Oregon because Cover Oregon's "rights, obligations
and liabilities" transferred to DCBS under Senate Bill 1 as of
March 6, 2015, and, therefore, the State of Oregon is substituted
for Cover Oregon in any pending litigation.  As noted, DCBS is an
agency of the State, and, according to Cover Oregon, DCBS is,
therefore, entitled to Eleventh Amendment immunity as to Oracle's
copyright claims.  Accordingly, Cover Oregon contends the Court

should dismiss those claims now that DCBS is the real party in interest.  In its Motion to Substitute, however, Oracle asserts Cover Oregon does not have standing to assert Eleventh Amendment immunity or any other defense on behalf of DCBS.  Oracle notes it is undisputed that Cover Oregon was not entitled to invoke Eleventh Amendment immunity on its own behalf, and there is not any legal authority to support Cover Oregon's argument that it may do so now on behalf of DCBS.  Thus, Oracle contends DCBS must be substituted for Cover Oregon and, if it chooses to do so, assert Eleventh Amendment immunity for itself.

## II.  Analysis

### A.  Standing

The constitutional requirements for standing under Article III are jurisdictional, cannot be waived by any party, and may be considered *sua sponte*.  *Sturgeon v. Masica*, 768 F.3d 1066, 1071 (9th Cir. 2014)(citing *City of Los Angeles v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009)).

Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99

(1975) (quotation omitted).  *See also Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (same).  A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth,* 422 U.S. at 499.  *See also Bond v. U.S.*, 131 S. Ct. 2355, 2363 (2011) (same).

"Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation" for two reasons.  *Singleton v. Wulff*, 428 U.S. 106, 113 (1976).  *See also Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479 (2006); *McCollum v. Ca. Dep't of Corr. and Rehabilitation*, 647 F.3d 870, 879 (9th Cir. 2011) (same).  "First . . . it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. Second, third parties themselves usually will be the best proponents of their own rights."  *Singleton*, 428 U.S. at 113-14 (citation omitted).  Standing rules ensure the "concrete adverseness which sharpens the presentation of issues upon which . . . court[s] so largely depend[] for illumination of difficult constitutional questions."  *United States v. Windsor*, 133 S. Ct. 2675, 2686-87 (2013) (internal quotation marks and citations omitted).  *See also Mills v. United States*, 742 F.3d 400, 406-07

(9th Cir. 2014).

**B.    Cover Oregon lacks standing to assert Eleventh Amendment immunity on behalf of DCBS.**

A defendant who asserts Eleventh Amendment immunity must have standing to do so.  *See Ashker v. California Dep't of Corr.*, 112 F.3d 392, 394 (9th Cir. 1997)(addressing whether defendants had standing to raise Eleventh Amendment immunity). There are generally two circumstances in which a defendant has standing to assert Eleventh Amendment immunity:  (1) a state or one of its agencies may raise the state's Eleventh Amendment immunity when "the State or one of its agencies or departments is named as the defendant" *(Pennhurst State Sch. & Hop. v. Halderman*, 465 U.S. 89, 100 (1984)) and (2) when state officials are the named defendants in an action, a state "is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants" if "the action is in essence one for the recovery from the state, [and] the state is the real, substantial party in interest" *(Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. of Ga.*, 535 U.S. 613, 623 (2002)).  As noted, however, Cover Oregon is neither an agency of the state nor a state official.

Cover Oregon's contention that it may raise Eleventh Amendment immunity on behalf of DCBS because Oregon has become

the "real, substantial party in interest" by operation of Senate

Bill 1 is unpersuasive. As noted, the Supreme Court held in *Ford*

*Motor Company* and courts have confirmed in several subsequent

cases that a state may invoke its Eleventh Amendment immunity

when state officials are nominal defendants if the "action is in

essence one for the recovery of money from the state" and the

state is, therefore, the "real, substantial party in interest."

*Ford Motor Co.*, 323 U.S. at 464 (emphasis added). *See also*

*Pennhurst State School & Hosp.*, 465 U.S. at 101; *Ashker*, 112 F.3d

at 394; *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988). *Ford*

*Motor* does not stand for the principle that a third party who is

not a state official or a state agency may assert a state's

Eleventh Amendment immunity from suit. In addition, although

Oregon is a defendant in its own right, here it has not (and does

not now) appear to invoke Eleventh Amendment immunity on behalf

of DCBS. In addition, Oracle has not asserted any claims against

Cover Oregon that treat Cover Oregon as a proxy for the State.

Moreover, Oracle has not sued a "nominal" defendant in

order to seek money from the state coffers, but instead it

brought an action against Cover Oregon, which was an independent

public corporation with its own funds. Oregon has not defended

Cover Oregon as to Oracle's claims, and the State's officials

have not been named as nominal defendants as to those claims.

Instead Oregon has attempted through legislation to shift

Oracle's claims against Cover Oregon to an agency of the State.

In *Asker* the Ninth Circuit rejected state officials' attempts to expand the concept of real party in interest as Cover Oregon seeks to do here.  In that case the plaintiff sued two state officials in their personal capacities.  The state officials asserted California was, in fact, the "real party in interest" because California had passed a statute requiring it to indemnify state officials sued in their personal capacities.  *Id.* The Ninth Circuit rejected this argument on the ground that "a state should not be able to extend 'sovereign immunity to state officials merely by enacting a law assuming those officials' debts.'"  *Id.* (quoting *Demery v. Kupperman*, 735 F.2d 1139 (9th Cir. 1984)).  Similar reasoning applies here.  The State cannot legislatively expand who has standing to raise an Eleventh Amendment immunity defense (*i.e.,* grant Cover Oregon standing to assert defenses belonging only to the State).  If Oregon wishes to raise the defense of Eleventh Amendment immunity for DCBS, Oregon must do so itself.

Cover Oregon cites three cases to support its assertion that it may assert an Eleventh Amendment immunity defense on behalf of DCBS:  *Surprenant v. Massachusetts Turnpike Authority*, 768 F. Supp. 2d 312 (D. Mass. 2011); *Kroll v. Board of Trustees of University of Illinois*, 934 F.2d 904 (7th Cir. 1991); and *Maysonet-Robles v. Cabrero*, 323 F.3d 43 (1st Cir. 2003).  In

these cases courts validated an Eleventh Amendment immunity
defense when a state entity succeeded to litigation that was
initially filed against a non-state entity.  The courts in these
cases, however, did not permit the non-state entity to assert
Eleventh Amendment immunity on behalf of the state entity.  The
state entity appeared in each of these cases and asserted
Eleventh Amendment immunity on its own behalf.  For example, in
*Surprenant* after the Massachusetts Legislature created a new
state agency (the MassDOT) and transferred to the MassDOT the
"functions, assets, and liabilities" of the non-state entities
that the plaintiff had sued, the plaintiff "filed an Amended
Complaint substituting the MassDOT as the named defendant.  The
MassDOT answered, raising the Eleventh Amendment as an
affirmative defense.  On September 27, 2010, the MassDOT filed
this motion for judgment on the pleadings" on the ground of
Eleventh Amendment immunity.  768 F. Supp. 2d at 314.  Similarly,
in *Kroll* the plaintiff brought an action against a non-state
entity.  The plaintiff's complaint was dismissed with leave to
amend.  When the plaintiff filed an amended complaint, he again
named the non-state entity.  It became clear, however, that the
non-state entity had been merged into a state entity between the
time of the plaintiff's first and second complaints.  The state
entity then "appear[ed] as the sole surviving entity of the
merger [and] asserted its eleventh amendment immunity from suit."

14 - OPINION AND ORDER

934 F.2d at 906.  Finally, in *Maysonet-Robles* the lower court's
opinion makes clear that the state entity appeared in the action
and filed its own motion to dismiss based on Eleventh Amendment
immunity.  *See* Request for Judicial Notice (#123), Ex. E
(*Maysonet-Robles v. Cabrero*, Case No. 97-1036 (D. Puerto Rico),
Dkt. No. 69 at 4).

On this record the Court concludes Senate Bill 1 has
made DCBS the real party in interest in this matter and DCBS
should now be substituted for Cover Oregon as a party to this
litigation.  Because the Court also concludes Cover Oregon has
not established it has standing to assert Eleventh Amendment
immunity on behalf of DCBS, the Court grants Oracle's Motion to
Substitute and denies Cover Oregon's Motion for Judgment on the
Pleadings with leave to DCBS to file (after conferral with
Oracle) its own Motion for Judgment on the Pleadings no later
than June 22, 2015.

## CONCLUSION

For these reasons, the Court **GRANTS** Oracle's Corrected
Unopposed Motion (#128) to Substitute the State of Oregon, by and
through the Department of Consumer and Business Services, for
Cover Oregon and **DENIES** Cover Oregon's Motion (#115) for Judgment
on the Pleadings with leave to DCBS to file (after conferral with
Oracle) its own Motion for Judgment on the Pleadings **no later**

15 - OPINION AND ORDER

than June 22, 2015.

IT IS SO ORDERED.

DATED this 5th day of June, 2015.


ANNA J. BROWN
United States District Judge