**David B. Markowitz, OSB No. 742046**
DavidMarkowitz@MarkowitzHerbold.com
**Lisa A. Kaner, OSB No. 881373**
LisaKaner@MarkowitzHerbold.com
**Dallas S. DeLuca, OSB No. 072992**
DallasDeLuca@MarkowitzHerbold.com
**Harry B. Wilson, OSB No. 077214**
HarryWilson@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
Suite 3000 Pacwest Center
1211 S.W. Fifth Avenue
Portland, OR  97204-3730
Tel:  (503) 295-3085
Fax:  (503) 323-9105

On Behalf of Oregon Attorney General Ellen Rosenblum

Special Assistant Attorneys General for Defendant
The State of Oregon, by and through the Department
of Consumer and Business Services

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ORACLE AMERICA, INC.,** a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>**THE OREGON HEALTH INSURANCE EXCHANGE CORPORATION, dba COVER OREGON,** an Oregon public corporation; **THE STATE OF OREGON, BY AND THROUGH THE OREGON HEALTH AUTHORITY AND THE OREGON DEPARTMENT OF HUMAN SERVICES,** AND DOES 1-25, INCLUSIVE,<br><br>Defendants. | CV No.: **3:14-cv-01279-BR**<br><br>**OREGON DEPARTMENT OF CONSUMER AND BUSINESS SERVICES' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**By Defendants**<br><br>**Fed. R. Civ. P. 12(c)**<br><br>**ORAL ARGUMENT REQUESTED** |

**OREGON DEPARTMENT OF CONSUMER AND BUSINESS SERVICES' MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

LOCAL RULE 7.1 CERTIFICATION.................................................................... 1

MOTION......................................................................................................... 1

MEMORANDUM OF LAW ............................................................................... 1

INTRODUCTION ............................................................................................. 1

FACTUAL BACKGROUND............................................................................... 2

STANDARD..................................................................................................... 3

ARGUMENT .................................................................................................... 3

    I.    The State, by and through DCBS, is entitled to dismissal of the single
         copyright claim against it because of its Eleventh Amendment immunity. ........... 4

         A.    DCBS has Eleventh Amendment Immunity. ............................................... 4

         B.    States are immune from suit by private parties in federal court
               unless Congress abrogates immunity or the state expressly waives
               immunity. ........................................................................................... 4

         C.    Cover Oregon's lack of immunity does not affect DCBS. ........................ 5

    II.   The State has not waived its Eleventh Amendment immunity for the
         copyright infringement claim against DCBS. .......................................................... 9

         A.    Oracle fails to allege that its copyright claim against DCBS relates
               to the OHA OLSA and the Mythics Agreement....................................... 9

               1.    Consistent with this Court's January 13 opinion, the
                       copyright claim against Cover Oregon does not arise
                       from the OHA OLSA. .................................................. 10

               2.    The case law refutes Oracle's "related to" contention
                       because an interpretation of the OHA OLSA and the
                       Mythics Agreement is not required to resolve the
                       copyright claim against DCBS..................................... 11

         B.    There is no waiver of immunity in the Cover Oregon OLSA
               because Cover Oregon had no immunity to waive and because
               parties cannot agree to federal subject matter jurisdiction by
               contract............................................................................................. 13

i

C.     The State did not waive immunity by litigation conduct because it did not invoke this Court's jurisdiction. ................................................... 14

III.     DCBS's assertion of Eleventh Amendment immunity does not violate the state or federal constitutions. ................................................................ 15

A.     Having relied upon Senate Bill 1 to move to substitute DCBS for Cover Oregon, Oracle is judicially estopped from contending that Senate Bill 1 is unconstitutional. ................................................ 15

B.     DCBS's assertion of Eleventh Amendment immunity does not violate the state and federal Contracts Clauses. ........................................ 17

1.     Senate Bill 1 does not substantially impair Oracle's contracts. ............................................................. 18

2.     Senate Bill 1 is justified by significant and legitimate public purposes. ........................................................ 20

3.     The Court's holding in *Beers* shows that Senate Bill 1 is constitutional. .......................................................... 21

C.     Senate Bill 1 does not violate the Due Process Clause because it is rationally related to legitimate public purposes. ..................................... 22

D.     Senate Bill 1 is not an unconstitutional taking of Oracle's property. ....... 24

1.     Oracle's Takings Clause claim is not ripe because Oracle cannot establish that it has been denied just compensation. .......................................................... 24

2.     Senate Bill 1 is not a regulatory taking because it minimally regulates Oracle's copyright assets and Oracle retains the vast majority of its rights. ............................. 25

CONCLUSION ................................................................................... 27

TABLE OF AUTHORITIES

**Cases**

*Allied Structural Steel Co. v. Spannaus*
438 U.S. 234 (1978) ............................................................................ 17

*Amerind Risk Mgmt. Corp. v. Malaterre*
633 F.3d 680 (8th Cir. 2011) ............................................................ 7, 9

*Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Comm'n*
453 F.3d 1309 (11th Cir. 2006) ........................................................ 7, 8

*Atascadero State Hosp. v. Scanlon*
473 U.S. 234 (1985) ............................................................................ 16

*Bagdasarian Productions, LLC v. Twentieth Century Fox Film Corp.*
No. 2:10-CV-02991-JHN-JCGx, 2010 WL 5154136 (C.D. Cal. Aug. 12, 2010) ........... 13

*Beentjes v. Placer Cnty. Air Pollution Control Dist.*
254 F. Supp. 2d 1159 (E.D. Cal. 2003) ................................................ 4

*Beers v. Arkansas*
61 U.S. (20 How.) 527 (1857) ...................................................... 5, 21, 22

*Besinga v. United States*
14 F.3d 1356 (9th Cir. 1994) .............................................................. 24

*Clark v. Barnard*
108 U.S. 436 (1883) .............................................................................. 6

*College Savs. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*
527 U.S. 666 (1999) ................................................................ 8, 16, 22

*Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Washington*
696 F.2d 692 (9th Cir. 1983) ........................................................ 21, 23

*Evans v. Finley*
166 Or. 227 (1941) .............................................................................. 17

*F.C.C. v. Beach Commc'ns, Inc.*
508 U.S. 307 (1993) ...................................................................... 23, 24

*Fleming v. Pickard*
581 F.3d 922 (9th Cir. 2009) .............................................................. 3

*Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.*
949 F. Supp. 1427 (N.D. Cal. 1997) ............................................ 12, 13

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*
896 F.2d 1542 (9th Cir. 1989) ............................................................ 3

*Horne v. U.S. Dep't of Agric.*
750 F.3d 1128 (9th Cir. 2014) *cert. granted sub nom. Horne v. Dep't of Agric.*,
135 S. Ct. 1039 (2015) ........................................................................ 26

i

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*
456 U.S. 694 (1982) ................................................................................... 14

*Kilpatrick v. Snow Mountain Pine Co.*
105 Or. App. 240 (1991 ............................................................................ 17

*Kroll v. Bd. of Trustees of Univ. of Ill.*
934 F.2d 904 (7th Cir. 1991) ....................................................................... 5

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*
535 U.S. 613 ................................................................................................ 9

*Lucas v. South Carolina Coastal Council*
505 U.S. 1003 (1992) ........................................................................... 24, 27

*Manetti–Farrow, Inc. v. Gucci America*
858 F.2d 509 (9th Cir.1988) ...................................................................... 12

*Matsuda v. City & Cnty. of Honolulu*
512 F.3d 1148 (9th Cir. 2008) ................................................................... 23

*Maysonet-Robles v. Cabrero*
323 F.3d 43 (1st Cir. 2003) ................................................................. *passim*

*McGowan v. Maryland*
366 U.S. 420 (1961) ................................................................................... 23

*Moro v. State*
357 Or. 167 (2015) ..................................................................................... 17

*New Hampshire v. Maine*
532 U.S. 742 (2001) ................................................................................... 15

*North Pacifica LLC v. City of Pacifica*
526 F.3d 478 (9th Cir. 2008) ..................................................................... 24

*Northwestern Nat'l Life Ins. Co. v. Tahoe Reg'l Planning Agency*
632 F.2d 104 (9th Cir. 1980) ..................................................................... 17

*Penn Central Transportation Co. v. City of New York*
438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) ............................... 26

*Pennhurst State Sch. & Hosp. v. Halderman*
465 U.S. 89 (1984) ....................................................................................... 4

*Pennsylvania Coal Co. v. Mahon*
260 U.S. 393 (1922) ............................................................................. 24, 25

*Port Auth. Trans-Hudson Corp. v. Feeney*
495 U.S. 299 (1990) ................................................................................... 17

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*
506 U.S. 139 (1993) ................................................................................... 18

*Romano v. Bible*
169 F.3d 1182 (9th Cir. 1999) ..................................................................... 4

*Rosenblum et al. v. Oracle America, Inc. et al.*
(Marion County Circuit Court Case number 14C20043 ................................. 19

*SmithKline Beecham Corp. v. Abbott Labs.*
740 F.3d 471 (9th Cir. 2014) ..................................................................... 23

*Sossamon v. Texas*
131 S. Ct. 1651 (2011) ............................................................................. 10

*State of Nev. Employees Ass'n, Inc. v. Keating*
903 F.2d 1223 (9th Cir. 1990) .................................................................. 20

*State of New York No. 1*
256 U.S. 490 (1921) ................................................................................... 4

*States v. Salerno*
481 U.S. 739 (1987) ................................................................................. 23

*Surprenant v. Mass. Turnpike Auth.*
768 F. Supp. 2d 312 (D. Mass. 2011) ............................................. 5, 6, 7, 8

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*
535 U.S. 302 (2002 ............................................................................. 26, 27

*United States Trust Co. v. New Jersey*
431 U.S. 1 (1977) ............................................................................... 17, 19

*University of Haw. Prof'l Assembly v. Cayetano*
183 F3d 1096 (9th Cir 1999) ............................................................... 18, 20

*Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura*
371 F.3d 1046 (9th Cir. 2004) .................................................................. 25

*Voth v. America's Best Cmty. Fed. Credit Union*
Civ. No. 08-1052-MO, 2009 WL 1067059 (D. Or. Apr. 20, 2009) ............... 4

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank*
473 U.S. 172 (1985) ................................................................................. 24

*Williamson Towing Co. v. Illinois*
534 F.2d 758 (7th Cir. 1976) ................................................................... 18

*Yee v. City of Escondido*
503 U.S. 519 (1992) ................................................................................. 26

**Statutes**

17 U.S.C. § 411 ........................................................................................ 12

17 U.S.C. § 501 ........................................................................................ 12

ORS 30.260 ........................................................................................... 3, 16

ORS 741.001 .............................................................................................. 2

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to LR 7.1, defendant the State of Oregon, by and through the Department of Consumer and Business Services, certifies that it has conferred, through counsel via telephone on June 17, 2015, with plaintiff and that plaintiff opposes this motion.

## MOTION

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, defendant the State of Oregon, by and through the Department of Consumer and Business Services ("DCBS"), respectfully moves this Court for judgment on the pleadings based on its seventh affirmative defense dismissing without prejudice plaintiff's claim against DCBS.

This motion is based on the following memorandum of law and the pleadings on file in this action.

## MEMORANDUM OF LAW

## INTRODUCTION

On March 6, 2015, Senate Bill 1 became law.  Senate Bill 1 transferred all liabilities, rights and obligations of the Oregon Health Insurance Exchange Corporation ("Cover Oregon") to DCBS on enactment.  Senate Bill 1, 78th Leg. Assemb., Reg. Sess. ("Senate Bill 1"), §§ 6(2) & 61 (copy of enrolled bill is Ex. 1 to Decl. of Harry B. Wilson in supp. of DCBS's Mot. for J. on the Pleadings ("Wilson Decl.")[1].)  It abolishes Cover Oregon on June 30, 2015.  (*Id.* §§ 2 & 60.)

DCBS is now the real, substantial party in interest to Oracle's claim against Cover Oregon, and DCBS is substituted for Cover Oregon for Oracle's claim against Cover Oregon. (Dkt. 139, June 5, 2015, Op. & Order at 15.)  The Court should dismiss the claim against DCBS by virtue of DCBS's Eleventh Amendment immunity.

---

[1] The declarations of Harry B. Wilson and Tami Hall and the items attached to the Wilson Declaration are not necessary for resolution of this motion.  They are attached solely for the convenience of the Court.  DCBS does not intend to convert this Rule 12(c) motion into a Rule 56 motion.

**Page 1 -   OREGON DEPARTMENT OF CONSUMER AND BUSINESS SERVICES'
MOTION FOR JUDGMENT ON THE PLEADINGS**

## FACTUAL BACKGROUND

The Oregon legislature created Cover Oregon as a public corporation in 2011.  Or. Rev. Stat. § 741.001.  Its mission was, in part, to "[a]dminister a health insurance exchange in the public interest."  *Id.* § 741.001(2)(b).  Consistent with this mission, Cover Oregon engaged Oracle to complete the development and launch of an online health insurance exchange by October 1, 2013.  (Dkt. 77, Second Am. Compl. ("SAC") ¶¶ 18(c), 46-47 & 61-62 (alleging, *inter alia*, that Cover Oregon contracted with Oracle on creation of the health insurance exchange website, and that the exchange had a statutory go-live date of October 1, 2013).)

The website did not work and did not launch on October 1, 2013.  (*See* SAC ¶ 29 (alleging that website was completed by February 2014).)  As a result of technology failures, Cover Oregon was unable to meet its financial projections and was financially non-viable.  "We all know that Cover Oregon was not able to achieve financial self-sufficiency because technology failures drained resources."  Or. State Senate, 78th Leg. Assemb., Reg. Sess. (Feb. 19, 2015) (hereinafter "Senate Debate on S.B. 1") (statement of Sen. Monnes Anderson) (Decl. of Tami Hall in Supp. of DCBS's Mot. for J. on the Pleadings ("Hall Decl.") ¶ 8.)[2]  By early 2014, Oregon state legislators, including the Republican candidate for governor, publicly called for its dissolution.  (Wilson Decl. Ex. 2.)  By September 6, 2014, (which preceded Oracle's filing of its copyright claims) legislators from both major political parties and then-Governor Kitzhaber called for the dissolution of Cover Oregon.  (Wilson Decl. Ex. 3.)

On the first day of the legislative session, February 2, 2015, legislators introduced Senate Bill 1.  During the floor debate, State Representative Kennemer explained that "Cover Oregon was not able to achieve financial self-sufficiency because technology failures drained our resources.  S[enate] B[ill] 1 allows the State to maintain and guarantee the continuation of Cover Oregon's core functions by bringing these functions into DCBS and OHA."  Or. State House of

---

[2] For the convenience of the Court, a transcript of parts of Senate and House testimony is in the Hall Declaration.  The video of the Senate testimony is available at http://oregon.granicus.com/MediaPlayer.php?view_id=6&clip_id=8230 .  House testimony is available at http://oregon.granicus.com/MediaPlayer.php?view_id=6&clip_id=8400 .

Representatives, 78th Leg. Assemb., Reg. Sess. (Feb. 27, 2015) (hereinafter "House Debate on S.B. 1") (statement of Rep. Kennemer) (Hall Decl. ¶ 4.). The Bill passed by two-thirds majorities in both chambers, and Governor Kate Brown signed it on March 6, 2015.

Senate Bill 1 abolishes Cover Oregon, substitutes DCBS for Cover Oregon in all pending litigation, and transfers all of Cover Oregon's responsibilities and liabilities to DCBS, an agency of the State. Senate Bill 1, §§ 1, 2, 5 & 6. The statute further provides that the rights, obligations and liabilities transferred to DCBS remain "subject to the limitations and immunities of the department that arise under ORS 30.260 to 30.300, the Eleventh Amendment to the United States Constitution and other state and federal laws." *Id.* § 6(3)(a).

## STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate when, even if all facts pleaded by the non-moving party are taken as true, "the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citation omitted). A motion for judgment on the pleadings may not be based on evidence or allegations outside of the pleadings. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

## ARGUMENT

The Eleventh Amendment precludes a federal court from hearing a claim against a state unless Congress has abrogated Eleventh Amendment immunity or the state has waived that immunity. Here, the State, by and through DCBS, has not waived its immunity for Oracle's claim against it, and Congress has not validly abrogated the State's sovereign immunity and Eleventh Amendment immunity for claims arising under the Copyright Act. Further, the Oregon legislature did not waive DCBS's Eleventh Amendment immunity when it abolished Cover Oregon, transferred its liabilities to DCBS, and provided for substitution of DCBS for Cover Oregon in litigation. Oracle's copyright claim against DCBS should be dismissed because DCBS has Eleventh Amendment immunity.

I.     **The State, by and through DCBS, is entitled to dismissal of the single copyright claim against it because of its Eleventh Amendment immunity.**

A.     **DCBS has Eleventh Amendment Immunity.**

DCBS is a department of the State of Oregon, Or. Rev. Stat. § 705.105(1), and is entitled to Eleventh Amendment immunity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *Beentjes v. Placer Cnty. Air Pollution Control Dist.*, 254 F. Supp. 2d 1159, 1163 (E.D. Cal. 2003) ("For purposes of the Eleventh Amendment, state departments and agencies are treated as 'state governments' entitled to sovereign immunity.") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  This court has previously acknowledged DCBS's Eleventh Amendment immunity.  *See Voth v. America's Best Cmty. Fed. Credit Union*, Civ. No. 08-1052-MO, 2009 WL 1067059, at *2 (D. Or. Apr. 20, 2009).

B.     **States are immune from suit by private parties in federal court unless Congress abrogates immunity or the state expressly waives immunity.**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." It is established law that if Congress has not validly abrogated a state's Eleventh Amendment immunity, then "[t]he Eleventh Amendment bars suits against the state or its agencies for all types of relief, absent unequivocal consent by the state."  *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). "'That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given[.]'"  *Pennhurst* 465 U.S. at 98 (quoting *Ex parte State of New York No. 1*, 256 U.S. 490, 497 (1921)) (emphasis and footnote omitted).

### C.    Cover Oregon's lack of immunity does not affect DCBS.

A state may assert an Eleventh Amendment defense when it becomes the real, substantial party in interest in litigation in the place of an entity that lacked Eleventh Amendment protections.  Here, the Oregon legislature abolished Cover Oregon and made the State, by and through DCBS, liable for Cover Oregon's liabilities without waiving DCBS's Eleventh Amendment immunity.

That DCBS was substituted for a non-immune entity, Cover Oregon, in this litigation does not change the result.  A state may "prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it." *Beers v. Arkansas,* 61 U.S. (20 How.) 527, 529 (1857) (holding that state was immune from claim where state legislature amended sovereign immunity waiver statute while that claim was pending).  That right to withdraw consent to suit includes a right to assert Eleventh Amendment immunity when assuming liabilities from a non-immune entity that is already engaged in litigation.  Other circuit courts have reached that conclusion.  *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 50 (1st Cir. 2003) (granting dismissal based on Eleventh Amendment to state entity made successor to a non-immune entity after litigation commenced); *Surprenant v. Mass. Turnpike Auth.*, 768 F. Supp. 2d 312, 318 (D. Mass. 2011) (same (citing *Maysonet-Robles*)); *see also Kroll v. Bd. of Trustees of Univ. of Ill.*, 934 F.2d 904, 909 (7th Cir. 1991) (in action filed after transfer of obligations to arm of the state, rejecting plaintiff's argument that successor waived immunity via its status as successor and stating, "The Board is still the Board, regardless of its status as a successor entity, and in the absence of waiver or congressional abrogation must be accorded the respect due a state under the eleventh amendment.").  To defendants' knowledge, no court has held that a state waives its Eleventh Amendment immunity when it replaces an entity without immunity in litigation.  Oracle, in its opposition to Cover Oregon's motion for judgment on the pleadings based on this same argument, did not cite a single case that contradicts *Maysonet-Robles*, *Surprenant*, and *Kroll*.

In *Maysonet-Robles*, the plaintiffs filed suit against Puerto Rico's Urban Renewal and Housing Corporation Liquidation Office, a non-immune government entity charged with liquidating the proceeds of a dissolved public corporation.  323 F.3d at 48.  Later, in the midst of ongoing litigation, the Liquidation Office sought dismissal after it was itself legislatively dissolved and its assets were transferred to the Commonwealth's Department of Housing.  *Id.* The First Circuit held that the Department of Housing had a right to assert its Eleventh Amendment immunity regardless of its status as a successor to the Liquidation Office.  *Id.* at 50-53.  The court noted that the Department of Housing "is an arm of the State, regardless of its late arrival at the courthouse as a successor in interest, and it must be accorded the same respect due a State under the Eleventh Amendment."  *Id.* at 50.  "Unlike a private individual or corporation, a State retains its sovereign immunity as a 'personal privilege' and, whether it is the original defendant or is added as a party later, it cannot be sued involuntarily."  *Id.* (citing *Clark v. Barnard*, 108 U.S. 436, 447-48 (1883)).

The First Circuit refused to imply a waiver of that immunity by virtue of the transfer of liability; instead, it looked for (and did not find) an unequivocal statutory or constitutional waiver, or a waiver through litigation conduct by the State.  *Id.* at 50-51.  Although the relevant statute provided that the Department of Housing was to take over pending actions and assume "records, assets, and liabilities" from the Liquidation Office, it was silent on the question of waiver of immunities.  The court concluded that the statute did not contain an "unequivocal consent for such pending litigation to continue in federal court."  *Id.* at 51 (citation omitted).  The court affirmed the trial court's ruling that dismissed the complaint because of the Department's Eleventh Amendment immunity.  *Id.* at 55.

In *Surprenant*, the plaintiff brought a putative class action against the Massachusetts Turnpike Authority ("MTA") and the Massachusetts Port Authority asserting claims arising from the Dormant Commerce Clause.  768 F. Supp. 2d at 314-15.  After more than six months of litigation, the State of Massachusetts dissolved the MTA and transferred its functions, assets, and liabilities to the Massachusetts Department of Transportation ("MassDOT").  *Id.* at 315.  The court rejected the plaintiff's assertion that "in creating the MassDOT, the Legislature waived

Eleventh Amendment immunity with regard to all ongoing litigation against the MTA." *Id.* at 318.  In the absence of anything "in the statute or its wording that would prevent or bind the MassDOT from asserting any of its available defenses, [including] those that have the effect of terminating the lawsuit on jurisdictional grounds," the court held firm that a waiver of immunity was not to be implied. *Id.*  The court also noted, "[i]t may seem unfair that an immunity defense that was not available to the MTA can be bestowed on the MassDOT as its successor by legislative fiat.  But, as the First Circuit has made clear, the Eleventh Amendment enjoys a unique jurisdictional status."  *Id.* (citing *Maysonet-Robles*).

The rule that a state can assert its Eleventh Amendment immunity when substituted for a non-immune entity is supported by analogous cases concerning federal and Native American sovereign immunity.  Courts have held that immunity is not waived in cases where the federal government and Native American tribes assumed liability from non-immune entities. *Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Comm'n*, 453 F.3d 1309, 1315 (11th Cir. 2006) (absent clear statutory language, transfer of liabilities to federal agency from defunct entity whose sovereign immunity had been waived does not also transfer prior waiver of immunity; concluding that federal agency maintains its immunity); *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 686-87 (8th Cir. 2011) (same, regarding tribal sovereign immunity, holding "that the general assumption of ARMC's obligations and liabilities in Amerind's federal charter does not constitute an express waiver of Amerind's sovereign immunity[.]").

In *ASEDAC*, the plaintiffs brought claims against a public corporation and a "transition administration" that was responsible for winding up the affairs of the public corporation.  453 F.3d at 1311.  Both defendants were federal government entities whose immunity had been waived. *Id.* at 1311 & 1315.  While the action was pending, Congress dissolved the defendants and transferred their assets and obligations to the U.S. General Services Administration. *Id.* at 1312.  Although GSA was liable for the dissolved entities' obligations, the court concluded that without an express waiver of immunity for GSA the plaintiffs could not maintain an action against GSA.  "[A] transfer of liability for a claim from one government entity to another does not necessarily mean the transferee entity is amenable to suit.  In other words, even if the GSA is

now obligated to pay the employment benefits Appellants seek, it does not mean the GSA can be held to answer the claim in a district court; there must also be an express waiver of the GSA's sovereign immunity." *Id.* at 1315.  After quoting extensively from Supreme Court precedent that no suit can be maintained against the government without a waiver of immunity, the Eleventh Circuit stated, "we reject the notion that the [legislative] transfer of the PCC's liabilities to the GSA automatically carried with it the PCC's waiver of immunity, absent unequivocal statutory language to that effect." *Id.* at 1316.

The relevant facts in this case are indistinguishable from those in *Maysonet-Robles*, *ASEDAC*, and *Surprenant*.  The principles from those cases, which are based on U.S. Supreme Court holdings applying the Eleventh Amendment and sovereign immunity, apply here.  As those cases make clear, the inquiry for this Court is whether the Oregon legislature expressed an unequivocal intent to waive DCBS's Eleventh Amendment immunity with respect to the liabilities transferred from Cover Oregon.  In those cases, the courts concluded that legislative silence meant that there was no waiver.  Here, the Oregon legislature was not silent.  Instead, the Oregon legislature expressly provided by statute that: "[t]he rights, obligations and liabilities transferred to the department . . . [a]re subject to the limitations, defenses and immunities of the department that arise under . . . the Eleventh Amendment to the United States Constitution . . . [.]"  Senate Bill 1, § 6(3)(a).  Section 6(3)(a) far surpasses the legislation in *Maysonet-Robles*, *ASEDAC*, and *Surprenant* in eliminating any doubt on this point.  Given Senate Bill 1's text reserving Eleventh Amendment immunity, Senate Bill 1's provisions allowing for DCBS to be substituted into pending litigation and transferring Cover Oregon's obligations to DCBS do not amount to an unequivocal waiver of immunity sufficient to satisfy the Supreme Court's strict standards.  *See College Savs. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676, 682 (1999) (waiver of Eleventh Amendment immunity must be "unequivocally expressed" and courts must "indulge every reasonable presumption against waiver of fundamental constitutional rights.").

## II.    The State has not waived its Eleventh Amendment immunity for the copyright infringement claim against DCBS.

### A.    Oracle fails to allege that its copyright claim against DCBS relates to the OHA OLSA and the Mythics Agreement.

Oracle fails to allege that its claim against Cover Oregon (now, DCBS) relates to the Oracle License and Services Agreement entered into by Oracle, OHA and DHS (the "OHA OLSA"), and the Mythics License and Services Agreement (the "Mythics Agreement").[3] Oracle alleges copyright claims against Cover Oregon and against OHA/DHS in separate allegations.  (*Compare* SAC ¶¶ 71-73 (allegations against Cover Oregon) *with* SAC ¶ 74 (allegation against OHA and DHS).)  Oracle alleges that its claim against Cover Oregon relates to the Cover Oregon OLSA (with no mention of the OHA OLSA and the Mythics Agreement):

> 71.    An express condition precedent to any license to Cover Oregon under the *Cover Oregon OLSA* was that it was required to pay for all services rendered under the OLSA.  Cover Oregon has not satisfied that express condition precedent, because Cover Oregon has not paid for all of the services rendered under the *Cover Oregon OLSA.* Accordingly, Cover Oregon has no license at all to the Copyright Assets and is not authorized to reproduce, prepare derivative works of, distribute, or publicly display those works, or to authorize others to do so.

(*Id.* ¶ 71 (emphases added); *see also id.* ¶ 66 (same).)

In opposition to Cover Oregon's Rule 12(c) motion to dismiss the copyright claim, Oracle contended that the State waived its Eleventh Amendment immunity in the Mythics Agreement and in the OHA OLSA.  (Oracle's Corrected Opp'n at 13, Dkt. 127 ("Opp'n").)  Oracle argued that the alleged Eleventh Amendment immunity waiver in the Mythics Agreement and the OHA OLSA applies to Cover Oregon actions that Oracle alleges violate the Copyright Act.  *Id.*  Assuming that there is a waiver in the Mythics Agreement and the OHA OLSA, any such waiver of immunity must be narrowly construed.  *Sossamon v. Texas*, 131 S. Ct. 1651, 1662 (2011) ("A waiver of sovereign immunity must be 'strictly construed, in terms of its scope, in

---

[3] For the sake of addressing the argument that Oracle made in its opposition to Cover Oregon's Rule 12(c) motion, which Oracle may make in opposition to this motion, DCBS assumes without admitting that there is an Eleventh Amendment waiver in the OHA OLSA or the Mythics Agreement or both.  DCBS agrees with and adopts OHA's and DHS's position that neither of those agreements waive immunity.

favor of the sovereign.'" (citation omitted).  And DCBS has Eleventh Amendment immunity

from the claim Oracle asserts against it in paragraphs 71 through 73 because those allegations do

not relate to the Mythics Agreement and the OHA OLSA.

> **1.    Consistent with this Court's January 13 opinion, the copyright claim against Cover Oregon does not arise from the OHA OLSA.**

In its Corrected First Amended Complaint, Oracle alleged copyright claims against both

Cover Oregon and the State, by and through OHA and DHS.  (Dkt. 33 ¶¶ 43-50, the "CFAC.")

In granting defendants' motion to dismiss the copyright claim against OHA and DHS, this Court

concluded that "Oracle has not established on this record that its claim against the State for

copyright infringement as alleged falls within the scope of the OHA OLSA contractual

provision."  (Dkt. 75, 1/13/15 Op. & Order at 11.)  The Court allowed Oracle to re-plead to

allege a copyright claim against OHA and DHS under the OHA OLSA.  (*Id.*)  None of the

changes between the Corrected First Amended Complaint and the Second Amended Complaint

changed the copyright claim against DCBS to include a relation to the OHA OLSA and the

Mythics Agreement.

Oracle's copyright claim against DCBS begins at paragraph 43 of the Corrected First

Amended Complaint and paragraph 69 of the Second Amended Complaint.  While there is some

modification in the allegation against OHA and DHS (*compare* CFAC ¶ 48 *with* SAC ¶ 74),

there is no substantive difference in the allegations concerning DCBS's alleged copyright

infringement.  (*Compare* CFAC ¶¶ 45-47 *with* SAC ¶¶ 71-73.)  The general allegations

concerning DCBS's alleged infringement did not substantively change.  (*Compare* CFAC ¶ 42

*with* SAC ¶ 67.)

In its opposition to Cover Oregon's Rule 12(c) motion, Oracle relied upon the allegations

that the definition of "Copyright Assets" now includes "software code" that Oracle developed

under all three LSAs, including the OHA OLSA and the Mythics Agreement.  (Opp'n at 14,

citing SAC ¶ 56, 69-76.)  Those allegations changed from the Corrected First Amended

Complaint, where Oracle alleged that its submission to the Copyright Office included material

developed only under the Cover Oregon OLSA.  (CFAC ¶ 33 and ¶ 68.)  From its allegation that

the Copyright Assets include code developed under the OHA OLSA and the Mythics Agreement, Oracle leaps to the unsupported contention that "the scope of the [Mythics Agreement] and the [OHA OLSA] and the software code that Oracle delivered under those agreements will be important to evaluate the scope of Oracle's copyright claim here, which alleges that Cover Oregon is using copyrighted code for which neither Cover Oregon nor the state has paid.  [SAC] ¶¶ 71, 74." (Opp'n at 14.)  That is an incorrect statement of copyright law:  the scope of a copyright claim is determined by the material that is registered with the Copyright Office, not by the scope of a contract.  17 U.S.C. §§ 411(a) & 501(a) & (b) (copyright infringement action based on copyright registration and ownership of the copyright); (*also* Oracle Opp'n to Joint Mot. Dismiss at 9, Dkt. 51 (copyright infringement claim not based on contract).)

Also, Oracle admitted that its claim against Cover Oregon does not relate to the OHA OLSA and the Mythics Agreement when Oracle stated that its "copyright claim here . . . alleges that Cover Oregon is using copyrighted code for which neither Cover Oregon nor the state has paid" (Opp'n at 14).  Oracle did not allege any failure of payment related to the OHA OLSA and the Mythics Agreement; Oracle alleges that there was a failure of payment only in relation to the Cover Oregon OLSA and that Cover Oregon exceeded the scope of the Cover Oregon OLSA even for the work that Cover Oregon paid for.  (*E.g.* SAC ¶ 66 "Because Cover Oregon has not paid for the services rendered to it under the Cover Oregon OLSA, it does not have a license".)  The copyright claim against DCBS, as Oracle alleges, concerns only code not paid for, and the only code not paid for (according to the allegations) was code developed under the Cover Oregon OLSA.

> **2.    The case law refutes Oracle's "related to" contention because an interpretation of the OHA OLSA and the Mythics Agreement is not required to resolve the copyright claim against DCBS.**

The OHA OLSA and the Mythics Agreement do not relate to the claim against DCBS because the resolution of the copyright claim against DCBS does not require the Court to interpret those agreements.

Two cases Oracle cites concerning venue and forum selection clauses apply a rule that those clauses apply to copyright claims only if the court would need to interpret the contract to decide the copyright claim. In *Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427 (N.D. Cal. 1997), the court considered whether the forum selection clause in a contract applied to a copyright infringement claim. *Id.* at 1431. The court relied upon the Ninth Circuit's rule that a forum selection clause will apply to a tort claim "where resolution of the tort claim relates to interpretation of the contract." *Id.* at 1432 (citing *Manetti–Farrow, Inc. v. Gucci America*, 858 F.2d 509, 514 (9th Cir.1988)). Resolution of the copyright claim required interpretation of multiple terms of the contract and, therefore, the forum selection clause applied. 949 F. Supp. at 1433-34. The same rule applied and result occurred in *Bagdasarian Productions, LLC v. Twentieth Century Fox Film Corp.*, No. 2:10-CV-02991-JHN-JCGx, 2010 WL 5154136, at *3 (C.D. Cal. Aug. 12, 2010) ("a [tort] claim arises out of a contract when it is necessary to interpret the contract to resolve the dispute"). The court in *Bagdasarian Productions* concluded that a forum selection clause applied because "resolution of each of Plaintiff's claims [for copyright and quantum meruit] requires interpretation of the Agreement." *Id.*

Here the copyright claim against DCBS does not require interpretation of the OHA OLSA and the Mythics Agreement. (SAC ¶¶ 71-73, copyright claim against DCBS based on Cover Oregon's acts and the lack of a license under the Cover Oregon OLSA.) Under Oracle's allegations, its copyright claim against DCBS hinges on whether Cover Oregon (now DCBS) has a license under *the Cover Oregon OLSA*. (SAC ¶¶ 67 & 71 (both alleging copyright infringement because Cover Oregon lacked a license under the Cover Oregon OLSA).) Oracle's copyright infringement claim against DCBS does not require interpretation of the OHA OLSA and the Mythics Agreement. Therefore, under *Graham Technology Solutions*, and *Bagdasarian Productions*, the claim against DCBS does not relate to the OHA OLSA and the Mythics Agreement.

**Page 12 - OREGON DEPARTMENT OF CONSUMER AND BUSINESS SERVICES'
MOTION FOR JUDGMENT ON THE PLEADINGS**

B.    **There is no waiver of immunity in the Cover Oregon OLSA because Cover Oregon had no immunity to waive and because parties cannot agree to federal subject matter jurisdiction by contract.**

Cover Oregon was not an arm-of-the-state entitled to Eleventh Amendment immunity when it signed the Cover Oregon OLSA in 2013.  Oracle agrees.  (*See, e.g.* Compl. ¶ 3 (asserting federal jurisdiction under diversity statute, which is unavailable for claims against a state) Dkt. 1.)  Cover Oregon had no immunity to waive and, hence, the venue clause of the Cover Oregon OLSA, section O.1, was not a waiver of immunity.[4]  That venue clause does not transform into a waiver of the State's Eleventh Amendment immunity simply because Senate Bill 1 provides that Cover Oregon's rights, obligations and liabilities are transferred to DCBS.

Oracle fundamentally mischaracterized the venue clause in the Cover Oregon OLSA when it described the venue clause as an "agree[ment] to submit to federal jurisdiction."  (Opp'n at 21.)  To the extent Oracle means "*subject-matter* jurisdiction," it is wrong; parties cannot agree to submit to federal subject-matter jurisdiction.  That is a fundamental rule not subject to doubt.  *E.g. Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("no action of the parties can confer subject-matter jurisdiction upon a federal court.  Thus, the consent of the parties is irrelevant[.]").

Instead, the venue clause provides that if there is federal court subject matter jurisdiction (a question unrelated to a venue clause), then the parties will litigate that federal action in the District of Oregon.  For example, when Oracle sued Cover Oregon in the original complaint for only state-law claims, Oracle had to allege facts to establish federal subject matter jurisdiction under the diversity statute to establish jurisdiction (Compl. ¶ 3, Dkt. 1) and, separately, Oracle alleged the venue clause to establish venue in the District of Oregon.  (*Id.* ¶ 4.)

The venue clause is still just a venue clause.  Senate Bill 1's transfer of the rights, obligations and liabilities from Cover Oregon to DCBS did not change the venue clause in the Cover Oregon OLSA into a waiver of immunity.  Because parties cannot create federal

_____

[4] The Cover Oregon OLSA is attached as Exhibit B to the Second Amended Complaint, and Section O.1 is on page 5.  (Dkt. 77-2.)

**Page 13 - OREGON DEPARTMENT OF CONSUMER AND BUSINESS SERVICES' MOTION FOR JUDGMENT ON THE PLEADINGS**

jurisdiction by consent, the venue clause never was, and still is not, an agreement to submit to federal jurisdiction.  The venue clause provides only where the case will be heard if the plaintiff brings a claim that meets all the statutory and constitutional requirements for jurisdiction in federal court.  Here, those requirements are not met.  There is no waiver of Eleventh Amendment immunity in either the Cover Oregon OLSA or Senate Bill 1.  DCBS, the real party in interest for the copyright claims against Cover Oregon, is entitled to dismissal of the copyright claim based on Eleventh Amendment immunity.

**C.**      **The State did not waive immunity by litigation conduct because it did not invoke this Court's jurisdiction.**

Senate Bill 1 expressly retains DCBS's right to assert an Eleventh Amendment defense, and the State can only be forced to litigate in federal court if it waives that right through litigation conduct.  *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 620 (2002) (state can waive Eleventh Amendment immunity via certain litigation conduct). Prior to the enactment of Senate Bill 1, the State, by and through OHA and DHS, and Cover Oregon, DCBS's predecessor, unwaveringly asserted the State's Eleventh Amendment immunity in this case.  (*See*, *e.g.*, Answer by Cover Oregon ("Answer") ¶ 105, Dkt. 90; State of Oregon's Mot. to Dismiss, Dkt. 39).)  The State, by and through DCBS, has done nothing in this action except file this motion.  Although Cover Oregon filed an Answer as required by this Court, it did not file counterclaims or take any other action to invoke this Court's jurisdiction, and it asserted DCBS's immunity in anticipation of Senate Bill 1.  (Answer ¶ 105); *see also Maysonet-Robles*, 323 F.3d at 53 (noting Liquidation Office's avoidance of "steps akin to filing a counterclaim or third party complaint"); *cf. Amerind*, 633 F.3d at 686 (successor entity's failure to raise immunity defense before district court did not waive immunity defense, which can be raised for first time on appeal).  Further, regardless of what it did before substitution, Cover Oregon, which is not an arm of the State, has no authority to waive the State's immunities.  The State has not engaged in any litigation conduct that would waive its Eleventh Amendment immunity to suit in federal court.

**III.    DCBS's assertion of Eleventh Amendment immunity does not violate the state or federal constitutions.**

   **A.    Having relied upon Senate Bill 1 to move to substitute DCBS for Cover Oregon, Oracle is judicially estopped from contending that Senate Bill 1 is unconstitutional.**

The rule of "judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks and citation omitted). Here, Oracle invoked Senate Bill 1 to substitute DCBS for Cover Oregon. (Dkt. 128, Oracle's Corrected Unopposed Motion at 2-3 & 7, relying upon Senate Bill 1 to substitute DCBS for Cover Oregon.) Because Oracle's request for substitution was premised on the validity and constitutionality of Senate Bill 1, the doctrine of judicial estoppel precludes Oracle from now contending that Senate Bill 1 is unconstitutional.

The Supreme Court in *New Hampshire* enumerated three non-exclusive factors for courts to consider when deciding whether judicial estoppel applies.

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750-51 (internal quotation marks and citations omitted).

Here, all three of those factors point toward applying judicial estoppel. First, Oracle's reliance upon Senate Bill 1 in its motion to substitute is clearly inconsistent with an argument that Senate Bill 1 is unconstitutional. Second, arguing now that Senate Bill 1 is unconstitutional creates the perception that Oracle misled the Court concerning the constitutionality of Senate Bill 1 when Oracle earlier asked the Court to rely on Senate Bill 1 to grant Oracle's motion for substitution. Third, Oracle achieved an unfair advantage in substituting DCBS, a solvent agency backed by the Oregon state treasury, for Cover Oregon, a financially distressed public

corporation that, without Senate Bill 1, has no ability to rely upon the State treasury to pay any judgment that Oracle obtains.

Oracle cannot have it both ways. If Senate Bill 1 is unconstitutional, then Cover Oregon is not abolished and DCBS is not substituted and Oracle must pursue its claim against Cover Oregon. If Senate Bill 1 is constitutional (which it is), then DCBS is substituted for Cover Oregon, and DCBS is an agency of the State with Eleventh Amendment immunity.

Oracle may contend that only Section 6(3) of Senate Bill 1 is unconstitutional. That subsection provides in part that "Notwithstanding sections 1 to 5 of this 2015 Act, the rights, obligations and liabilities transferred to the department: (a) Are subject to the limitations, defenses and immunities of the department that arise under ORS 30.260 to 30.300, the Eleventh Amendment to the United States Constitution and other state and federal laws[.]" Senate Bill 1 § 6(3). Oracle would be wrong because DCBS has Eleventh Amendment immunity regardless of Section 6(3). Even if Section 6(3) was removed from Senate Bill 1, DCBS has Eleventh Amendment immunity because Senate Bill 1 has no waiver of immunity. As the First Circuit concluded, if the statute is silent concerning waiver, then there is no waiver of immunity. *Maysonet-Robles*, 323 F.3d at 50-51. The court examined Supreme Court precedent and concluded that "*College Sav. Bank* commands that such waivers [of Eleventh Amendment immunity] must be unequivocal. In the case of waiver through a state statute or constitutional provision, the State must express in unmistakably clear language, allowing for no other reasonable construction, that it intends to submit itself to the jurisdiction of the federal courts (*id.* at 678, 119 S.Ct. 2219)." *Id.*

The First Circuit's conclusions are based on unambiguous precedent. The Supreme Court's test for whether a state has waived immunity is "a stringent one." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985). A waiver of sovereign immunity must be "unequivocally expressed." *College Savs. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (citation omitted). "The Court will give effect to a State's waiver of Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any

other reasonable construction." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990) (internal quotation marks and citations omitted; alteration in *Feeney*). "[I]n order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal* court." *Id.* at 306 (internal quotation marks and citations omitted; emphasis in *Feeney*).

Here, even without Section 6(3), Senate Bill 1 does not waive DCBS's Eleventh Amendment immunity. The Oregon legislature did not include any waiver nor did it specify an intention to subject the State to suit in federal court.

Thus, for Oracle to prevail on an argument that Senate Bill 1 is unconstitutional, it must argue that Sections 2 and 5, which provide that Cover Oregon is abolished and that DCBS substitutes for Cover Oregon in all litigation, are unconstitutional. It is the Eleventh Amendment and the entirety of Senate Bill 1 that allow DCBS to assert Eleventh Amendment immunity in this action, not merely § 6(3). And judicial estoppel prevents Oracle from contending that Senate Bill 1 is unconstitutional because Oracle prevailed on the Court to allow substitution based on Senate Bill 1.

### B. DCBS's assertion of Eleventh Amendment immunity does not violate the state and federal Contracts Clauses.

A statute does not run afoul of the federal Contracts Clause[5] unless a challenger can show that the statute "substantially impair[s] some contractual obligation" and "that legitimate governmental interests do not justify the impairment." *Northwestern Nat'l Life Ins. Co. v. Tahoe Reg'l Planning Agency*, 632 F.2d 104, 106 (9th Cir. 1980) (citing *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978) and *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17 (1977)). Here, Oracle cannot clear either of those hurdles.

---

[5] Oregon courts "have interpreted the state Contract Clause as being consistent with the United States Supreme Court's interpretation of the federal Contract Clause in 1857." *Moro v. State*, 357 Or. 167, 192 (2015). "The prohibitions against impairing the obligation of contracts in both the state and federal constitutions are not absolute." *Kilpatrick v. Snow Mountain Pine Co.*, 105 Or. App. 240, 243 (1991) (citing *Evans v. Finley*, 166 Or. 227, 237 (1941)).

1.    **Senate Bill 1 does not substantially impair Oracle's contracts.**

Oracle's argument that one particular provision of Senate Bill 1, § 6(3)(a),[6] substantially impairs its contracts is wrong for several reasons. According to Oracle, § 6(3)(a) impairs its contracts because it "assert[s] Eleventh Amendment immunity with regard to the Cover Oregon OLSA[.]" (Opp'n at 23.)

First, as argued above, *supra* § III.A, § 6(3)(a) does not "assert" Eleventh Amendment immunity. The State's immunity from suit in federal court springs from the Eleventh Amendment itself, not from § 6(3) of Senate Bill 1. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (The Eleventh Amendment "is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity."). Section 6(3)(a) merely recognizes the immunity DCBS already enjoys and expresses the Oregon Legislature's intent not to waive that protection. Even if Senate Bill 1 did not contain § 6(3)(a), DCBS would, nonetheless, be immune from suit in federal court under the Eleventh Amendment. It is not § 6(3) of Senate Bill 1 that prevents Oracle from asserting a copyright claim against DCBS in federal court, it is the Eleventh Amendment. *See Williamson Towing Co. v. Illinois*, 534 F.2d 758, 760 (7th Cir. 1976) ("[I]t is not the Illinois Court of Claims Act that precludes Williamson from asserting its admiralty claim against the state but the doctrine of sovereign immunity embodied in the Eleventh Amendment.").

Second, Oracle has an adequate forum in state court to recover its alleged damages. The "second component of the substantial impairment test turns on whether the State has used its law-making powers not merely to breach its contractual obligations, but to create a defense to the breach that prevents the recovery of damages." *University of Haw. Prof'l Assembly v. Cayetano*, 183 F3d 1096, 1102 (9th Cir 1999). Section 6(2) of Senate Bill 1 transferred Cover Oregon's liabilities to DCBS. Oracle has a remedy against DCBS in Oregon state court for the damages it alleges that it is owed. Oracle has exercised this remedy: On May 4, 2015, it filed three

---

[6]  That section provides that "the rights, obligations and liabilities transferred to [DCBS]: (a) Are subject to the limitations, defenses and immunities of the department that arise under . . . the Eleventh Amendment to the United States Constitution[.]"

counterclaims against Cover Oregon in *Rosenblum et al. v. Oracle America, Inc. et al. (*Marion County Circuit Court Case number 14C20043) the action this Court twice remanded.  When the state court enters an order substituting DCBS for Cover Oregon in that action, those counterclaims will lie against DCBS.[7]  A state may modify the remedies available to a party without offending the contract clause.  *See U.S. Trust Co.*, 431 U.S. at 19 n.17 (citations omitted) ("remedies may be modified without necessarily violating the Contract Clause").

Though Oracle cannot assert its copyright claim in *Rosenblum*, Oracle is not without a remedy.  In its copyright claim, Oracle seeks the same damages, based on the same allegations, it seeks in its three state-court counterclaims.  Oracle states its copyright claim "is worth at least $23 million dollars."  (Opp'n at 24.)  That is the same amount that Oracle claims in its state-law counterclaim for *quantum meruit*.  (SAC ¶ 98 (seeking damages for services with alleged value of "at least $23 million").)  The three state-law claims alleged in the Second Amended Complaint, including the *quantum meruit* claim, "are now pending as counterclaims in *Rosenblum, et al. v. Oracle, et al*[.]"  (Oracle's Unopposed Mot. Dismiss State Law Claims, Dkt. 132.)  Furthermore, the copyright claim and the state-law claims arise from the same factual allegations.  (*See* SAC, ¶¶ 69, 77, 83, & 91 (all four claims incorporate the same general allegations).)  Senate Bill 1 does not impair Oracle's contracts because it does not prevent Oracle from recovering damages for the conduct it alleges creates liability.  Even if there is some impairment, that impairment is not substantial because Oracle seeks no more in damages in its copyright claim than it seeks in its state-court counterclaims.

Third, to the extent that Oracle asserts it had a contract right with Cover Oregon to bring claims in federal court, that assertion is wrong.  Contrary to Oracle's description of the Cover Oregon OLSA, the venue clause in that contract was not an "agree[ment] to submit to federal jurisdiction."  (Opp'n at 21.)  *See*, *supra*, Argument § II.B.  There was no impairment of a right to federal court jurisdiction because a contract cannot create federal court jurisdiction.

---

[7] On June 9, 2015, Marion County Circuit Court Judge Courtland Geyer granted the State's motion to substitute DCBS for Cover Oregon in that case, but the written order has not yet entered.

**Page 19 - OREGON DEPARTMENT OF CONSUMER AND BUSINESS SERVICES'
MOTION FOR JUDGMENT ON THE PLEADINGS**

2.    **Senate Bill 1 is justified by significant and legitimate public purposes.**

Even if Senate Bill 1 substantially impairs Oracle's contracts, it is justified by significant and legitimate public purposes.  "States may substantially impair their contractual obligations when the impairment is 'reasonable and necessary to serve an important public purpose.'"  *State of Nev. Employees Ass'n, Inc. v. Keating*, 903 F.2d 1223, 1228 (9th Cir. 1990) (citation omitted).  "To determine reasonableness, we look at the extent of the impairment as well as the public purpose to be served."  *Univ. of Haw. Prof'l Assembly*, 183 F.3d at 1107.

The Oregon legislature enacted Senate Bill 1 for reasonable public purposes:  To reestablish direct legislative oversight of the state's health insurance programs, to provide accountability to the legislature, to provide transparency to the legislature, and to guarantee the financial solvency of those programs.  Senator Monnes Anderson stated two of the purposes of the bill, accountability and transparency to the legislature: "by reassigning the exchange to a state agency we reestablish, and increase direct legislative oversight of, exchange functions through reporting, required by the bill and through the agency budget process.  In an effort to ensure accountability and maintain transparency, Senate Bill 1 requires that the Department of Consumer and Business Services director make periodic and event-based reports to the legislative assembly, Oregon Health Authority, Oregon Health Policy Board, and the governor about progress and financial matters."  Senate Debate on S.B.1 (Hall Decl. ¶ 8).  Senator Boquist provided another reason, better oversight: Senate Bill 1 "sends [the health insurance exchange] to DCBS, and it has an oversight board that is successful, with teeth, unlike the problem we had in the past."  (*Id.* (Hall Decl. ¶ 10).)  Representative Greenlick stated, "The thing this [bill] makes very clear is we know who to hold responsible.  It's the director of DCBS and he's very happy to say the buck will stop at his desk and he'll be there for us."  House Debate on S.B.1 (Hall Decl. ¶ 6).

In addition to transparency, oversight and accountability, Senate Bill 1 rescued the health insurance exchange, and its creditors, from financial problems.  As a result of Oracle's failures, Cover Oregon was unable to earn the millions of dollars in carrier assessment fees that it had counted on to achieve financial self-sufficiency by 2015.  (Dkt. 123-1, Oracle's Req. for Judicial

Notice, Ex. A, ¶ 176.)  Indeed, Cover Oregon is expected to have less than $9 million by June 30, 2015.  (Dkt. 123-9, Oracle's Req. for Judicial Notice, Ex. I at 3.)  During the floor debate on Senate Bill 1, State Representative Kennemer explained that "Cover Oregon was not able to achieve financial self-sufficiency because technology failures drained our resources.  S[enate] B[ill] 1 allows the State to maintain and guarantee the continuation of Cover Oregon's core functions by bringing these functions into DCBS and OHA."  House Debate on S.B.1 (Hall Decl. ¶ 4.)  He also stated, "And Senate Bill 1 transfers assets and liabilities to DCBS providing assurance to Cover Oregon's vendors that they will be compensated, eliminating the risk associated with Cover Oregon's financial uncertainty."  (*Id.*)

Accountability to the legislature, greater transparency, and financial stability, which are just three of the reasons put forth by legislators, are legitimate and important public purposes.  "Achievement of public accountability is certainly a legitimate public purpose."  *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Washington,* 696 F.2d 692, 701 (9th Cir. 1983).

### 3.    The Court's holding in *Beers* shows that Senate Bill 1 is constitutional.

In *Beers v. Arkansas*, 61 U.S. (20 How.) 527 (1857), the Supreme Court held that a state "may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it."  *Id.* at 529.  Before the action was filed in *Beers*, the Arkansas legislature passed an act allowing the state to be sued in its own courts.  The plaintiff sued Arkansas on bonds issued by the state.  *Id.* at 528.  While the lawsuit was pending, the Arkansas legislature passed another act (the "1855 Act") providing that parties suing the state on bonds must deposit the bonds with the court during the pendency of the suit.  *Id.*  If a party failed to deposit the bonds, the court could dismiss the suit.  *Id.* at 529.  The plaintiff refused to deposit the bonds and the court dismissed the suit.  *Id.*

Before the Supreme Court, the plaintiff argued that the 1855 Act "impaired the obligations of the contracts [*i.e.*, the bonds] between the State and the plaintiff[.]"  *Id.* at 529.  The Supreme Court disagreed.  It held that the 1855 Act was "an act to regulate the proceedings and limit the jurisdiction of its own courts in suits where the State is a party defendant, and

nothing more." *Id.* The earlier law providing that the state could be sued in its own courts "was not a contract. It was an ordinary act of legislation, prescribing the conditions upon which the State consented to waive the privilege of sovereignty." *Id.* According to the Supreme Court, Arkansas "might have repealed the prior law altogether, and put an end to the jurisdiction of their courts in suits against the State, if they had thought proper to do so[.]" *Id.* at 530. *Beers* holds that a state may "alter the conditions of its waiver and apply those changes to a pending suit." *College Savs. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (citing *Beers*).

According to Oracle in its opposition to Cover Oregon's earlier Rule 12(c) motion, *Beers* holds that a state may alter the conditions of its waiver only "absent any contractual commitment to the contrary." (Opp'n at 28 (citation omitted).) Oracle contends that the Cover Oregon OLSA is a contractual commitment to the contrary. Oracle is wrong for two reasons. First, the venue clause of the Cover Oregon OLSA is not an agreement to submit to federal subject-matter jurisdiction. *Supra*, §§ II.B. & III.B.1. Second, in the venue clause DCBS never contractually agreed with Oracle to waive its Eleventh Amendment immunity, and DCBS is not stepping into the shoes of a party that did.

Senate Bill 1 reaffirms the State's inherent defenses and immunities. Whether DCBS asserts or waives its immunities or defenses determines the terms and conditions upon which the State consents to be sued, and *Beers* holds a state "may prescribe the terms and conditions on which it consents to be sued." *Id.* at 529. Senate Bill 1 does no more than what the Court in *Beers* allows.

### C. Senate Bill 1 does not violate the Due Process Clause because it is rationally related to legitimate public purposes.

Senate Bill 1 does not deprive Oracle of property in violation of the Due Process Clause. "In evaluating a substantive due process claim . . . , we have determined that state action which 'neither utilizes a suspect classification nor draws distinctions among individuals that implicate fundamental rights' will violate substantive due process only if the action is 'not rationally related to a legitimate governmental purpose.'" *Matsuda v. City & Cnty. of Honolulu*, 512 F.3d

1148, 1156 (9th Cir. 2008) (quoting *States v. Salerno*, 481 U.S. 739, 746 (1987)).  "The burden

this places on the plaintiff is extremely high."  *Id.* (quotation marks and citation omitted).  Oracle

admits that it has a high burden.  (Opp'n at 30-31, Oracle must show that Senate Bill 1 was

"'clearly arbitrary and unreasonable.'" (citation omitted).)  Indeed, a "law must be upheld under

rational basis review 'if any state of facts reasonably may be conceived to justify' the

classifications imposed by the law."  *SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471,

481 (9th Cir. 2014) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)).  Those

"attacking the rationality of the legislative classification have the burden to negative every

conceivable basis which might support it[.]"  *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315

(1993) (quotation marks and citation omitted).

  Oracle cannot meet its high burden.  Because Senate Bill 1 does not draw distinctions

among individuals that implicate fundamental rights, the State need only demonstrate that Senate

Bill 1 is rationally related to a legitimate public purpose to establish that the legislation does not

violate the Due Process Clause.  Senator Monnes Anderson's testimony during the Senate floor

debate demonstrates such a purpose.  She testified that the Bill was needed to "reestablish, and

increase direct legislative oversight of" Oregon's efforts to implement the Affordable Care Act.

Senate Debate on S.B. 1 (Hall Decl. ¶ 8.).  She also explained that the Bill "insure[s] that all

exchange operations are consistent with state laws and restrictions on purchasing, contracting,

compensation, personnel, and IT acquisition. . . ."  (*Id.*)  Representative Greenlick explained that

Senate Bill 1 provided (1) financial stability so that vendors would be paid, (2) audits for

transparency, and (3) accountability to the legislature.  House Debate on S.B. 1 (Hall Decl. ¶ 3.).

These are legitimate public purposes.  *See Continental Ill. Nat'l Bank & Trust Co. of Chicago*,

696 F.2d at 701 ("Achievement of public accountability is certainly a legitimate public

purpose.").

  Oracle previously contended that the "Oregon legislature passed Senate Bill 1 . . . not to

benefit the public, but to deprive Oracle of its rights and to gain a litigation advantage."  (Opp'n

at 31.)  That contention does not square with Senator Monnes Anderson's, Representative

Greenlick's, and Representative Kennemer's legislative testimony.  Even if Oracle were correct

**Page 23 - OREGON DEPARTMENT OF CONSUMER AND BUSINESS SERVICES'
MOTION FOR JUDGMENT ON THE PLEADINGS**

that the Oregon legislature passed Senate Bill 1 in part to "deprive Oracle of its rights," the fact

that it also passed the Bill to increase public accountability is sufficient to meet rational basis

review.  "Under the rational basis standard of review, it is not our place to second-guess

Congress' motivations. . . .  A single rational factor will sustain the statute." *Besinga v. United*

*States*, 14 F.3d 1356, 1362 (9th Cir. 1994).  In addition, Oracle fails "to negative," *Beach*

*Communications*, 508 U.S. at 315, the reasons for Senate Bill 1 offered by Senator Monnes

Anderson, Representative Kennemer, and numerous others.

> **D.**      **Senate Bill 1 is not an unconstitutional taking of Oracle's property.**

Oracle's Takings Clause assertions in its opposition to Cover Oregon's Rule 12(c) motion

fail for at least two reasons.  First, the Takings Clause challenge is not ripe because Oracle has

not affirmatively established a taking "without just compensation."  U.S. Const. amend. V.

Second, even if the claim were ripe, Senate Bill 1 is not unconstitutional because, in the words of

the Court, the taking does not go "too far" in reducing the value of Oracle's intellectual property.

*See Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922*).  See also Lucas v. South*

*Carolina Coastal Council*, 505 U.S. 1003, 1014-16 (1992) (although regulation that deprives a

property owner of *all* beneficial use of his property requires compensation, regulations that

deprive an owner of less than all beneficial uses may not require compensation).

> **1.**      **Oracle's Takings Clause claim is not ripe because Oracle cannot**
> **establish that it has been denied just compensation.**

The Court need not address the merits of Oracle's Takings Claim argument because it is

not ripe.  Oracle cannot affirmatively establish that there has been a taking of its purported

property rights "without just compensation."  U.S. Const. amend. V.  "In a takings claim, the

plaintiff must affirmatively establish that it has been denied just compensation.  This is essential

because the Takings Clause itself prohibits only takings without just compensation." *North*

*Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 485 (9th Cir. 2008) (citing *Williamson County*

*Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 & 195 (1985)).

Before Oracle can bring a Takings Claim, it must affirmatively establish that it will not receive just compensation, and to do that it must follow state-law procedures.  For the claim to be ripe, Oracle "'must have pursued compensation through state remedies unless doing so would be futile.'"  *Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1052 (9th Cir. 2004) (citation omitted).

Here, Oracle is in the midst of pursuing a state remedy.  (Oracle's Unopposed Mot. Dismiss State Law Claims, Dkt. 132 (dismissing its three state-law claims from this Court because they are now pending as counterclaims in state court).)  Oracle seeks the value of its copyright claim in the state-court action based on its claims for breach of contract, breach of the duty of good faith and fair dealing, and *quantum meruit*.  The amounts sought in the state-court action and this federal action are the same (and, originally, Oracle had alleged those state-law claims as claims in the "alternative" to its copyright claim against Cover Oregon).  Oracle, in its opposition to Cover Oregon's Rule 12(c) motion, contends that its copyright claim is worth "at least $23 million[,]" which is the same amount that Oracle alleges its *quantum meruit* claim is worth.  (Compare Opp'n at 24 to SAC ¶ 98.)  If Oracle proves its claim in the state-court action and receives its $23 million it will have received compensation and there will have been no uncompensated taking.

Until the state-court determines whether Oracle is entitled to the $23 million it seeks for its claims (the same $23 million for claims that Oracle alleged were in in the alternative), Oracle cannot establish that it has been denied compensation for the purported takings of its property rights in violation of the Constitution.

> **2.    Senate Bill 1 is not a regulatory taking because it minimally regulates Oracle's copyright assets and Oracle retains the vast majority of its rights.**

"Since *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), the Court has recognized that 'government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable....'  In general, regulatory takings are analyzed

under the ad hoc framework announced in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)." *Horne v. U.S. Dep't of Agric.*, 750 F.3d 1128, 1138 (9th Cir. 2014) *cert. granted sub nom. Horne v. Dep't of Agric.*, 135 S. Ct. 1039 (2015).

Under the "*ad hoc* framework" from *Penn Central*, when the government regulates the use of property, "compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." *Yee v. City of Escondido*, 503 U.S. 519, 522–23 (1992).

Here, the purpose of the dissolution of Cover Oregon and transfer of its liabilities, assets, rights, functions and duties to DCBS was for legitimate reasons to benefit the public.  (*Supra*, §§ III.B.2 & III.C, quoting legislative statements.)  It is the dissolution of Cover Oregon and the transfer of liabilities to DCBS that creates, if at all, any impairment of Oracle's property, because those are what allow DCBS to assert the Eleventh Amendment immunity defense.  The dissolution of Cover Oregon and the transfers to DCBS also allow DCBS to assert every other immunity defense and other state-government specific defenses to claims against Cover Oregon. Oracle is not the only person with potential claims against Cover Oregon; any other vendor, supplier, contractor, current or former employee and any person that signed-up (or attempted to sign-up) for health care through the HIX also may have a basis for a claim, and those claims now are subject to DCBS's immunities.  Oracle was not "unfairly singled out."  *See Yee*, 503 U.S. at 523 (setting that standard).

Concerning the purported Taking, a diminution of value due to the regulation that is less than a complete elimination of use usually does not rise to the level of a Taking.  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322-23 (2002) (listing numerous examples of regulatory acts that diminished value but where the Court concluded that there was not a Taking under the Constitution).  The Court has stated that "It is true that in at least some cases the landowner with 95% loss will get nothing, while the landowner with total

loss will recover in full." *Lucas v. South Carolina Coastal Council*, 505 U.S. at 1019 n.8. Here, Oracle registered multiple copyrights. (SAC ¶ 56.) It then asserted a copyright infringement claim against both Cover Oregon and the State by and through OHA and DHS. Senate Bill 1 affects only the claim against Cover Oregon (now DCBS), and it does not take any other property right from Oracle. Oracle still has the remainder of the value of the twelve copyright registrations it alleges it registered.

Oracle may contend that it has lost 100% of the value of its copyright claim against DCBS. That contention is faulty: Oracle alleges one copyright claim against two defendants, and Senate Bill 1 affects the claim against only one of those defendants, leaving 50% of the claim intact. Further, this Court should look at the entire value of Oracle's twelve Copyrights Assets, not just the value of one part of the copyrights, *viz.* the claim against DCBS. Under the Supreme Court's precedent, a party may not separate the sticks in its bundle of property rights to argue a 100% loss of the value of one of those sticks. Courts are, instead, to evaluate how much of the entire bundle was taken. In *Tahoe-Sierra Preservation Council*, the Court affirmed that the courts must examine, in weighing any purported regulatory taking, the spatial, functional and temporal dimensions of the property right to determine if the regulation went "too far." 535 U.S. at 331-32. The Court quoted its rule from earlier cases that "'where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking.'" *Tahoe-Sierra Pres. Council*, 535 U.S. at 327 (citation omitted). Here, Oracle has a full bundle of property rights created, as alleged, by its copyright registrations. The elimination of one copyright claim against one defendant is not a taking where Oracle retains all other copyright claims and copyright rights.

## CONCLUSION

Under the Eleventh Amendment, DCBS is immune from suit in federal court unless DCBS waived its immunity or unless Congress validly abrogated the immunity. The State has not waived its immunity for the copyright claim Oracle alleges against DCBS, and Congress has not validly abrogated the State's sovereign immunity and Eleventh Amendment immunity for claims arising under the Copyright Act. The State, by and through DCBS, is the real, substantial

party in interest, and under the Eleventh Amendment it is immune from suit in federal court.

Accordingly, the Court should grant this motion for judgment on the pleadings and dismiss

without prejudice plaintiff's claims against DCBS.

DATED this 22nd day of June, 2015.

ELLEN ROSENBLUM, ATTORNEY GENERAL
FOR THE STATE OF OREGON

By:    */s/ Dallas S. DeLuca*
David B. Markowitz, OSB No. 742046
DavidMarkowitz@MarkowitzHerbold.com
Lisa A. Kaner, OSB No. 881373
LisaKaner@MarkowitzHerbold.com
Dallas S. DeLuca, OSB No. 072992
DallasDeLuca@MarkowitzHerbold.com
Harry B. Wilson, OSB No. 077214
HarryWilson@MarkowitzHerbold.com
Tel:  (503) 295-3085
Fax:  (503) 323-9105

On Behalf of Oregon Attorney General Ellen
Rosenblum

Special Assistant Attorneys General for
Defendant State of Oregon, by and through
the Department of Consumer and Business
Services

459203