IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ORACLE AMERICA, INC.,                    3:14-CV-01279-BR
a Delaware Corporation,
                                         OPINION AND ORDER
          Plaintiff,

v.

THE OREGON HEALTH INSURANCE
EXCHANGE CORPORATION, dba
COVER OREGON, an Oregon
Limited Liability
Corporation, and THE STATE OF
OREGON, BY AND THROUGH THE
OREGON HEALTH AUTHORITY AND
THE OREGON DEPARTMENT OF
HUMAN SERVICES,

          Defendants.


BRENNA K. LEGAARD
JEFFERY S. EDEN
Schwabe, Williamson & Wyatt, P.C.
1211 S.W. Fifth Avenue, Suite 1900
Portland, OR 97204
(503) 222-9981

KAREN JOHNSON-MCKEWAN
ROBERT S. SHWARTS
ERIN M. CONNELL
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 773-5700


1 - OPINION AND ORDER

**DORIAN E. DALEY**
**DEBORAH K. MILLER**
**PEGGY E. BRUGGMAN**
Oracle Corporation
Legal Department
500 Redwood Shores, CA 94065
(650) 506-9534

       Attorneys for Plaintiff

**DAVID B. MARKOWITZ**
**PETER H. GLADE**
**LISA A. KANER**
**DALLAS S. DELUCA**
**HARRY B. WILSON**
Markowitz Herbold PC
Suite 3000, Pacwest Center
1211 S.W. Fifth Avenue
Portland, OR 97204-3730
(503) 295-3085

       Attorneys for Defendants

**BROWN, Judge.**

    This matter comes before the Court on Defendant State of
Oregon's Motion (#92) for Summary Judgment, Plaintiff Oracle's
Cross-Motion (#104) for Summary Judgment, and the Motion (#142)
of Defendant Department of Consumer and Business Services (DCBS)
for Judgment on the Pleadings.  For the reasons that follow, the
Court **DENIES** the State of Oregon's Motion for Summary Judgment,
**GRANTS** Oracle's Cross-Motion for Summary Judgment, and **GRANTS**
DCBS's Motion for Judgment on the Pleadings.


                    <u>**BACKGROUND**</u>

    The parties are familiar with the facts underlying this

2 - OPINION AND ORDER

action.  The Court, therefore, sets forth only the facts relevant
to the pending Motions.

At some point in 2009 the Oregon Legislature created the
Oregon Health Authority (OHA) as a division of the Oregon
Department of Human Services (DHS).

On March 23, 2010, Congress enacted the Patient Protection
and Affordable Care Act (ACA), Public Law No. 111-148, 124 Stat.
119 (2010), and thereby established legal foundations for States
either to create health-insurance exchanges (HIX) or to use an
HIX developed by the federal government.

The State of Oregon, through DHS/OHA, ultimately decided to
use Oracle to complete a Modernization Project and the HIX (the
Oracle Solution).  Initially, however, DHS/OHA entered into an
agreement on June 30, 2011, only with Mythics, Inc., a
corporation that works with Oracle to distribute and to sell
Oracle products and to provide consulting on the implementation
and integration of Oracle's products.  That agreement, the
Mythics License and Services Agreement (MLSA),[1] provided in
pertinent part:

> This agreement is governed by the substantive and
> procedural laws of Oregon, without giving effect
> to such state's principles of conflicts of laws,
> and you and Mythics agree to submit to the
> exclusive jurisdiction of, and venue in, the
> federal courts in Oregon, or the state courts in

---

[1] Although Oracle did not sign the MLSA, Oracle was named as
a third-party beneficiary of the MLSA.

> Salem, OR in any dispute arising out of or
> relating to this agreement.

Agreed Facts (#88), Ex. 7 at § O.1.

In June 2011 the Oregon Legislature passed legislation creating the Oregon Health Insurance Exchange Corporation (Cover Oregon)[2] as a public corporation.  Specifically, Oregon Revised Statute § 741.002(1)(a) provided Cover Oregon shall "[a]dminister a health insurance exchange in accordance with federal law to make qualified health plans available to individuals and groups throughout this state."

In November 2011 DHS/OHA entered into an Oracle License Service Agreement (OHA OLSA) with Oracle that provided in pertinent part:

> This agreement is governed by the substantive and
> procedural laws of Oregon and you and Oracle agree
> to submit to the exclusive jurisdiction of, and
> venue in, if in state Courts, in the Circuit Court
> of the State of Oregon for Marion County or, if in
> federal courts, the United States District Court
> for the District of Oregon, in any dispute arising
> out of or relating to this agreement.

Agreed Facts (#88), Ex. 13 at § O.1.  The OHA OLSA was signed by the State of Oregon Chief Information Officer Carolyn Lawson, Oregon Assistant Attorney General Jack McDonald, DHS/OHA Office of Contracts and Procurement Officer Stella Transue, and Oracle Contracts Manager Elizabeth Hwang.  Agreed Facts (#88), Ex. 13 at

---

[2] On October 1, 2012, the Oregon Health Insurance Exchange Corporation adopted the name Cover Oregon.

4 - OPINION AND ORDER

25.

As noted, Cover Oregon was not a party to the MLSA or the OHA OLSA.  On March 14, 2013, therefore, Cover Oregon and Oracle executed an Oracle License and Services Agreement (Cover Oregon OLSA) that provided in pertinent part:

> This agreement is governed by the substantive and procedural laws of Oregon and [Cover Oregon] and Oracle agree to submit to the exclusive jurisdiction of, and venue in, if in state Courts, in the Circuit Court of the State of Oregon for Marion County or, if in federal courts, the United States District Court for the District of Oregon, in any dispute arising out of or relating to this agreement.

Second Am. Compl., Ex. B at ¶ O.1.  The Cover Oregon OLSA was signed by Cover Oregon Executive Director Howard King and Oracle License Contracts Manager William Simpson.  Second Am. Compl., Ex. B at 26.

In order for Oregonians to obtain insurance for 2014 as required by the ACA, Cover Oregon established the goal of launching the HIX by October 1, 2013.  Although the HIX was not ready to launch at that time, Oracle and Cover Oregon worked to make the Oregon HIX useable and effective throughout 2013 and into 2014.

On August 8, 2014, however, Oracle filed a Complaint against Cover Oregon in this Court basing federal jurisdiction on the parties' diversity of citizenship and asserting claims for breach of contract and *quantum meruit*.  Oracle alleged Cover Oregon has

not paid for all of the services that Oracle rendered,
"continue[s] to use Oracle's work product[,] and . . . has
transferred some or all of that work product to others in
violation of the parties' written agreements."

On August 22, 2014, Cover Oregon filed a Motion to Dismiss
for Failure to State a Claim and Failure to Join Necessary and
Indispensable Party.  Specifically, Cover Oregon sought dismissal
of the Federal Action because Oracle failed to sue the State of
Oregon, who, according to Cover Oregon, was a necessary and
indispensable party to the action.

On September 8, 2014, Oracle filed an Amended Complaint in
which Oracle added Oregon as a defendant and asserted claims for
copyright infringement against Cover Oregon and Oregon, breach of
contract against Cover Oregon, breach of the implied covenant of
good faith and fair dealing against Cover Oregon, and *quantum
meruit* against Cover Oregon and Oregon.

On September 18, 2014, in light of Oracle's allegations in
its Corrected First Amended Complaint,[3] the Court denied as moot
Cover Oregon's Motion to Dismiss for Failure to State a Claim and
Failure to Join Necessary and Indispensable Party and directed
Cover Oregon and/or Oregon to file any motions against the

---

[3] On September 17, 2015, Oracle filed a Corrected First
Amended Complaint (#33) for the sole purpose of correcting the
erroneous reference to the Oregon Department of Human Services as
the Department of Health Services.

6 - OPINION AND ORDER

Corrected First Amended Complaint no later than October 2, 2014.

On October 2, 2014, Oregon and Cover Oregon each filed separate Motions to Dismiss Oracle's Corrected First Amended Complaint as well as a Joint Motion to Dismiss or, in the Alternative, to Stay.

On December 19, 2014, the Court heard oral argument on Oregon's Motion to Dismiss; the Joint Motion to Dismiss or, in the Alternative, to Stay filed by Oregon and Cover Oregon; and Cover Oregon's Motion to Dismiss.  The Court orally granted Oregon's Motion to Dismiss, denied Cover Oregon's Motion to Dismiss, and took the Joint Motion to Dismiss under advisement.

On January 13, 2015, the Court issued an Opinion and Order in which it formally granted Oregon's Motion to Dismiss and denied Cover Oregon's Motion to Dismiss with leave for Oracle to file a Second Amended Complaint consistent with the Court's rulings.  Specifically, the Court concluded when Congress enacted the Copyright Remedy Clarification Act, it did not abrogate the States' sovereign immunity to copyright actions pursuant to Section 5 of the Fourteenth Amendment to the United States Constitution; Oregon did not waive its sovereign immunity in the action before this Court when it brought an action in state court against Oracle and others alleging only state-law claims; and Oracle did not establish that its claim against Oregon for copyright infringement as alleged in its Corrected First Amended

Complaint falls within the scope of the OHA OLSA contractual provision.  The Court granted Oracle leave to file a Second Amended Complaint to the extent that it could allege facts to establish that Oregon waived its sovereign immunity for the copyright claim pursuant to the venue clause in the OHA OLSA. The Court also granted in part and denied in part the Joint Motion to Dismiss as follows:  (1) the Court denied the Joint Motion to Dismiss Oracle's copyright-infringement claim on the ground that Oracle failed to state a claim, (2) the Court granted the Joint Motion to Dismiss Oracle's alternative Fourth Claim for *quantum meruit*, and (3) the Court granted the Joint Motion to Dismiss the Doe Defendants.

On January 27, 2015, Oracle filed a Second Amended Complaint in which it asserted claims for copyright infringement against Cover Oregon and Oregon; breach of the implied covenant of good faith and fair dealing against Cover Oregon; and, in the alternative to its claim for copyright infringement, claims for breach of contract and *quantum meruit* against Cover Oregon.

On March 3, 2015, Oregon filed a Motion for Summary Judgment in which it asserted the Eleventh Amendment of the United States Constitution bars Oracle's claim against it for copyright infringement.  On March 20, 2015, Oracle filed a Cross-Motion for Summary Judgment on the issue of Eleventh Amendment immunity. The Court heard oral argument on the parties' Cross-Motions on

8 - OPINION AND ORDER

April 10, 2015.  At the hearing the parties requested the Court
to reserve ruling on these Motions for Summary Judgment until it
decided the motion for judgment on the pleadings that was to be
filed shortly in order to ensure that the time for any appeal of
the summary-judgment rulings would not begin to run before the
time for any appeal began to run on the motion for judgment on
the pleadings.

In the meantime on March 6, 2015, the Oregon State
Legislature passed Senate Bill 1, which dissolved Cover Oregon
and moved its functions and duties to DCBS, an agency of the
State of Oregon.  In particular, the legislation provides:

> The rights, obligations and liabilities of [Cover
> Oregon] legally incurred before [March 6, 2015]
> are transferred to [DCBS].  [DCBS] is the
> successor to those rights, obligations and
> liabilities, notwithstanding any prohibition on
> assignment contained in contracts assumed by
> [DCBS] under sections 1 and 2 of this 2015 Act.

Senate Bill 1, § 6(3).  In addition, § 6(3)(a) provides:

> Notwithstanding sections 1 to 5 of this 2015 Act,
> the rights, obligations and liabilities
> transferred to the department:
>
> (a) Are subject to the limitations, defenses
> and immunities of the department that arise under
> ORS 30.260 to 30.300, the Eleventh Amendment to
> the United States Constitution and other state and
> federal laws.

Finally, according to Senate Bill 1, § 5, "the State of
Oregon, by and through [DCBS], is substituted for [Cover Oregon]"
in any pending litigation "involving or with respect to" the

9 - OPINION AND ORDER

"powers, rights, obligations and liabilities" of Cover Oregon's Board and Executive Director.

On April 14, 2015, Cover Oregon filed a Motion for Judgment on the Pleadings in which it asserted Cover Oregon's "rights, obligations and liabilities" were transferred to DCBS under Senate Bill 1 as of March 6, 2015, and, accordingly, the State of Oregon should be substituted for Cover Oregon in any pending litigation.  Cover Oregon also noted DCBS is an agency of the State, and, therefore, DCBS is entitled to Eleventh Amendment immunity as to Oracle's copyright claim.  Thus, Cover Oregon contended the Court should dismiss Oracle's copyright claim against Cover Oregon.

On May 5, 2015, Oracle filed an Unopposed Motion to Substitute the State of Oregon, by and through the Department of Consumer and Business Services, for Cover Oregon.  On May 6, 2015, Oracle filed a Corrected Unopposed Motion to Substitute the State of Oregon, by and through the Department of Consumer and Business Services, for Cover Oregon.

On June 5, 2015, the Court issued an Opinion and Order in which it granted Oracle's Corrected Unopposed Motion to Substitute the State of Oregon, by and through the Department of Consumer and Business Services, for Cover Oregon and denied Cover Oregon's Motion for Judgment on the Pleadings with leave to DCBS to file its own motion for judgment on the pleadings no later

10 - OPINION AND ORDER

than June 22, 2015.

On June 22, 2015, DCBS filed a Motion for Judgment on the Pleadings in which it seeks dismissal of Oracle's copyright claim against DCBS on the ground that it is entitled to Eleventh Amendment immunity as to that claim.

The Court heard oral argument on DCBS's Motion for Judgment on the Pleadings on September 3, 2015, and took the Motion under advisement.

## OREGON'S MOTION (#92) FOR SUMMARY JUDGMENT AND ORACLE'S CROSS-MOTION (#105) FOR SUMMARY JUDGMENT

As noted, Oregon moves for summary judgment on Oracle's copyright-infringement claim on the ground that it is barred as to the DHS/OHA under the Eleventh Amendment to the United States Constitution.  Oracle cross-moves for summary judgment on the ground that Oregon waived Eleventh Amendment immunity for the copyright claim as to DHS/OHA pursuant to § O.1 of the OHA OLSA and/or § O.1 of the MLSA.[4]

**I.    Summary-Judgment Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to

_____

    [4] At the April 10, 2015, oral argument Oracle asserted the meaning of § O.1 in the OHA OLSA and § O.1 of the MLSA was identical for purposes of immunity analysis and Oregon agreed. Accordingly, the Court will refer only to the OHA OLSA for simplicity even though the Court's analysis applies to both contractual provisions.

11 - OPINION AND ORDER

judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary

judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## II.  Eleventh Amendment and Sovereign Immunity

### A.   General Standard

"Sovereign immunity, as it has been interpreted in the federal courts, . . . encompasses two separate, but related, concepts – . . . sovereign immunity . . . and Eleventh Amendment immunity." *Magnolia Venture Capital Corp. v. Prudential Sec., Inc.*, 151 F.3d 439, 443 (5th Cir. 1998)(citing *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996)).  The Eleventh Amendment of the United States Constitution provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or Citizens or Subjects of

13 - OPINION AND ORDER

any Foreign State."  The Supreme Court "has drawn upon principles of sovereign immunity to construe the [Eleventh] Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)(quotations omitted).

"The Eleventh Amendment bar to suit is not absolute. States may consent to suit in federal court and, in certain cases, Congress may abrogate the States' sovereign immunity." *Id.* (quotations omitted).  In addition, a State may choose to waive its immunity, thus consenting to suit.  A State, nevertheless, "may waive its . . . sovereign immunity without waiving its Eleventh Amendment immunity." *Port Authority*, 495 U.S. at 306.  Thus, a State may consent to being sued in its own courts, while still retaining Eleventh Amendment immunity from suit in federal court.  *See, e.g., Fla. Dep't of Health and Rehabilitative Servs. v. Fla. Nursing Home Ass'n.*, 450 U.S. 147, 150 (1981)(State's general waiver of sovereign immunity did not constitute a waiver by the State of its Eleventh Amendment immunity).

**B.  Waiver Standard**

As noted, Oracle asserts Oregon waived the Eleventh Amendment immunity of DHS/OHA as to Oracle's copyright-infringement claim in § O.1 of the OHA OLSA.  The Supreme Court

14 - OPINION AND ORDER

summarized the issue of waiver of immunity in *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*:

> We have long recognized that a State's . . . immunity is a personal privilege which it may waive at its pleasure.  The decision to waive that immunity, however, is altogether voluntary on the part of the sovereignty.  Accordingly, our test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one.  Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction or else if the State makes a clear declaration that it intends to submit itself to our jurisdiction.  Thus, a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation.  Nor does it consent to suit in federal court merely by stating its intention to sue and be sued or even by authorizing suits against it in any court of competent jurisdiction.

527 U.S. 627, 675-76 (1999)(quotations omitted).  "The Supreme Court has made it clear that [courts] may find a waiver of a State's Eleventh Amendment immunity in only the most exacting circumstances.  '[T]he State's consent [to suit in federal court must] be unequivocally expressed.'"  *Magnolia*, 151 F.3d at 443 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)).  "[S]olicitude for States' . . . immunity underlies the standard that this Court employs to determine whether a State has waived that immunity.  The Court will give effect to a State's waiver of Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction."  *Port Authority,* 495 U.S. at 305-06.

15 - OPINION AND ORDER

In addition, the Supreme Court and the Ninth Circuit
have held there cannot be any waiver of Eleventh Amendment
immunity "by implication or by use of ambiguous language."
*United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 659
(1947). *See also Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108,
1112 (9th Cir. 2010)(same). Courts must "indulge every
reasonable presumption against waiver." *Fla. Prepaid,* 527 U.S.
at 682. Any ambiguity in the existence of a waiver of immunity
or in the scope of a waiver of immunity "must be construed
strictly in favor of the sovereign and not enlarged beyond what
the . . . language requires." *United States v. Nordic Village,
Inc.*, 503 U.S. 30, 34 (1992)(citations and quotations omitted).
*See also F.A.A. v. Cooper*, 132 S. Ct. 1441, 1448 (2012)(same).

Finally, a "state's waiver must be accomplished by
someone to whom that power is granted under state law." *Ford
Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 467 (1945),
*overruled on other grounds by Lapides v. Bd. of Regents of Univ.
Sys. of Ga.*, 535 U.S. 613, 623 (2002).

**III. Provisions of the OHA OLSA at Issue**

**A. Applicability of OHA OLSA Provisions to Oracle's Claim
against DHS/OHA for Copyright Infringement**

As noted, the OHA OLSA contains the following
provision:

> This agreement is governed by the substantive and
> procedural laws of Oregon and you and Oracle agree

to submit to the exclusive jurisdiction of, and venue in, if in state Courts, in the Circuit Court of the State of Oregon for Marion County or, if in federal courts, the United States District Court for the District of Oregon, in any dispute *arising out of or relating to this agreement*.

Agreed Facts, Ex. 13 at § O.1 (emphasis added).

In its Second Amended Complaint Oracle alleges the following with respect to the OHA OLSA and Oregon's liability for copyright infringement:

> 71.  An express condition precedent to any license to Cover Oregon under the Cover Oregon OLSA was that it was required to pay for all services rendered under the OLSA.  Cover Oregon has not satisfied that express condition precedent, because Cover Oregon has not paid for all of the services rendered under the Cover Oregon OLSA. Accordingly, Cover Oregon has no license at all to the Copyright Assets and is not authorized to reproduce, prepare derivative works of, distribute, or publicly display those works, or to authorize others to do so.
>
> 72.  By continuing to operate the Cover Oregon website, Cover Oregon is infringing Oracle's exclusive rights to reproduce and publicly display the work.
>
> 73.  By transferring Oracle's Copyright Assets to the control of the State of Oregon for further development, Cover Oregon has unlawfully distributed the Copyright Assets, and has unlawfully authorized others to prepare derivative works based on the Copyright Assets, thereby infringing Oracle's exclusive rights.
>
> 74.  By accepting the transfer of source code from Cover Oregon and exercising dominion and control over a project to augment that code, *the State of Oregon* has infringed Oracle's exclusive rights to reproduce and to prepare derivative works of the Copyright Assets.  Oregon has claimed a license to all or part of the Copyright Assets based on the

17 - OPINION AND ORDER

OHA OLSA, but that license does not allow preparation of derivative works from the Copyright Assets.

Second Am. Compl. at ¶¶ 71-74 (emphasis added).  Oracle acknowledges the Court's January 13, 2015, conclusion that Congress did not abrogate States' Eleventh Amendment immunity for copyright-infringement claims when it enacted the Copyright Remedy Clarification Act (CRCA), Pub.L. 101-553, 104 Stat. 2749 (1990).  Oracle also concedes the claim at issue here is one for copyright infringement rather than for breach of contract.  Nevertheless, Oracle asserts its copyright-infringement claim "relates to" the OHA OLSA, and, therefore, § O.1 applies to the dispute and waives DHS/OHA's Eleventh Amendment immunity as to that claim.

The Ninth Circuit has held "in some circumstances, a contractual forum selection clause may also apply to related non-contract claims." *Petersen v. Boeing Co.*, 715 F.3d 276, 283 n.7 (9th Cir. 2013).  Specifically, contractual forum-selection clauses may apply to noncontract claims "only when 'resolution of the [noncontract] claims relates to interpretation of the contract.'"  *Id.* (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)).

Resolution of noncontract claims "relates to" interpretation of the contract when the noncontract "claims require interpretation of the contract"; *i.e.*, the noncontract

18 - OPINION AND ORDER

claims "cannot be adjudicated without analyzing whether the parties were in compliance with the contract." *Manetti-Farrow*, 858 F.2d at 514 (citation omitted). *See also Kwiecinski v. Medi-Tech Intern. Corp.,* No. 3:14-CV-01512-BR, 2015 WL 3905224, at *3 (D. Or. June 25, 2015)(same); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999); *Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983).

The Court notes Oracle alleges in its claim against DHS/OHA for copyright infringement that Oregon asserts it had a license to all or part of the copyright assets based on the OHA OLSA and, in turn, that Oregon's license does not allow preparation of derivative works from the copyright assets.

In light of these allegations, the Court concludes resolution of Oracle's copyright-infringement claim against DHS/OHA will require the Court to analyze the terms and provisions of the OHA OLSA. Accordingly, § O.1 of the OHA OLSA "relates to" Oracle's copyright-infringement claim against DHS/OHA.

**B.   Legal Authority**

As noted, Oracle asserts § O.1 of the OHA OLSA establishes that Oregon waived its Eleventh Amendment immunity as to Oracle's copyright-infringement claim against DHS/OHA. According to Oregon, however, § O.1 does not contain "the most express language" nor is there "such overwhelming implication

19 - OPINION AND ORDER

from the text as to leave no room for any . . . reasonable construction" of that provision sufficient to establish that Oregon waived its Eleventh Amendment immunity.

The Court and the parties agree there are few cases in which courts have analyzed waiver of Eleventh Amendment immunity in the context of a contract nor is there is any Ninth Circuit precedent on the issue.  It is also agreed that the Supreme Court set out the framework for such analysis in *Port Authority*.  In addition, Oracle relies heavily on two other cases to support its position:  *Pettigrew v. Oklahoma*, 722 F.3d 1209 (10th Cir. 2013), and *Baum Research and Development Company v. University of Massachusetts*, 503 F.3d 1367 (Fed. Cir. 2007), while Oregon contends these cases are distinguishable.

### 1. *Port Authority v. Feeney*

The parties agree the Supreme Court set out the framework for analysis of waiver of Eleventh Amendment immunity in *Port Authority*.  In that case New York and New Jersey entered into a bistate compact in 1921 that created the Port Authority of New York and New Jersey Authority (PATH).  Feeney and Foster brought separate actions against a subsidiary of PATH in the United States District Court for the Southern District of New York for injuries that they allegedly incurred during their employment with PATH.  PATH filed motions to dismiss in both actions on the ground of Eleventh Amendment immunity.  The

20 - OPINION AND ORDER

district court granted PATH's motions to dismiss relying in part
on a Third Circuit case in which the court concluded PATH was
entitled to Eleventh Amendment immunity.  495 U.S. at 302.  The
Second Circuit Court of Appeals, however, reversed the district
court's dismissal of the actions.  The Supreme Court accepted
*certiorari* to resolve the conflict between the circuits as to
PATH's immunity.  The Supreme Court ultimately held New York and
New Jersey had waived PATH's Eleventh Amendment immunity through
provisions in Acts passed by New York and New Jersey in 1951 that
governed lawsuits against the Port Authority and its
subsidiaries.  Specifically, the Supreme Court noted "New York
and New Jersey . . . expressly consented to suit in expansive
terms" in the 1951 Acts.  495 U.S. at 306.  The 1951 Acts
provided in pertinent part that "the States 'consent to suits,
actions, or proceedings of any form or nature at law, in equity
or otherwise . . . against the Port of New York Authority.'"  *Id*.
(quoting N.J. Stat. Ann. § 32:1-157 and N.Y. Unconsol. Laws
§ 7101).  The Court noted the consent provision "might be
interpreted to encompass the States' consent to suit in federal
court as well as state court."  *Id*. at 306.  The Supreme Court,
however, found it was equally likely that "such a broadly framed
provision may . . . reflect only a State's consent to suit in its
own courts."  *Id*.  The provision standing alone, therefore, was
ambiguous.  The Court reiterated it has previously "required

. . . consent to suit in federal court be express and thus has construed such ambiguous and general consent to suit provisions, standing alone, as insufficient to waive Eleventh Amendment immunity." *Id*. The Court also noted, however, that "[o]ther textual evidence of consent to suit in federal courts may resolve that ambiguity and sufficiently clearly establish the scope of the State's more general consent to suit[, in which case] the Court must give effect to that clearly indicated consent to suit in federal court." *Id*. at 306-07. The Court then looked to the rest of the 1951 Acts in an effort to resolve the ambiguity and "to clearly establish the scope of the States' more general consent to suit." *Id*. at 306. In particular, the Court examined the venue provisions of the 1951 Acts, which provided:

> The foregoing consent [of N.J. Stat. Ann. § 32:1-157; N.Y. Unconsol. Laws § 7101] is granted upon the condition that venue in any suit, action or proceeding against the Port Authority shall be laid within a county or a judicial district, established by one of said States or by the United States, and situated wholly or partially within the Port of New York District.

*Id*. at 306.

Ultimately the Court concluded "the statutory venue provision suffices to resolve any ambiguity contained in the States' general consent to suit provision by expressly indicating that the States' consent to suit extends to suit in federal court." *Id*. at 307. Specifically, the Court explained:

> [W]e believe that the provision directly indicates

22 - OPINION AND ORDER

> the extent of the States' waiver embodied in the
> consent provision.  The States passed the venue
> and consent to suit provisions as portions of the
> same Acts that set forth the nature, timing, and
> extent of the States' consent to suit.  The venue
> provision expressly refers to and qualifies the
> more general consent to suit provision.
> Additionally, issues of venue are closely related
> to those concerning sovereign immunity, as this
> Court has indicated by emphasizing that "[a]
> State's constitutional interest in immunity
> encompasses not merely whether it may be sued, but
> where it may be sued." . . .  The venue provision
> would hardly qualify "[t]he foregoing consent"
> unless the States intended that consent to include
> suits in federal court.

*Id.* at 307-08.  Finally, the Court noted PATH

> suggests no reasonable construction that might be
> given to the venue provision's phrase, 'judicial
> district, established . . . by the United States,'
> other than that the States consented to suit in
> federal court. . . .  [PATH] essentially presents
> the choice between giving the venue provision its
> natural meaning and giving the provision no
> meaning at all.  Charged with giving effect to the
> statute, we do not find the choice to be a
> difficult one.

*Id.* at 308 (quotation omitted).

Based on *Port Authority*, Oracle asserts § O.1 of

the OHA OLSA combined with Oregon's general consent to suit found

in the Oregon Tort Claims Act (OTCA), Oregon Revised Statute

§ 30.265, and Oregon Revised Statute § 30.320[5] are sufficient to

establish that Oregon waived its Eleventh Amendment immunity as

---

[5] Oregon Revised Statute § 30.320 provides in pertinent
part:  "A suit or action may be maintained . . . against the
State of Oregon by and through and in the name of the appropriate
state agency upon a contract made by . . . such agency and within
the scope of its authority."

to Oracle's copyright-infringement claim against DHS/OHA.
Specifically, Oracle notes the OTCA, like the general consent to
suit in the 1951 Acts at issue in *Port Authority*, provides a
broad, general consent to suit.  *See* Or. Rev. Stat. § 30.265
("[E]very public body is subject to civil action for its torts
. . . whether arising out of a governmental or proprietary
function.").  According to Oracle, § O.1 of the OHA OLSA, like
the venue provision in the 1951 Acts at issue in *Port Authority*,
elucidates the broad consent-to-suit provision in the OTCA and
establishes Oregon consented to suit in federal court.

        Oregon, on the other hand, asserts the
circumstances in *Port Authority* are distinguishable.
Specifically, Oregon notes when the Supreme Court decided the
venue provision of the 1951 Acts resolved any ambiguity in the
States' general consent to suit in those Acts, the Court pointed
out that "[t]he States passed the venue and consent to suit
provisions as portions of the same Act that set forth the nature,
timing, and extent of the States' consent to suit.  The venue
provision expressly refers to and qualifies the more general
consent to suit provision." *Port Authority*, 495 U.S. at 307.
Here, however, Oregon notes the parties drafted and entered into
the OHA OLSA relatively recently while the general consent to
suit found in the OTCA occurred almost 50 years ago.  Oregon also
points out that unlike the venue provision in *Port Authority*,

24 - OPINION AND ORDER

which specifically stated "[t]he foregoing consent . . . is granted upon the condition that. . .," § O.1 of the OHA OLSA does not reference the OTCA or Oregon's general consent to suit under § 30.320.  Oregon emphasizes the Supreme Court's statement in *Port Authority* that "[t]he venue provision would hardly qualify '[t]he foregoing consent' unless the States intended that consent to include suits in federal court." *Id*. at 308.  Thus, Oregon contends § O.1 remains ambiguous absent coupling with the OTCA, and, therefore, § O.1 must be construed in favor of Oregon.

Finally, Oregon asserts it has offered another reasonable construction of § O.1:  Specifically, Oregon notes § O.1 is phrased conditionally ("submit to the exclusive jurisdiction of, and venue in, *if* in state Courts, in the Circuit Court of the State of Oregon for Marion County or, *if* in federal courts, the United States District Court for the District of Oregon"), which, according to Oregon, suggests the provision requires jurisdiction and venue in the District of Oregon only to the extent that the parties "have an antecedent and independent legal basis to be in federal court."  Oregon contends there are at least three ways in which the State and Oracle could be involved in litigation in federal court that would implicate § O.1 even if Oregon did not waive its immunity:  (1) If the Ninth Circuit holds the CRCA abrogates States' Eleventh Amendment

25 - OPINION AND ORDER

immunity to copyright actions in federal court;[6] (2) if Oregon is the plaintiff in a federal claim because the Ninth Circuit has held "a state that voluntarily brings suit [on a federal claim] as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction," *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 845 (9th Cir. 2004); and/or (3) if Oregon voluntarily appears and defends an action in federal court on the merits. *See Fordyce v. City of Seattle*, 55 F.3d 436, 441 (9th Cir. 1995) (A State can "waive Eleventh Amendment protection by voluntarily appearing and defending [a suit in federal court] on the merits."). Oregon asserts § O.1 would establish jurisdiction and venue in this Court in any of those situations as opposed to a federal court in some other jurisdiction. According to Oregon, therefore, unlike PATH in *Port Authority,* Oregon has offered another reasonable construction of § O.1.

In its Reply to its Cross-Motion for Summary Judgment, Oracle, however, asserts that Oregon's allegedly reasonable alternative construction of the meaning of § O.1 is, in fact, unreasonable, and *Port Authority* directs the Court to find Oregon waived Eleventh Amendment immunity as to Oracle's

---

[6] As this Court noted in its January 13, 2015, Opinion and Order, there is not any controlling Ninth Circuit precedent as to whether Congress validly abrogated States' Eleventh Amendment immunity to copyright actions when it enacted the CRCA. This Court decided Congress did not do so.

copyright-infringement claim against DHS/OHA.

      **2.**    *Pettigrew v. Oklahoma*

        In *Pettigrew* the plaintiff brought an action in
federal court against Oklahoma's Department of Public Safety
(DPS) alleging claims for retaliation in violation of Title VII
and negligent supervision.  The parties settled the matter in
December 2010 and executed a General Release and Settlement
Agreement, which contained the following provision:

> The laws of the State of Oklahoma shall govern
> interpretation of this Agreement.  In the event
> that any litigation is commenced by either party
> to enforce the terms and conditions of the
> Agreement, the litigation will be brought *in the*
> *appropriate Oklahoma court having jurisdiction,*
> *either state or federal.*

722 F.3d at 1211 (emphasis in original).  In January 2012 the
plaintiff filed a second action against DPS in federal court in
which he alleged:  (1) DPS violated Title VII by retaliating
against the plaintiff, (2) the alleged retaliation breached the
Settlement Agreement, and (3) the plaintiff was entitled to a
declaratory judgment that DPS had breached the Agreement.  *Id.* at
1212.  DPS moved to dismiss the plaintiff's second and third
claims on the ground that they were barred by Eleventh Amendment
immunity.  The plaintiff asserted the district court had
supplemental jurisdiction over the state-law claims and that DPS
had waived its Eleventh Amendment immunity as to those claims via

the provision in the Settlement Agreement.[7]   The district court denied the motion to dismiss, and DPS appealed.  On appeal the plaintiff, relying on *Port Authority*, asserted the language in the Settlement Agreement that any litigation "will be brought in the appropriate Oklahoma court having jurisdiction state or federal" unequivocally indicated DPS's intent to waive Eleventh Amendment immunity for actions to enforce the Settlement Agreement.  The Tenth Circuit noted Oklahoma has "broadly consent[ed] to suit[s] to enforce the terms of a contract entered into by the state." *Id*. at 1214-15 (citing *State Bd. of Pub. Affairs v. Principal Funding Corp.,* 542 P.2d 503, 506 (1975)). The Tenth Circuit found "[t]here is no question that [DPS] consented to being sued under the [Settlement] Agreement, at least in state court. . . .  The only unsettled question would be whether the state could be sued in *federal* court for breach of the Agreement." *Id*. at 1215 (emphasis in original).  DPS focused on the word "appropriate" and asserted the only appropriate Oklahoma court having jurisdiction over the plaintiff's state-law claims was Oklahoma's state court because the Eleventh Amendment bars the federal court from hearing those claims.  The Tenth Circuit interpreted DPS's position as an assertion that "the word 'appropriate' voids the words 'or federal'" and stated:

---

[7] The Supreme Court has held supplemental jurisdiction under 28 U.S.C. § 1367 does not override the Eleventh Amendment.

> In Oklahoma, contracts should be construed so as
> to give effect to every part, if reasonably
> practicable.  Rejecting the state's interpretation
> is not a difficult choice.  The language "or
> federal" clearly signals that the word *appropriate*
> must be read as not taking Eleventh Amendment
> immunity into account.  The word refers only to
> proper subject-matter and personal jurisdiction
> and, perhaps, venue.  Because a federal court can
> have supplemental jurisdiction over a state-law
> contract claim, *see* 28 U.S.C. § 1367(a), a federal
> court can be an appropriate court.

*Id*. at 1215-16 (emphasis in original)(quotation and citation

omitted).  The Tenth Circuit noted:

> One might argue . . . the reference in the Venue
> Provision to "either state or federal" courts
> could be read merely as acknowledging that the
> Agreement could be enforced in federal court if
> the state's immunity were not an obstacle for some
> reason independent of anything in the Agreement.
> If that is the meaning, however, why include the
> language?  True, the state could waive its
> Eleventh Amendment immunity by other means, such
> as by removing a suit to federal court.  But we
> firmly doubt that the parties would include a
> provision allowing suit in federal court only if
> the state happened to prefer federal court at some
> point in the future. . . .  And the "state or
> federal" language would be pointless if it simply
> recited the venues where a suit could be brought
> anyway.

*Id*. at 1216.

Oregon asserts *Pettigrew* is distinguishable from

this case on the ground that there was not any reasonable

alternative interpretation for the venue provision in *Pettigrew*

other than as a waiver of Eleventh Amendment immunity because the

provision applied only to breach-of-contract claims to enforce

the terms and conditions of the contract and such claims cannot

29 - OPINION AND ORDER

be asserted against a State in federal court unless the State waives its Eleventh Amendment immunity.  Oregon contends there was not any risk in *Pettigrew* of venue being in a federal forum other than the District of Oklahoma because both the plaintiff and the defendant were citizens of Oklahoma and all of the relevant events occurred in Oklahoma.  In contrast, § O.1 applies to "any claims arising out of or related to" the OHA OLSA.  Oregon, therefore, contends it was necessary in this case for the parties specifically to choose venue in the District of Oregon for potential federal claims that purportedly abrogate Oregon's Eleventh Amendment immunity rather than risk venue in a different federal court.  Thus, although there was not any reasonable construction of the venue provision in *Pettigrew* other than as a waiver of Eleventh Amendment immunity, Oregon contends it has offered a reasonable alternative construction of § O.1.

> ### 3. *Baum Research and Development Co. v. University of Massachusetts*

Oracle also relies on *Baum* to support its assertion that § O.1 is not ambiguous and that it waives Oregon's Eleventh Amendment immunity to Oracle's copyright-infringement claim against DHS/OHA.  In *Baum* the defendant and the plaintiff, the holder of the two patents at issue, entered into a licensing agreement that contained the following provision:

> This Agreement will be construed, interpreted and applied according to the laws of the State of Michigan and all parties agree to proper venue and

30 – OPINION AND ORDER

> hereby submit to jurisdiction in the appropriate
> State or Federal Courts of Record sitting in the
> State of Michigan.

503 F.3d at 1368.  The plaintiff filed an action in the United

States District Court for the Western District of Michigan

against the defendant alleging claims for patent infringement and

breach of the licensing agreement.  The defendant moved to

dismiss the plaintiff's complaint based on Eleventh Amendment

immunity.  The district court denied the defendant's motion on

the ground that the defendant waived its immunity in the

licensing agreement.  The defendant appealed.  On appeal the

Federal Circuit rejected the defendant's assertion that the

provision was ambiguous and that it did not waive immunity

because the provision could "also be read not as a waiver of

immunity from suit, but merely an acceptance of venue in

Michigan, if [the plaintiff] can somehow overcome the obstacle of

the University's immunity."  503 F.3d at 1370.  The Federal

Circuit concluded:

> [T]he contract terms are clear, . . . the
> University agreed to submit to the jurisdiction of
> a federal court in Michigan as to disputes arising
> from this contract.  Although the University
> argues that the contract does not state which
> court is "appropriate" as to which cause of action
> as may arise, this does not negate the agreement
> to submit to the jurisdiction of the appropriate
> court.

*Id*. at 1370.  The court also concluded the provision met the

criteria of *Port Authority* for establishing a waiver of Eleventh

31 – OPINION AND ORDER

Amendment immunity. *Id*. at 1370-71.

Oregon asserts *Baum* is distinguishable because § O.1 is phrased in the conditional:  If a dispute is in federal court, then the parties agree to venue in and the jurisdiction of the District of Oregon.  Thus, according to Oregon, § O.1 only selects venue in the event that a case is already in federal court and does not provide for the necessary predicate consent to suit.  The court in *Baum*, however, rejected a similar argument from the defendant (*i.e.*, that the contract provision at issue could be read "not as a waiver of immunity from suit, but merely an acceptance of venue in Michigan, if [the plaintiff could] somehow overcome the obstacle of [the defendant's] immunity").  The court reasoned:  "Although [the defendant] argues that the contract does not state which court is 'appropriate' as to which cause of action as may arise, this does not negate that agreement to submit to the jurisdiction of the appropriate court."  503 F.3d at 1370.

### C.    Waiver Analysis

As noted, the Supreme Court and the Ninth Circuit have made clear that there cannot be a waiver "by implication or by use of ambiguous language." *N.Y. Rayon Importing Co.*, 329 U.S. at 659; *Holley*, 599 F.3d at 1112.  Oregon asserts the language in § O.1 either clearly did not waive Oregon's Eleventh Amendment immunity or is ambiguous, and, therefore, § O.1 must be

interpreted in favor of Oregon.  Oracle, in turn, asserts § O.1

is a clear waiver of Eleventh Amendment immunity as to Oracle's

copyright-infringement claim against DHS/OHA.  Under Oregon law

> [w]hen . . . interpret[ing] any written instrument,
> [the court's] objective is to ascertain the meaning
> that most likely was intended by the parties that
> entered into it. . . .  [The court] ascertain[s] the
> meaning most likely intended by the parties by means of
> a three-step inquiry.  [The court] begin[s] with the
> text of the disputed provision in the context of the
> instrument as a whole.  In examining the text of the
> disputed provision, [the court] determine[s] whether
> that provision is ambiguous, for, if the provision
> according to its terms is unambiguous, [the court]
> enforce[s] the provision according to its terms as a
> matter of law.  A contractual provision is ambiguous
> only if it is capable of more than one plausible and
> reasonable interpretation.  If the disputed provision
> is ambiguous, [the court] proceed[s] to a second step
> that involves examining extrinsic evidence of the
> contracting parties' intent.  If resort to such
> extrinsic evidence does not resolve the ambiguity, then
> [the court] proceed[s] to a third and final step,
> namely, resort to appropriate maxims of construction.

*McKay's Mkt. of Coos Bay, Inc. v. Pickett*, 212 Or. App. 7, 12

(2007)(internal quotations and citations omitted).  *See also*

*Tipperman v. Tsiatsos*, 327 Or. 539, 545-46 (1998); *Yogman v.*

*Parrott*, 325 Or. 358, 364 (1997).  Because there cannot be any

waiver "by implication or by use of ambiguous language" and any

ambiguity in the existence of a waiver of Eleventh Amendment

immunity or in the scope of a waiver of Eleventh Amendment

immunity "must be construed strictly in favor of the sovereign,"

the parties agree the Court only needs to address the first step

of Oregon's three-step contract-interpretation analysis.  *See*

33 - OPINION AND ORDER

*Nordic Village*, 503 U.S. at 34.  *See also F.A.A. v. Cooper*, 132 S. Ct. 1441, 1448 (2012).  Specifically, the parties assert in an ordinary contract case the jury resolves any ambiguity in a contract provision.  When, however, a contract provision involves a State's purported waiver of Eleventh Amendment immunity, the court determines whether there is an ambiguity in the alleged waiver provision, and, if so, the court is compelled to find there was not a waiver.

The parties do not dispute Oregon consented under § O.1 to suit in at least state court for violations of the OHA OLSA because the language of § O.1 clearly permits actions in state court against Oregon under the OHA OLSA.  In addition, Oregon Revised Statute § 30.320 specifically contemplates contract actions against Oregon in state court, and the OTCA permits tort actions against Oregon in state court.  The unsettled question is whether § O.1 also waives Oregon's Eleventh Amendment immunity to suit in federal court.

In *Pettigrew* the contract provision stated litigation to enforce the terms of the contract "will be brought in the appropriate Oklahoma court having jurisdiction, *either state or federal*."  722 F.3d at 1214 (emphasis in original).  As in this case, the defendant in *Pettigrew* asserted "[t]he only 'appropriate' Oklahoma court having jurisdiction over the state law claims . . . would be Oklahoma's state courts" because

34 – OPINION AND ORDER

Eleventh Amendment immunity protects states from suits in federal court.  722 F.3d at 1215.  Similarly, in *Baum* the provision in the parties' contract stated the parties "hereby submit to jurisdiction in the appropriate State or Federal Courts of Record sitting in the State of Michigan."  503 F.3d at 1368-69.  The defendant in *Baum* asserted the venue provisions could "be read not as a waiver of immunity from suit, but merely an acceptance of venue in Michigan, if Baum can somehow overcome the obstacle of the University's immunity."  503 F.3d at 1370.  As noted, the courts in both *Pettigrew* and *Baum* rejected the States' arguments.  For example, in *Pettigrew* the court noted adoption of the defendant's interpretation of the venue provision would cause the word "appropriate" to void or to cancel "or federal."  The court concluded such an interpretation would violate Oklahoma's rules of contract construction, which require contracts to be construed "'so as to give effect to every part, if reasonably practicable.'"  722 F.3d at 1215-16 (quoting Okla. Stat. Tit. 15, § 157).

Although the specific language of § O.1 is different from the wording in the *Pettigrew* and *Baum* contracts, the Court concludes the effect is the same.  With respect to disputes related to the OHA OLSA, § O.1 provides DHS/OHA "agree[s] to submit to the exclusive jurisdiction of, and venue in, if in state Courts, in the Circuit Court of the State of Oregon for

35 - OPINION AND ORDER

Marion County or, if in federal courts, the United States
District Court for the District of Oregon."  This phrasing is
simply another way of stating "appropriate jurisdiction" as in
*Pettigrew*.  Because the Eleventh Amendment prohibits actions
against States in federal court, the phrase "if in federal court"
must constitute a waiver or the phrase would appear to be
meaningless in the context of Oracle's copyright-infringement
claim against Oregon.

        As noted, Oregon, nevertheless, argues there are three
circumstances in which it asserts § O.1 could have a meaning
other than a waiver of Eleventh Amendment immunity:  (1) If the
Ninth Circuit holds the CRCA abrogates States' Eleventh Amendment
immunity to copyright actions, (2) if Oregon is the plaintiff in
a federal claim, and/or (3) if Oregon voluntarily appears and
defends an action in federal court on the merits.  The Court
concludes, however, that these examples actually lend credence to
Oracle's argument that § O.1 is a waiver of Oregon's Eleventh
Amendment immunity because even without § O.1, Oregon would
properly be in federal court if it initiated an action on a
federal claim, sought removal to federal court, or voluntarily
appeared and defended an action in federal court on the merits.
*See, e.g., Cal. ex rel. Lockyer*, 375 F.3d at 845 ("[A] state that
voluntarily brings suit [on a federal claim] as a plaintiff in
state court cannot invoke the Eleventh Amendment when the

defendant seeks removal to a federal court of competent jurisdiction."); *Fordyce*, 55 F.3d at 441 (A State can "waive Eleventh Amendment protection by voluntarily appearing and defending [a suit in federal court] on the merits.").   In addition, even though the Ninth Circuit had not decided whether Congress validly abrogated States' Eleventh Amendment immunity when it enacted the CRCA, every other court that had addressed the question at the time that the parties entered into the OHA OLSA in 2011 concluded Congress did not so.   The Court concludes it is not reasonable to infer on this record that the parties included the "if in federal court" language in § O.1 only for the purpose of selecting this particular federal court to hear a copyright-infringement claim in the event that the Ninth Circuit concluded some time in the future that Congress validly abrogated Oregon's Eleventh Amendment immunity with the CRCA.

In summary, after reviewing the text of § O.1 in the context of the OHA OLSA as a whole as well as in the context of the parties' negotiations, the Court concludes § O.1 is a sufficiently clear and unambiguous waiver of Oregon's Eleventh Amendment immunity as to Oracle's copyright-infringement claims against DHS/OHA.

## IV. Authority to Waive Oregon's Eleventh Amendment Immunity

Oregon asserts even if the Court finds § O.1 to be a sufficiently clear waiver of Oregon's Eleventh Amendment immunity

37 - OPINION AND ORDER

with respect to Oracle's copyright claim against the DHS/OHA, the
Court should not enforce the waiver because Oregon Assistant
Attorney General Jack McDonald lacked the authority to waive
Oregon's Eleventh Amendment immunity.

As noted, a "state's waiver must be accomplished by someone
to whom that power is granted under state law." *Ford Motor Co.
v. Dep't of Treasury*, 323 U.S. 459, 467 (1945).  Although it is
undisputed that the Oregon Attorney General has the power to
waive the State's Eleventh Amendment immunity, the parties
dispute whether Assistant Attorney General McDonald had the
authority to waive Oregon's Eleventh Amendment immunity when he
signed the OHA OLSA.  The parties agree there is not any Ninth
Circuit precedent on this issue.

Oregon relies on *Magnolia Venture Capital Corp. v.
Prudential Securities, Inc.,* to support its assertion that
Assistant Attorney General McDonald lacked the authority to bind
DHS/OHA to § O.1.  In *Magnolia* the Mississippi Department of
Economic and Community Development (the MDECD) entered into a
contract containing a provision that the Fifth Circuit assumed
for purposes of its analysis was sufficient to indicate that
Mississippi waived its Eleventh Amendment immunity.  151 F.3d at
442.  Mississippi, however, asserted "even if the venue provision
[was] construed as waiving Eleventh Amendment immunity, MDECD had
no authority to waive Eleventh Amendment immunity," and,

therefore, Mississippi could still assert Eleventh Amendment
immunity. *Id*. The Fifth Circuit concluded MDECD lacked the
authority to waive Mississippi's Eleventh Amendment immunity
contractually, and, therefore, the matter should have been
dismissed by the lower court. The Fifth Circuit explained courts
must look to the "'general policy of the state as expressed in
its Constitution, statutes and decisions'" when determining
whether a state official or entity has the authority to waive a
State's Eleventh Amendment immunity. *Id*. at 444 (quoting *Ford
Motor Co.*, 323 U.S. at 467). The authority to waive immunity
"must be clearly expressed" in these sources. *Id*. (citation
omitted). Although the court found Mississippi law clearly
waived the State's sovereign immunity from suit in Mississippi
state courts, "there [was] no Mississippi law to support the
implication that MDECD had the authority to waive Mississippi's
Eleventh Amendment immunity." *Id*.

Oracle, in turn, points to Oregon Revised Statute
§ 180.140(1), which provides:

> The Attorney General shall appoint . . .
> assistants the Attorney General deems necessary to
> . . . perform such duties as the Attorney General
> may designate and for whose acts the Attorney
> General shall be responsible. Each assistant
> shall have full authority under the direction of
> the Attorney General to perform any duty required
> by law to be performed by the Attorney General.

Oracle asserts because the Oregon Attorney General had the legal
authority to waive Oregon's Eleventh Amendment immunity,

39 – OPINION AND ORDER

Assistant Attorney General McDonald had the same authority under § 180.140(1).

Oregon does not dispute § 180.140(1) generally vests assistant attorneys general with the authority to perform duties that the Attorney General may perform.  Oregon, however, asserts Assistant Attorney General McDonald was not vested with the specific authority to waive Eleventh Amendment immunity, and, therefore, he could not do so in the OHA OLSA.  Nonetheless, Oregon does not point to any statutory, constitutional, or regulatory authority that bars assistant attorneys general from waiving Eleventh Amendment immunity.  Instead Oregon relies on Oregon Department of Justice internal Policy Memo 5-80, which provides:

> The Attorney General has the authority to waive the State of Oregon's Eleventh Amendment immunity from suit in federal court.  This authority is inherent in the Attorney General's responsibility to defend any action in any court and the DOJ's authority to control and supervise the conduct of litigation.
>
> * * *
>
> The Attorney General may authorize waiver of the state's 11th Amendment immunity in cases in federal court in which the state is a party and a claim for money damages is asserted or prospective relief is sought that could require a payment from state funds.

Decl. of John McDonald in Support of the State of Oregon's Mot. for Summ. J., Ex. 1 at 1.  The Policy Memo also sets out a specific procedure that the Attorney General's Office requires

40 - OPINION AND ORDER

assistant attorneys general to follow in order to obtain permission to waive Eleventh Amendment immunity.  The parties do not dispute that Assistant Attorney General McDonald failed to follow the internal Policy Memo procedure requiring him to obtain permission to waive Oregon's Eleventh Amendment immunity in the OHA OLSA nor do the parties dispute that the Attorney General at the time, John Kroger, did not give Assistant Attorney General McDonald express permission to waive Oregon's Eleventh Amendment immunity.

The Court agrees with Oracle's observation that the internal Policy Memo is not a "[c]onstitution, statute[, or] decision" of the Oregon Legislature or Oregon courts, and, in light thereof, the Court concludes even under *Magnolia* Assistant Attorney General McDonald's failure to follow the particular procedures set out in the Policy Memo is insufficient to establish that he lacked the actual authority to waive Eleventh Amendment immunity.

In the alternative, Oracle asserts even if Assistant Attorney General McDonald did not have the actual authority to waive Eleventh Amendment immunity, he had apparent authority to do so, and the parties proceeded under the terms of the OHA OLSA accordingly.  Thus, Oracle contends DHS/OHA is bound by the terms of the OHA OLSA, including § O.1.  *See Wiggins v. Barrett & Assoc.*, 295 Or. 679, 692-93 (1983)(a public entity can be bound by an agent acting outside of the scope of his authority if that

41 - OPINION AND ORDER

person acted with apparent authority).  The Oregon Supreme Court
has held an agent acts with apparent authority when:  (1) He
makes a promise that the public entity could lawfully make and
perform, (2) the public entity "clothes" the agent with apparent
authority, (3) there is not any actual or constructive notice of
the lack of actual authority, and (4) the public entity retained
a benefit in return for the promise.  *Wiggins*, 295 Or. at 697.

     As noted, it is undisputed that the Attorney General has the
power to waive the State's Eleventh Amendment immunity and that
assistant attorneys general are authorized by statute to act with
"full authority under the direction of the Attorney General to
perform any duty required by law to be performed by the Attorney
General."  Or. Rev. Stat. § 180.140(1).  In addition, when the
State authorized Assistant Attorney General McDonald to negotiate
the provisions of the OHA OLSA and to sign the OHA OLSA, the
Court finds Oregon "clothed" him with apparent authority to bind
Oregon to the provisions of the OHA OLSA, including § O.1.
Moreover, it is undisputed that Assistant Attorney General
McDonald did not advise Oracle nor did Oracle have any indication
that Assistant Attorney General McDonald  lacked the authority to
agree to § O.1.  Thus, Oracle did not have actual or constructive
notice that Assistant Attorney General McDonald might lack the
authority to agree to § O.1.  Finally, as Oracle points out,
Oregon does not dispute for purposes of this issue that it

42 - OPINION AND ORDER

received a benefit from the OHA OLSA.

Oregon, however, asserts Assistant Attorney General McDonald could not act with apparent authority outside of the scope of his actual authority.  Because Assistant Attorney General McDonald did not have the actual authority to permit him to waive the State's Eleventh Amendment immunity, Oregon contends he also did not have the apparent authority to do so.  Oregon relies on *Baker v. Deschutes County*, 10 Or. App. 236 (1972), to support its assertion.

In *Baker* the court held:

> There is no apparent authority in a public officer whose duties are prescribed by law as there would be in the case of an agent for a private party . . . .  A contract by a public officer in excess of the provisions of the statute authorizing such contract is void, so far as it departs from or exceeds the terms of the law under which it was attempted to be negotiated.

*Id*. at 240 (citations omitted).  The court also noted:

> It is fundamental law that government entities and their officers must find sanction for their actions in the statute itself. . . .  Persons contracting with a public officer acting under a public law must, at their peril, ascertain the scope of the officer's authority, and are chargeable with notice of the contents of the enactment conferring that authority.

*Id*. (citations omitted).  As Oracle points out, however, because the Attorney General has the authority to waive Eleventh Amendment immunity and Oregon Revised Statute § 180.140(1) provides assistant attorneys general with the same authority as

43 - OPINION AND ORDER

that held by the Oregon Attorney General, Assistant Attorney General McDonald did not contract in excess of his statutory authority.  In ascertaining the scope of Assistant Attorney General McDonald's statutory authority, Oracle is only chargeable with notice of the contents of Oregon's statutes, constitution, and/or regulations with respect to his authority.  The Court, therefore, declines to extend *Baker* by concluding that Oracle is charged with notice of the contents of an internal Department of Justice Policy Memo.

On this record, therefore, the Court concludes Assistant Attorney General McDonald had either actual or apparent authority to waive Oregon's Eleventh Amendment immunity as to Oracle's copyright-infringement claim against DHS/OHA via § O.1. Accordingly, the Court denies Oregon's Motion for Summary Judgment and grants Oracle's Cross-Motion for Summary Judgment.


## DCBS'S MOTION (#142) FOR JUDGMENT ON THE PLEADINGS

DCBS moves for judgment on the pleadings and dismissal of Oracle's copyright-infringement claim against DCBS on the ground of Eleventh Amendment immunity.

Oracle, in turn, asserts DCBS's Eleventh Amendment immunity was waived when Cover Oregon entered into the Cover Oregon OLSA. In the alternative, Oracle asserts if DCBS's Eleventh Amendment immunity was not waived, § 6(3)(a) of Senate Bill 1 is

unconstitutional.

## I.    Standards

Federal Rule of Civil Procedure 12(c) provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

For purposes of a motion pursuant to Rule 12(c), the court must accept the nonmoving party's allegations as true and view all inferences in a light most favorable to the nonmoving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  A judgment on the pleadings is properly granted when, taking all allegations in the nonmoving party's pleadings as true, the moving party is entitled to judgment as a matter of law.  *Compton Unified Sch. Dist. v. Addison*, 598 F.3d 1181, 1185 (9th Cir. 2010).  "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Davis v. Astrue*, Nos. C-06-6108 EMC, C-09-0980 EMC, 2011 WL 3651064, at *1 (N.D. Cal. Aug. 18, 2011)(citation omitted). *See also Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011)(A Rule 12(c) motion is "functionally identical to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and therefore the

45 - OPINION AND ORDER

same legal standard applies.").

## II. DCBS is entitled to assert Eleventh Amendment immunity unless its immunity was waived.

DCBS is an arm of the State, and, as such, Eleventh Amendment immunity would usually bar an action for copyright infringement against DCBS in this Court. In addition, although the Ninth Circuit has not addressed the issue, other courts have held when a state entity that enjoys Eleventh Amendment immunity is a successor in interest to a non-state entity that did not enjoy Eleventh Amendment immunity, the state entity is still entitled to Eleventh Amendment immunity absent explicit abrogation or waiver of that immunity. For example, in *Maysonet-Robles v. Cabrero*, 323 F.3d 43 (1st Cir. 2003), the plaintiffs brought an action against the trustee for the Urban Renewal Housing Corporation Accounts Liquidation Office of Puerto Rico (the Office), which was not an arm of the State and did not enjoy Eleventh Amendment immunity. More than one year into the litigation the Legislature of the Commonwealth of Puerto Rico dissolved the Office and transferred its functions to the Department of Housing of the Commonwealth of Puerto Rico (the Department), which, as an agency of the State, enjoyed Eleventh Amendment immunity. The Department was substituted for the Office and filed a motion to dismiss on the ground of Eleventh Amendment immunity. The district court concluded the Department was entitled to Eleventh Amendment immunity even though it was

46 - OPINION AND ORDER

"injected into the pending litigation as a successor to a party that had not been entitled to immunity under the Eleventh Amendment," and the court granted the Department's motion to dismiss. *Id*. at 49. The plaintiffs appealed and argued the Department should not be permitted to assert immunity "because it entered the case midstream as a successor to the Office, an entity that was itself outside the scope of that immunity." *Id*. at 49. The plaintiffs asserted because federal jurisdiction "was properly established over the Office when the suit was initiated, it is not subject to ouster by subsequent events." *Id*. The First Circuit rejected the plaintiffs' argument:

> [W]hile the Eleventh Amendment has been described as a jurisdictional bar with a "hybrid nature," similar in some respects to personal jurisdiction and to subject matter jurisdiction in others, it is on all fours with neither (*see Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 394 (1998) (Kennedy, J., concurring)). Rather it is "a specific text with a history that focuses on the State's sovereignty vis-a-vis the Federal Government." (*Lapides*, 122 S. Ct. at 1646). Unlike a private individual or corporation, a State retains its . . . immunity as a "personal privilege" and, whether it is the original defendant or is added as a party later, it cannot be sued involuntarily.
>
> * * *
>
> [The] Department is an arm of the State, regardless of its late arrival at the courthouse as a successor in interest, and it must be accorded the same respect due a State under the Eleventh Amendment (*see Kroll v. Bd. of Trustees of the Univ. of Ill.*, 934 F.2d 904, 909 (7th Cir. 1991); *Williamson Towing Co. v. Illinois*, 534 F.2d 758, 760-61 (7th Cir. 1976)). To prevail here,

then, Plaintiffs must establish that Puerto Rico
waived its own immunity in light of those legal
principles by dissolving the Office into
Department.

*Id.* at 50.  The First Circuit concluded the State did not waive

Eleventh Amendment immunity when the legislature created the

Department:

To be sure, Act 106 does provide that lawsuits
pending against the Office at the time of
enactment are to be taken over by Department.  To
that end [the] Act's Article 4 mandates the
transfer to Department of the Office's "records,
assets, and liabilities" and provides that
"Department shall not be responsible for any claim
beyond those passed on by the Office."  Article 5
requires that an inventory of pending lawsuits be
delivered to Department.  Lastly, Article 7 orders
the Department of Justice to support Department as
requested in such lawsuits and reads in part:

The Department of Housing shall have the same
rights and powers, except for the capacity to
sue and be sued, and may raise the same
defenses used by the Office in case of any
litigation or claim related to the
transferred assets.

But none of that language about pending lawsuits
conveys Puerto Rico's unequivocal consent for such
pending litigation to continue in federal court.

*Id.* at 51.  The court acknowledged:

[I]t does not require a particularly jaundiced eye
to deduce from the Act's text that the Puerto Rico
legislature acted to dissolve the Office and
transfer the claims to Department with the precise
goal of raising the shield of immunity.  Such
jurisdictional game-playing would be beyond the
pale for any private litigant, and it is not a new
strategy for the Commonwealth. . . .  But it has
been nearly a century and a half since *Beers*, 61
U.S. at 529 held that because the waiver of such
immunity is entirely within the sovereign's

> prerogative, a State may alter the conditions of
> waiver and apply those changes to torpedo even
> pending litigation.

*Id.* at 51-52 (citations omitted).  Accordingly, the First Circuit

concluded the State had not waived the Department's Eleventh

Amendment immunity via the statute.  The court also concluded the

State did not waive the Department's immunity through conduct

during the litigation:

> Neither the Office nor Department has taken any
> action in this lawsuit that may be fairly
> described as voluntarily submitting the
> Commonwealth's rights for adjudication by the
> federal court.  As for the Office, it has yet to
> answer Plaintiffs' complaint, let alone take steps
> akin to filing a counterclaim or third-party
> complaint.  Nor is the automatic substitution of
> Department for the Office — unlike an election to
> remove a case from a state court to a federal
> court — a clear invocation of federal court
> jurisdiction.  Although the Office's motions urged
> that either Department or Puerto Rico was the real
> party in interest, that was coincident with their
> raising the shield of immunity.  And Department's
> entry into the case as the Office's successor,
> which was employed only to advance that same
> immunity contention, also cannot be labeled as a
> voluntary submission.  In short, anything that
> might be characterized as affirmative litigation
> conduct goes back to the statute itself.  And
> while the Commonwealth's Act 106 chose to
> interject Department into all pending litigation
> against the Office, it has already been said that
> the statutory language does not unequivocally
> consent to the continuation of any such suits in
> federal court.

*Id.* at 52-53.

Similarly, in *Surprenant v. Mass. Turnpike Auth.*, 768 F.

Supp. 2d 312 (D. Mass. 2011), the plaintiff brought an action

against the Massachusetts Turnpike Authority (MTA), which was not
a state agency entitled to Eleventh Amendment immunity.  Nine
months after the plaintiff filed her action, the Massachusetts
Legislature created a new state agency (MassDOT) and transferred
the "functions, assets, and liabilities" of the MTA to MassDOT.
The legislation transferring the MTA's functions, assets, and
liabilities did not explicitly address Eleventh Amendment
immunity for MassDOT.  The plaintiff filed an Amended Complaint
substituting MassDOT as the named defendant.  MassDOT filed an
answer, raised the Eleventh Amendment as an affirmative defense,
and then filed a motion for judgment on the pleadings on the
ground of Eleventh Amendment immunity.  768 F. Supp. 2d at 314.
The plaintiff objected to the "*post hoc* absolution of the MTA, as
the predecessor of the MassDOT, from liability for its past
actions on grounds of . . . immunity."  *Id*. at 317.  The court
concluded MassDOT was entitled to Eleventh Amendment immunity
and, therefore, granted MassDOT's motion for judgment on the
pleadings.  The court reasoned the statute did not indicate the
legislature waived MassDOT's Eleventh Amendment immunity:

> [T]here is nothing in the statute or its wording
> that would prevent or bind the MassDOT from
> asserting any of its available defenses, even
> those that have the effect of terminating a
> lawsuit on jurisdictional grounds. . . . *See
> Maysonet-Robles*, 323 F.3d at 50-51 (finding a
> similar grant of continuing authority over pending
> litigation to stop well short of an unequivocal
> consent to a waiver of sovereign immunity).  Any
> hesitation must be strictly resolved in favor of

50 - OPINION AND ORDER

> the Commonwealth as a waiver of . . . immunity
> will not be implied. *Lane v. Pena*, 518 U.S. 187,
> 192 (1996).
>
> It may seem unfair that an immunity defense that
> was not available to the MTA can be bestowed on
> the MassDOT as its successor by legislative fiat.
> But . . . the Eleventh Amendment enjoys a unique
> jurisdictional status. "Unlike a private
> individual or corporation, a State retains its
> . . . immunity as a personal privilege and,
> whether it is the original defendant or is added
> as a party later, it cannot be sued
> involuntarily." *Maysonet-Robles*, 323 F.3d at 50.

*Id.* at 318 (quotation omitted).

In *Kroll v. Board of Trustees of University of Illinois*, 934
F.2d 904 (7th Cir. 1991), the plaintiff brought an action against
the University of Illinois Athletic Association, a non-state
entity that was not entitled to Eleventh Amendment immunity.  The
plaintiff's complaint was dismissed with leave to amend.  When
the plaintiff filed an amended complaint, he again named the
Athletic Association.  Between the time of the dismissal of the
plaintiff's complaint and the time that the plaintiff filed his
amended complaint, however, the Illinois Legislature passed
legislation merging the Athletic Association with the Board of
Trustees of the University of Illinois (the Board), a state
entity.  The Board then appeared in the matter and asserted
Eleventh Amendment immunity.  934 F.2d at 906.  The district
court "rejected this argument," and the Board appealed.  On
appeal the plaintiff asserted "the Board, as successor to the
Athletic Association, cannot invoke the eleventh amendment [*sic*]

51 - OPINION AND ORDER

because that defense was unavailable to the Athletic
Association." *Id*. at 909.  The Seventh Circuit rejected that
argument:  "[T]he Board, regardless of its status as a successor
entity, and in the absence of waiver or congressional abrogation
must be accorded the respect due a State under the eleventh
amendment [*sic*]." *Id*.  The court, therefore, concluded the
Illinois Legislature had not abrogated the Board's Eleventh
Amendment immunity and that the Board's immunity had not been
waived.  The court noted it could give effect to a waiver "'only
[when] stated by the most express language or by such
overwhelming implication from the text as [will] leave no room
for any other reasonable construction.'"  *Id*. (quoting *Port
Authority*, 495 U.S. at 305, and noted:

> [T]he only plausible basis for that type of waiver
> is a provision of the special legislation that
> allowed the Board to merge with the Athletic
> Association.  In its entirety, that provision
> states:
>
>> The Board of Trustees of the University of
>> Illinois shall be responsible and liable for
>> all the liabilities and obligations of each
>> of the corporations so merged; and any claim
>> existing or action or proceeding pending by
>> or against either of such corporations may be
>> prosecuted to judgment as if such merger had
>> not taken place, or the surviving corporation
>> may be substituted in its place.  Neither the
>> rights of creditors nor any liens upon the
>> property of either of such corporations shall
>> be impaired by such merger.

> Ill. Rev. Stat. ch. 144, para. 28d(d)(4).

> The district court correctly identified a waiver

52 – OPINION AND ORDER

> in that statutory language, but as we view it that
> waiver is not effective in this eleventh amendment
> context.
>
> * * *
>
> At best, the evidence of waiver is ambiguous; the
> language might consent to suit in federal court,
> but then again it might not.  And under these
> circumstances, federal courts are loath to find a
> waiver; the "vital role of the doctrine of
> sovereign immunity in the federal system" demands
> that we err, if at all, on the side of immunity.
> *See Pennhurst II*, 465 U.S. at 99.  For purposes of
> the eleventh amendment, therefore, an ambiguous
> waiver is no waiver at all.

*Id.* at 910-11.

The Court notes § 6(3), Senate Bill 1, specifically provides the Bill does not waive DCBS's immunity.  In any event, the Court finds the reasoning of *Maysonet, Suprenant,* and *Kroll* to be persuasive and concludes pursuant to that reasoning that Senate Bill 1 does not explicitly abrogate DCBS's Eleventh Amendment immunity.  Accordingly, unless Oracle can establish that DCBS waived its Eleventh Amendment immunity via § O.1 of the Cover Oregon OLSA, the Court must conclude DCBS is entitled to Eleventh Amendment immunity and grant DCBS's Motion for Judgment on the Pleadings.

## III. Waiver of Eleventh Amendment Immunity

Oracle asserts the transfer of Cover Oregon's "rights, obligations and liabilities" to DCBS in Senate Bill 1 together with Cover Oregon's agreement to federal jurisdiction in the Cover Oregon OLSA serves as a waiver of DCBS's Eleventh Amendment

53 - OPINION AND ORDER

immunity because under Senate Bill 1 DCBS assumed all of Cover

Oregon's obligations under the Cover Oregon OLSA which would

include the agreement in § O.1 to be sued in federal court.

> **A.    The transfer of Cover Oregon's rights, obligations, and liabilities in Senate Bill 1 did not transfer Cover Oregon's lack of Eleventh Amendment immunity.**

Oracle concedes the Supreme Court held in *Beers v.

Arkansas* that a State is entitled to limit legislatively the

scope of a previous statutory waiver of immunity even when a

claim against the State is pending.  61 U.S. 527, 529 (1857).

Oracle notes, however, that the Supreme Court, in reaching its

conclusion, also found "the State violated no contract with the

parties" when enacting the legislation at issue in that case.

*Id*. at 530.  Here Oracle asserts § O.1 of the Cover Oregon OLSA,

in contrast to the circumstances in *Beers*, would be violated if

DCBS was permitted to assert Eleventh Amendment immunity.  As

noted, § O.1 of the Cover Oregon OSLA provides:

> This agreement is governed by the substantive and
> procedural laws of Oregon and [Cover Oregon] and
> Oracle agree to submit to the exclusive
> jurisdiction of, and venue in, if in state Courts,
> in the Circuit Court of the State of Oregon for
> Marion County or, if in federal courts, the United
> States District Court for the District of Oregon,
> in any dispute arising out of or relating to this
> agreement.

Second Am. Compl., Ex. B at ¶ O.1.  Oracle asserts "DCBS's

assumption of the Cover Oregon OLSA and immediate assertion of

Eleventh Amendment immunity with respect to claims arising under

54 - OPINION AND ORDER

that contract will violate its terms." Specifically, Oracle
contends because DCBS assumed all of Cover Oregon's rights,
liabilities, and obligations under the Cover Oregon OLSA pursuant
to Senate Bill 1, DCBS also assumed Cover Oregon's agreement in
§ O.1 to be sued in federal court. At least one court, however,
has rejected this argument. In *Asociacion de Empleados del Area
Canalera (ASEDAC) v. Panama Canal Commission* the plaintiff
asserted when "the liabilities of a defunct government entity
whose immunity had been waived are transferred to an entity whose
immunity is retained[,] . . . the waiver of immunity is also
transferred to the successor entity." 453 F.3d 1309, 1315 (11th
Cir. 2006). The *ASEDAC* court rejected that argument and "the
notion that the transfer of the [defunct government entity's]
liabilities to the [entity that retained immunity] automatically
carried with it [the defunct government entity's] waiver of
immunity, absent unequivocal statutory language to that effect."
*Id*.

The Court finds the reasoning of *ASEDAC* to be
persuasive and adopts that reasoning as well as the reasoning of
*Maysonet*, *Suprenant,* and *Kroll*. Thus, because Cover Oregon
lacked Eleventh Amendment immunity when it entered into the Cover
Oregon OLSA and Senate Bill 1 does not contain any statutory
language that explicitly transferred Cover Oregon's lack of
Eleventh Amendment immunity to DCBS, the Court declines to

conclude Cover Oregon's consent to suit in federal court under § O.1 of the Cover Oregon OLSA together with Senate Bill 1 waived DCBS's Eleventh Amendment immunity.

**B.    Waiver of an Immunity that Cover Oregon Did Not Possess**

DCBS also asserts Cover Oregon could not waive DCBS's Eleventh Amendment immunity in § O.1 of the Cover Oregon OLSA because Cover Oregon was never entitled to Eleventh Amendment immunity, and it is contrary to law to conclude that an entity can waive what it never had.

Under Oregon law "a waiver is the 'intentional relinquishment of a known right.'" *Wood Park Terrace Apartments Ltd. P'ship v. Tri-Vest, LLC*, 254 Or. App. 690, 695 (2013) (quoting *Guardian Mgmt. LLC v. Zamiello*, 194 Or. App. 524, 529 (2004)).  It is axiomatic, therefore, that one may not waive a right that one does not possess.  *See, e.g., Kristensen ex rel. Kristensen v. Spotnitz*, No. 3:09-CV-00084, 2011 WL 4458974, at *5 (D. Va. Sept. 26, 2011)("[O]ne cannot waive a right that one does not possess."); *Dominion Retail, Inc. v. Rogers*, No. 2:11-CV-00233, 2013 WL 1149911, at *4 (W.D. Pa. Jan. 30, 2013)(same); *Brookwood, LLC v. Scottsdale Ins. Co.*, No. 08-4793, 2009 WL 2525756, at *4 (E.D. La. Aug. 17, 2009)(doctrine of waiver applies only to an existing legal right); *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 547 n.55 (5th Cir. 2004) ("[I]t is essential to waiver that the right allegedly waived

exist at the time of the waiver; a party may not waive any right
it does not yet have." (quotation omitted)).

As noted, Cover Oregon did not have any right to
Eleventh Amendment immunity.  According to DCBS, therefore, when
Cover Oregon agreed to federal jurisdiction in § O.1, it could
not have been waiving any right of DCBS to Eleventh Amendment
immunity.  The Court agrees.

In summary, because a party may not waive a right it
does not possess, the Court concludes it would be unreasonable to
find Cover Oregon waived Eleventh Amendment immunity on its own
behalf or on behalf of DCBS when it entered into the Cover Oregon
OLSA.  In addition, the Court concludes the Oregon Legislature
did not effectively waive DCBS's Eleventh Amendment immunity in
Senate Bill 1 because it did not explicitly state it was doing so
when it transferred Cover Oregon's obligations to DCBS.  Like the
court in *Maysonet-Robles*, this Court is mindful of the possibly
disruptive precedent for future contracts between Oregon and
others arising from the Oregon Legislature's transfer of Cover
Oregon's rights and obligations to a state agency entitled to
Eleventh Amendment immunity.  The Court, nevertheless, does not
find any legal basis to conclude that DCBS's immunity was
abrogated by Senate Bill 1 or waived in § O.1 of the Cover Oregon
OLSA.

57 - OPINION AND ORDER

C.    **Meeting of the Minds**

Finally, DCBS asserts there was not a meeting of the minds at the time the parties entered into the Cover Oregon OLSA that § O.1 would constitute a waiver of immunity if at some point Cover Oregon was dissolved and its duties and obligations were taken over by a state entity.

Under Oregon law "[w]hen . . . interpret[ing] any written instrument, [the court's] objective is to ascertain the meaning that most likely was intended by the parties that entered into it." *McKay's Mkt. of Coos Bay, Inc. v. Pickett*, 212 Or. App. 7, 12 (2007)(internal quotations and citations omitted). *See also Tipperman v. Tsiatsos*, 327 Or. 539, 545-46 (1998).  In particular, the Court must look at the intent of the parties as to the meaning of a term when the parties entered into the contract or agreement.  *See, e.g., Prtizker v. Carr*, 113 Or. App. 310, 213 (1992); *Fitzgibbon v. Carey*, 70 Or. App. 127, 132 (1984).

The record does not reflect Cover Oregon believed when the parties entered into the Cover Oregon OLSA that it might have Eleventh Amendment immunity in the future or that it intended to waive Eleventh Amendment immunity for itself or others.  A more reasonable interpretation of § O.1 at the time of the formation of the Cover Oregon OLSA is that the parties agreed any dispute arising under the Cover Oregon OLSA would be heard in Marion

58 - OPINION AND ORDER

County Circuit Court if state-court jurisdiction was appropriate
or heard in this Court if federal jurisdiction was appropriate.

        The Court recognizes the language in § O.1 of the Cover
Oregon OLSA is the same as the language in § O.1 of the OHA OLSA.
Nevertheless, the circumstances and timing of the formation of
the two contracts, the nature of the parties entering into the
two contracts at the time of formation, and the intent of the
parties at that time were manifestly different.  The Court,
therefore, concludes the identical language has different
meanings in the different contexts of the different agreements.
When Oregon entered into the OHA OLSA, it was well aware that it
was entitled to Eleventh Amendment immunity, and, therefore, as
explained above, it is not unreasonable for the Court to conclude
that Oregon was waiving its Eleventh Amendment immunity in § O.1
when it entered into the OHA OLSA.  In contrast, when Cover
Oregon entered into the Cover Oregon OLSA, it did not have
Eleventh Amendment immunity, and, therefore, the most reasonable
interpretation of § O.1 is that Cover Oregon agreed only to place
venue in this Court if a federal claim arose under that
agreement.

        Finally, the Court concludes the Oregon Legislature did
not abrogate Eleventh Amendment immunity for DCBS when it
transferred Cover Oregon's rights and obligations to DCBS
(including the provisions of the Cover Oregon OLSA in Senate

59 - OPINION AND ORDER

Bill 1) because in doing so the Oregon Legislature did not explicitly abrogate DCBS's Eleventh Amendment immunity.

## IV.  Constitutionality of § 6(3)(a), Senate Bill 1

Oracle also asserts § 6(3)(a) of Senate Bill 1[8] is unconstitutional.  As noted, § 6(3)(a) provides:

> Notwithstanding sections 1 to 5 of this 2015 Act, the rights, obligations and liabilities transferred to the department:
>
> (a) Are subject to the limitations, defenses and immunities of the department that arise under ORS 30.260 to 30.300, the Eleventh Amendment to the United States Constitution and other state and federal laws.

In particular, Oracle asserts this provision of Senate Bill 1 is unconstitutional under (1) the Impairment of Contracts Clause, (2) the Due Process Clause, and (3) the Takings Clause of the United States Constitution.  The Court, however, concludes its adjudication of the constitutionality of § 6(a)(3) is avoidable, and, therefore, the Court declines to address that issue.  *See Knox v. Svc. Emp. Intern. Union, Local 1000*, 132 S. Ct. 2277, 2298 (2012) (concurring opin.)("'If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is

---

[8] In its Response to DCBS's Motion for Judgment on the Pleadings Oracle specifically states it does not challenge the constitutionality of any provision of Senate Bill 1 other than § 6(3)(a).

unavoidable.'" (quoting *Clinton v. Jones*, 520 U.S. 681, 690, n.11 (1997)).

Although § 6(3)(a) explicitly provides the Oregon Legislature did not intend to waive Eleventh Amendment immunity for DCBS when it was substituted for Cover Oregon, pursuant to *Maysonet-Robles, Kroll*, and *Surprenant* that explicit statement was unnecessary. DCBS would have retained Eleventh Amendment immunity without that explicit statement because that immunity is inherent in the Eleventh Amendment and the Legislature did not expressly abrogate it. In *Maysonet-Robles, Kroll*, and *Surprenant* the legislatures did not include in the legislation any statements regarding nonwaiver of the substituted state entities' Eleventh Amendment immunity when they substituted the state entities with Eleventh Amendment immunity for the non-state entities who lacked Eleventh Amendment immunity. Each of those courts, therefore, addressed whether the legislation at issue could be construed as a waiver of the state entities' Eleventh Amendment immunity, and, as noted, each of those courts reached the same conclusion: The legislation did not sufficiently indicate an intent to abrogate the substituted state entities' Eleventh Amendment immunity. Thus, each of those courts concluded the substituted state entities could assert Eleventh Amendment immunity.

Accordingly, even ignoring the Oregon Legislature's

61 - OPINION AND ORDER

statement in § 6(3)(a) as to Eleventh Amendment immunity, DCBS can, nevertheless, assert Eleventh Amendment immunity because that immunity is inherent; *i.e.*, DCBS's Eleventh Amendment immunity was not accorded by the Oregon Legislature in § 6(3)(a) but rather by the Eleventh Amendment itself.  Thus, even if the Court were to conclude that § 6(a)(3) of Senate Bill 1 was unconstitutional, such a finding would not negate DCBS's Eleventh Amendment immunity.  Pursuant to the Supreme Court's admonition not to address constitutionality when such an issue is avoidable, the Court, therefore, does not address the constitutionality of § 6(a)(3) of Senate Bill 1.

In summary, the Court concludes DCBS is entitled to Eleventh Amendment immunity as to Oracle's claim for copyright infringement.  Accordingly, the Court grants DCBS's Motion for Judgment on the Pleadings.


## CONCLUSION

For these reasons, the Court **DENIES** Oregon's Motion (#92) for Summary Judgment, **GRANTS** Oracle's Cross-Motion (#104) for Summary Judgment, and **GRANTS** the Motion (#142) of DCBS for Judgment on the Pleadings.

The Court **DIRECTS** the parties to confer and to submit no later than **Noon, December 7, 2015**, a Joint Status Report with the parties' respective proposals and schedule for case management

62 - OPINION AND ORDER

including their previously referenced intent to seek an interim appeal.

IT IS SO ORDERED.

DATED this 18th day of November, 2015.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge